**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **IN RE: ALLSTATE & ARITY CONSUMER PRIVACY LITIGATION** | Master Docket No. 1:25-cv-00407<br><br>Hon. Jeremy C. Daniel |

# PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED COMPLAINT

# TABLE OF CONTENTS

**Page**


INTRODUCTION ..... 1

LEGAL STANDARD ..... 2

ARGUMENT ..... 3

I. Plaintiffs Plead Facts Sufficient to Satisfy Rules 8 and 9(b) ..... 3

a. Plaintiffs Allege with Specificity the Data Collected and Disclosed by Allstate ..... 3

b. Each Plaintiff Adequately Alleges an Injury ..... 5

II. Allegations of Consent ..... 6

a. Plaintiffs Did Not Consent to Defendants' Data Collection and Disclosure ..... 6

i. It Is Premature to Decide an Affirmative Consent Defense ..... 7

ii. Plaintiffs Do Not Concede Consent ..... 8

iii. The Materials Defendants Move to Incorporate Do Not Establish Consent ..... 11

1. Plaintiffs Assert Claims Against Defendant-Owned Apps ..... 11

2. Consent Cannot be Established Through Terms and Conditions, Privacy Policies, and Registration Pages Plaintiffs Did Not See ..... 12

3. Defendants' Registration and Permissions Screenshots Also Fail to Establish Consent ..... 13

4. The Materials Do Not Adequately Disclose the Practices at Issue ..... 16

III. Filed Rate Doctrine ..... 19

a. Plaintiffs' Damages Allegations Are Sufficient Under Rule 8 ..... 19

b. The Filed Rate Doctrine Does Not Preclude Plaintiffs' Claims ..... 19

IV. Plaintiffs' State Law Claims Are Not Preempted by FCRA ..... 21

V. Plaintiffs' State and Federal Wiretap Claims Should Be Upheld ..... 23

a. Defendants Were Not Party to the Intercepted Communications ....23

b. One-Party Consent Does Not Defeat the FWA Claim ....24

c. Defendants Intercepted the Contents of Plaintiffs' Electronic Communications ....26

d. The Allegations Show Communications Were Contemporaneously Intercepted ....28

e. The SDK Is Not a "Tracking Device" ....30

f. Defendants' Challenges to the State Wiretap Claims Also Fail ....30

VI. Plaintiffs Plausibly Alleged Their Other Claims .... 31

a. Plaintiffs State Claims for Computer Hacking ....31

i. Defendants Intentionally Accessed the Devices Without Authorization ....31

ii. Plaintiffs Alleged Harm Under the CFAA and CDAFA ....32

b. FCRA Claims Are Sufficiently Alleged ....34

i. Plaintiffs Sufficiently Alleged the Inaccuracy of Their Reports ....34

ii. Plaintiffs Alleged Harm Caused by Defendants' Misreporting ....36

iii. Plaintiffs Sufficiently Alleged Willful Violation of FCRA ....37

iv. Defendants Do Not Challenge Plaintiffs' Impermissible Purpose Allegations ....38

c. Plaintiffs State Plausible Consumer Protection Claims ....39

i. Plaintiffs Fulfilled Any Pre-Suit Notice Requirement ....39

ii. Plaintiffs State Claims Under UDAP Statutes ....40

iii. Plaintiffs' Unfair and Unlawful Claims Are Not Subject to Rule 9(b), and Defendants Have Not Met Their Burden on Plaintiffs' Deception Claims ....43

iv. Plaintiffs Meet Rule 9(b)'s Requirements ....44

d. Plaintiffs' Remaining Tort Claims and Counts Should Not Be Dismissed ....46

i. Defendants' Data Collection and Sharing Is Highly Offensive ....46

ii. Defendants Violated Plaintiffs' Reasonable Expectation of Privacy ........48

VII. Plaintiffs' Properly Pled Claims Against All Defendants................................................ 48

CONCLUSION........................................................................................................................ 50

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aargon Agency, Inc. v. O'Laughlin*,
70 F.4th 1224 (9th Cir. 2023) ....................22

*Aghaeepour v. N. Leasing Sys., Inc.*,
378 F. Supp. 3d 254 (S.D.N.Y. 2019) ....................21

*Alston v. Countrywide Fin. Corp.*,
585 F.3d 753 (3d Cir. 2009)....................20, 21

*In re Application for an Order Authorizing Disclosure of Location Info. of a Specified Wireless Telephone*,
849 F. Supp. 2d 526 (D. Md. 2011) ....................30

*In re Application for Pen Reg. & Trap/Trace Device with Cell Site Location Auth.*,
396 F. Supp. 2d 747 (S.D. Tex. 2005) ....................30

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................2

*ATC Healthcare Servs., Inc. v. RCM Technologies, Inc.*,
192 F. Supp. 3d 943 (N.D. Ill. 2016) ....................43

*B.K. v. Desert Care Network*,
No. 23-cv-5021 SPG (PDx), 2024 WL 1343305 (N.D. Cal. Feb. 1, 2024)....................26

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. Feb. 29, 2024) ....................4

*Baity v. Johnson & Johnson*,
No. 20-cv-1367-NJR, 2021 WL 3603489 (S.D. Ill. Aug. 13, 2021) ....................6

*Bakopoulos v. Mars Petcare US, Inc.*,
592 F. Supp. 3d 759 (N.D. Ill. 2022) ....................40

*BCBSM, Inc. v. Walgreen Co.*,
512 F. Supp. 3d 837 (N.D. Ill. 2021) ....................50

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)....................2

*Berkson v. Gogo LLC*,
97 F. Supp. 3d 359 (E.D.N.Y. 2015) ....................14

*Bonny v. Soc'y of Lloyd's*,
3 F.3d 156 (7th Cir. 1993) ....................11

*Borsellino v. Goldman Sachs Group, Inc.*,
477 F.3d 502 (7th Cir. 2007) ....................2

*Boudreau v. Lussier*,
901 F.3d 65 (1st Cir. 2018)....................28

*Bowden v. The Med. Ctr., Inc.*,
773 S.E.2d 692 (Ga. 2015)....................7

*In re Broiler Chicken Antitrust Litig.*,
290 F. Supp. 3d 772 (N.D. Ill. 2017) ....................3

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ....................7, 25

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) ....................16, 31, 41

*Brown v. Madison Reed Inc.*,
No. 21-cv-1233, 2021 WL 3861457 (N.D. Cal. Aug. 30, 2021) ....................15

*Brown v. Mortensen*,
126 Cal.Rptr.3d 428 (Cal. Ct. App. 2011) ....................22

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) ....................7, 8, 10, 18

*Campbell v. Equifax Info. Servs., LLC*,
No. 18-cv-0053, 2019 WL 1332375 (S.D. Ga. Mar. 25, 2019)....................36

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) ....................18

*Carlson v. Trans Union, L.L.C.*,
259 F. Supp. 2d 517 (N.D. Tex. 2003) ....................23

*Carpenter v. United States*,
585 U.S. 296 (2018)....................47

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d at 1101 ....................27, 32

*Castagna v. Newmar Corp.*,
No. 15-cv-0249-TLS, 2016 WL 3413770 (N.D. Ind. Jun. 22, 2016) ....................40

*Chabolla v. ClassPass Inc.*,
129 F.4th 1147 (9th Cir. 2025) ....................................................................................14

*Charger Servs., LLC v. Togs USA, Inc.*,
No. 19-cv-0058-DC, 2019 WL 11519056 (W.D. Tex. Apr. 10, 2019) ..................................40

*Ex parte Cincinnati Ins. Co.*,
51 So. 3d 298 (Ala. 2010).............................................................................................20

*Cincinnati Life Ins. Co. v. Beyrer*,
722 F.3d 939 (7th Cir. 2013) ......................................................................................2, 3

*Commonwealth v. Derr*,
293 A.3d 671 (Pa. Super. Ct. 2023)..............................................................................31

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023)..........................................................................4

*Credit Data of Ariz. v. State of Ariz.*,
602 F.2d 195 (9th Cir. 1979) .......................................................................................21

*Curry v. Revolution Labs, LLC*,
949 F.3d 385 (7th Cir. 2020) .......................................................................................50

*Dan's City Used Cars, Inc. v. Pelkey*,
569 U.S. 251 (2013)......................................................................................................22

*Dante Valve Co. v. Republic Brass Sales, Inc.*,
No. 17-cv-2582-AJB-WVG, 2019 WL 1406583 (S.D. Cal. Mar. 28, 2019)..........................19

*Davenport v. Farmers Ins. Grp.*,
378 F.3d 839 (8th Cir. 2004) .......................................................................................21

*DiDio v. Jones*,
No. 13-cv-4949 PSG (AGRx), 2014 WL 12591626 (C.D. Cal. Feb. 6, 2014).........................2

*Doe v. Kaiser Found. Health Plan, Inc.*,
No. 23-cv-2865-EMC, 2024 WL 1589982 (N.D. Cal. Apr. 11, 2024).....................................7

*Doe v. Microsoft Corp.*,
No. 23-cv-0718-JCC, 2023 WL 8780879 (W.D. Wash. Dec. 19, 2023)................................17

*In re DoubleClick Inc. Privacy Litigation*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001) ..........................................................................25

*Douglas v. Alfasigma USA, Inc.*,
No. 19-cv-2272, 2021 WL 2473790 (N.D. Ill. June 17, 2021)...............................................49

*Drew v. Equifax Info. Serv.*,
No. 07-cv-0726 SI, 2007 WL 2028745 (N.D. Cal. July 11, 2007)....22

*Ellis v. Equifax Info. Servs., LLC*,
No. 18-cv-5185-TCB-CMS, 2019 WL 3521436 (N.D. Ga. June 6, 2019)....36

*Ellis v. Equifax Info. Servs., LLC*,
No. 18-cv-5185-TCB, 2019 WL 5406558 (N.D. Ga. June 25, 2019)....36

*Everco Indus., Inc. v. O.E.M. Prods. Co.*,
63 F.R.D. 662 (N.D. Ill.1974)....19

*In re Facebook Priv. Litig.*,
572 F. App'x 494 (9th Cir. 2014)....41

*In re Facebook, Inc., Consumer Privacy User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019)....5, 8, 46

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020).... *passim*

*Frazier v. Dovenmuehle Mortg., Inc.*,
72 F.4th 769 (7th Cir. 2023)....34

*Galper v. JP Morgan Chase Bank, N.A.*,
802 F.3d 437 (2d Cir. 2015)....22

*Gandert v. Embry-Riddle Aeronautical Univ., Inc.*,
No. 20-cv-1320-CJC-JDE, 2020 WL 12575072 (C.D. Cal. Sept. 28, 2020)....35

*Gilday v. Dubois*,
124 F.3d 277 (1st Cir. 1997)....28

*Godun v. JustAnswer LLC*,
135 F.4th 699 (9th Cir. 2025)....15

*Goldwasser v. Ameritech Corp.*,
222 F.3d 390 (7th Cir. 2000)....20

*Gonzales v. Raich*,
545 U.S. 1 (2005)....29

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020)....16

*In re Google Inc. Cookie Placement*,
806 F.3d 125 (3d Cir. 2015)....24

*In re Google Inc. Gmail Litig.*,
No. 13-md-2430-LHK, 2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) ....................................8

*Gorgas v. Amazon.com, Inc.*,
No. 22-cv-5150, 2023 WL 4209489 (N.D. Ill. June 23, 2023)..............................................49

*Gray v. Midland Funding, LLC*,
No. 16-cv-0036-TBR, 2017 WL 1293995 (W.D. Ky. Apr. 4, 2017) .....................................14

*Green v. Beth*,
663 F. App'x 471 (7th Cir. 2016) ...........................................................................................5

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023)..........................................................................9, 11, 42

*Greenway v. Info. Dynamics, Ltd.*,
399 F. Supp. 1092 (D. Ariz. 1974) .......................................................................................39

*Greenway v. Info. Dynamics, Ltd.*,
524 F.2d 1145 (9th Cir. 1975) ...............................................................................................39

*Griffith v. TikTok, Inc.*,
697 F. Supp. 3d 963 (C.D. Cal. 2023) ..........................................................................9, 11, 17

*In re Grp. Health Plan Litig.*,
709 F. Supp. 3d 707 (D. Minn. 2023)....................................................................................25

*In re Hair Relaxer Mktg. Sales Pracs. & Prods. Liab. Litig.*,
No. 23-cv-0818, 2024 WL 4333246 (N.D. Ill. Sept. 27, 2024)..............................................40

*Hazel v. Prudential Fin., Inc.*,
No. 22-cv-07465-CRB, 2023 WL 3933073 (N.D. Cal. June 9, 2023) ...................................29

*Healthcare Advocs., Inc. v. Harding, Earley, Follmer & Frailey*,
497 F. Supp. 2d 627 (E.D. Pa. 2007) ...............................................................................33, 34

*Heard v. Becton, Dickinson & Co.*,
440 F. Supp. 3d 960 (N.D. Ill. 2020) .......................................................................................5

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal. 2020) .................................................................................47

*Hernandez v. Hillsides, Inc.*,
211 P.3d 1063 (Cal. 2009) ......................................................................................................46

*Holmes v. Behr Process Corp.*,
No. 15-cv-0454-WMA, 2015 WL 7252662 (N.D. Ala. Nov. 17. 2015) ................................39

*Howard v. Lab'y Corp. of Am.*,
No. 23-cv-0758, 2024 WL 4250677 (M.D.N.C. Aug. 8, 2024) ....................5

*Howard v. Lab'y Corp. of Am.*,
No. 23-cv-0758, 2024 WL 4326898 (M.D.N.C. Sept. 27, 2024) ....................5

*Hubbert v. Dell Corp.*,
835 N.E.2d 113 (Ill. App. Ct. 2005) ....................15

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ....................27, 34, 47

*Javier v. Assurance IQ, LLC*,
No. 20-cv-2860-JSW, 2021 WL 940319 (N.D. Cal. Mar. 9, 2021) ....................18

*Javier v. Assurance IQ, LLC*,
No. 21-16351, 2022 WL 1744107 (9th Cir. May 31, 2022)....................12

*Javier v. Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) ....................23

*Jepson, Inc. v. Makita Corp.*,
34 F.3d 1321 (7th Cir. 1994) ....................49

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) ....................2, 24, 25

*Korte v. Allstate Ins. Co.*,
48 F. Supp. 2d 647 (E.D. Tex 1999)....................20

*Kurowski v. Rush Sys. for Health*,
659 F. Supp. 3d 931 (N.D. Ill. 2023) ....................24

*Lakes v. Ubisoft, Inc.*,
No. 24-cv-6943-TLT, 2025 WL 1036639 (N.D. Cal. Apr. 2, 2025) ....................10

*Levine v. World Fin. Network Nat'l Bank*,
437 F.3d 1118 (11th Cir. 2006) ....................36

*MacKay v. Super. Ct.*,
115 Cal.Rptr.3d 893 (Cal. Ct. App. 2010) ....................20

*Madkin v. Automation Pers. Servs., Inc.*,
No. 21-cv-1177-AMM, 2023 WL 12036560 (N.D. Ala. Apr. 17, 2023) ....................42

*Maislin Indus. v. Primary Steel, Inc.*,
497 U.S. 116 (1990)....................20

*Marcus v. AT&T Corp.*,
138 F.3d 46 (2d. Cir. 1998)....................................................................................20

*Margolis v. Apple Inc.*,
743 F. Supp. 3d 1124 (N.D. Cal. 2024) ..........................................................................32

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
440 F. Supp. 3d 447 (D. Md. 2020) ...............................................................................41

*McCann v. Iroquois Mem. Hosp.*,
622 F.3d 745 (7th Cir. 2010) .........................................................................................24

*In re Meta Pixel Tax Filing Cases*,
724 F. Supp. 3d 987 (N.D. Cal. 2024) ........................................................................7, 9

*Meyer v. Uber Techs., Inc.*,
868 F.3d 66 (2d Cir. 2017)..............................................................................................15

*Mills v. Polar Molecular Corp.*,
12 F.3d 1170 (2nd Cir. 1993)............................................................................................6

*Modrowski v. Pigatto*,
712 F.3d 1166 (7th Cir. 2013) .......................................................................................34

*Murray v. New Cingular Wireless Servs., Inc.*,
523 F.3d 719 (7th Cir. 2008) .........................................................................................37

*Nagel v. ADM Investor Servs., Inc.*,
995 F. Supp. 837 (N.D. Ill. 1998) ..................................................................................49

*N.L.R.B. v. Reliance Fuel Oil Corp.*,
371 U.S. 224 (1963).........................................................................................................29

*Newman v. Metro. Life Ins. Co.*,
885 F.3d 992 (7th Cir. 2018) .........................................................................................42

*Northbound Grp., Inc. v. Norvax, Inc.*,
795 F.3d 647 (7th Cir. 2015) .........................................................................................50

*NovelPoster v. Javitch Canfield Grp.*,
140 F. Supp. 3d 954 (N.D. Cal. 2014) ...........................................................................33

*Opperman v. Path, Inc.*,
87 F. Supp. 3d 1018 (N.D. Cal. 2014) ...........................................................................18

*Patterson v. Respondus, Inc.*,
593 F. Supp. 3d 783 (N.D. Ill. 2022) .............................................................................13

*Perdue v. Hy-Vee, Inc.*,
455 F.Supp.3d 749 (C.D. Ill. 2020) ....................44

*Peters v. Mundelein Consol. High Sch. Dist. No. 120*,
No. 21-cv-0336, 2022 WL 393572 (N.D. Ill. Feb. 9, 2022) ....................28

*In re Pharmatrak, Inc.*,
329 F.3d 9 (1st Cir. 2003) ....................23, 27, 28

*United States ex. Rel. Presser v. Acacia Mental Health Clinic, LLC*,
836 F.3d 770 (7th Cir. 2016) ....................44, 45

*Proctor & Gamble Co. v. Haugen*,
947 F. Supp. 1551 (D. Utah 1996) ....................40

*Ramirez v. LexisNexis Risk Sols.*,
729 F. Supp. 3d 838 (N.D. Ill. 2024) ....................42, 43

*R.S. v. Prime Healthcare Servs., Inc.*,
No. 24-cv-0330-ODW (SPx), 2025 WL 103488 (C.D. Cal. Jan. 13, 2025) ....................25

*Rene v. G.F. Fishers, Inc.*,
817 F. Supp. 2d 1090 (S.D. Ind. 2011) ....................29

*Rickman v. BMW of N. Am.*,
No. 18-cv-4363 (KM) (JBC), 2020 WL 3468250 (D.N.J. Jun 25, 2020) ....................40

*Riganian v. LiveRamp Holdings, Inc.*,
No. 25-cv-0824-JST, 2025 WL 2021802 (N.D. Cal. July 18, 2025) ....................25, 26

*Robles v. City of Chicago*,
354 F. Supp. 3d 873 (N.D. Ill. 2019) ....................48

*Rodriguez v. ByteDance, Inc.*,
No. 23-cv-4953, 2025 WL 672951 (N.D. Ill. March 3, 2025) ....................7, 12, 13

*Rodriguez v. Google, LLC*,
No. 20-cv-4688-RS, 2021 WL 2026726 (N.D. Cal. May 21, 2021) ....................32

*Rodriguez v. Google LLC*,
772 F. Supp. 3d 1093 (N.D. Cal. 2025) ....................11

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) ....................24, 27

*Santos v. Healthcare Revenue Recovery Grp., LLC.*,
90 F.4th 1144 (11th Cir. 2024) ....................37

*Sartori v. Schrodt*,
424 F. Supp. 3d 1121 (N.D. Fla. 2019) ....................................................................33

*Sartori v. Schrodt*,
No. 19-15114, 2021 WL 6060975 (11th Cir. Dec. 20, 2021)................................................33

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
559 U.S. 393 (2010)....................................................................................................40

*Sloan v. Anker Innovations Ltd.*,
711 F. Supp. 3d 946 (N.D. Ill. 2024)...........................................................................6, 48

*Smith v. Google, LLC*,
735 F. Supp. 3d 1188 (N.D. Cal. 2024) .........................................................................2, 6

*State Farm Mut. Auto. Ins. Co. v. Performance Orthapaedics & Neurosurgery, LLC*,
315 F.Supp.3d 1291 (S.D. Fla. 2018) .......................................................................42, 43

*Stein v. Edward-Elmhurst Health*,
No. 23-cv-14515, 2025 WL 580556 (N.D. Ill. Feb. 21, 2025)...............................................25

*Taylor v. Screening Reps., Inc.*,
No. 13-cv-02886, 2015 WL 4052824 (N.D. Ill. July 2, 2015) ..............................................35

*Texas Commercial Energy v. TXU Energy, Inc.*
413 F.3d 503 (5th Cir. 2005) .........................................................................................20

*In re TikTok, Inc. In-App Browser Priv. Litig.*,
No. 24-cv-2110, 2024 WL 4367849 (N.D. Ill. Oct. 1, 2024) ........................................ *passim*

*Time Warner Cable Midwest LLC v. Pennyrile Rural Elec. Coop. Corp.*,
No. 15-cv-45-TBR, 2015 WL 4464105 (W.D. Ky. July 21, 2015).......................................19

*Trans Union Corp. v. F.T.C.*,
81 F.3d 228 (D.C. Cir. 1996)..........................................................................................38

*Trzeciak v. Allstate Prop. and Casualty Ins. Co.*,
569 F. Supp. 3d 640 (E.D. Mich. 2021)...........................................................................20

*Troeckler v. Zeiser*,
No. 14-cv-0040-SMY-PMF, 2015 WL 1042187 (S.D. Ill. Mar. 5, 2015)..............................48

*Twumasi-Ankrah v. Checkr, Inc.*,
954 F.3d 938 (6th Cir. 2020) .........................................................................................35

*United States v. Christensen*,
828 F.3d 763 (9th Cir. 2015) .........................................................................................32

*United States v. Forey-Quintero*,
626 F.3d 1323 (11th Cir. 2010) ....................22

*United States v. Reed*,
575 F.3d 900 (9th Cir. 2009) ....................28

*Valiente v. StockX, Inc.*,
645 F. Supp. 3d 1331 (S.D. Fla. 2022) ....................15

*Van Buren v. United States*,
593 U.S. 374 (2021)....................31

*Vasil v. Kiip, Inc.*,
No. 16-cv-09937, 2018 WL 1156328 (N.D. Ill. Mar. 5, 2018) ....................26

*Vaughan v. Biomat USA, Inc.*,
No. 20-cv-4241, 2022 WL 1266389 (N.D. Ill. Apr. 28, 2022)....................49

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) ....................47

*Volkswagen Grp. of Am., Inc. v. Smartcar, Inc.*,
No. 21-cv-4895-JST, 2022 WL 20184651 (N.D. Cal. July 7, 2022)....................32

*Washington v. Flixbus, Inc.*,
No. 25-cv-0212, 2025 WL 1592961 (S.D. Cal. June 5, 2025) ....................10

*Weimin Chen v. Sierra Trading Post, Inc.*,
No. 18-cv-1581, 2019 WL 3564659 (W.D. Wash. Aug. 6, 2019)....................15

*WhatsApp Inc. v. NSO Grp. Techs. Ltd.*,
472 F. Supp. 3d 649 (N.D. Cal. 2020) ....................33

*Williamson v. Curran*,
714 F.3d 432 (7th Cir. 2013) ....................13

*Wordlaw v. Enter. Leasing Co. of Chicago, LLC*,
No. 20-cv-3200, 2020 WL 7490414 (N.D. Ill. Dec. 21, 2020)....................49

*Yockey v. Salesforce, Inc.*,
688 F. Supp. 3d 962 (N.D. Cal. 2023) ....................9, 17

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) ....................28

**Statutes**

720 ILCS 5/14-2(a)(3) ....................31

720 ILCS 5/14-1 *et seq.* ....................7

15 U.S.C. §§ 1681 *et seq.* .................... *passim*

15 U.S.C. § 1681b(a) ....................38

15 U.S.C. § 1681h(e) ....................22

15 U.S.C. § 1681e(b) ....................34, 35, 38

15 U.S.C. § 1681n(a)(1)....................21

15 U.S.C. § 1681s-2(a)(1)(A) ....................22

15 U.S.C. § 1681s-2....................22

15 U.S.C. § 1681s-2(b) ....................22

15 U.S.C. § 1681t(a) ....................21

15 U.S.C. § 1681t(b)(1) ....................23

15 U.S.C. § 1681t(b)(1)(F) ....................22

18 Pa. Cons. Stat. §§ 5703 *et seq.* ....................7

18 U.S.C. § 1030(e)(8)....................33

18 U.S.C. § 1030(e)(11)....................32, 33

18 U.S.C. §§ 1030 *et seq.* .................... *passim*

18 U.S.C. §§ 2510 *et seq.* .................... *passim*

18 U.S.C. § 2510(8) ....................26

18 U.S.C.§ 2510(12) ....................26, 29

18 U.S.C. § 2511(1) ....................26

18 U.S.C. § 2511(1)(a)....................23

18 U.S.C. § 2511(1)(c)....................23, 24

18 U.S.C. § 2511(1)(d) ....................23, 24

18 U.S.C. § 2511(2)(d) ....................25

18 U.S.C. § 2520....................21

18 U.S.C. § 2702(c)(2)....................27

Ala. Code § 8-19-10(a)(1)....................21

Ala. Code § 8-19-10(e)....................39

Cal. Pen. Code § 502....................7, 31, 32, 34

Cal. Pen. Code § 638.51....................7

Cal. Bus. & Prof. Code §§ 17200 *et seq.*....................7

Cal. Pen. Code §§ 630 *et seq.*....................7, 31

Fla. Stat. § 934.03(3)(d)....................31

Fla. Stat. § 934.10(1)(a)....................21

Ga. Code Ann. § 10-1-370 *et seq.*....................7

N.C. Gen. Stat. § 75-16....................21

N.Y. Gen. Bus. Law § 349(h)....................21

N.Y. Gen. Bus. Law § 350-e(3)....................21

O.C.G.A. § 13–6–11....................44

ORS §§ 646.605 *et seq.*....................7

ORS § 646.638(1)....................21

Pa. Stat. § 5704(4)....................31

**Rules**

Fed. R. Civ. P. 8(a)....................3

Fed. R. Civ. P. 8....................*passim*

Fed. R. Civ. P. 9(b)....................*passim*

Fed. R. Civ. P. 9(b)....................3, 43, 44

Fed. R. Civ. P. 12(b)(6)....................7

Fed. R. Civ. P. 23....................40

Fed. R. Civ. P. 8....................3

## INTRODUCTION

Defendants[1] are insurance and technology companies that conspired to surreptitiously and without consent collect vast troves of consumer data into a driving behavior database of at least 40 million Americans. ¶¶ 3, 4.[2] They accomplished this feat through their SDK installed on everyday American's devices. ¶ 6. And they did so for their own profit. ¶ 10. The data collected is sensitive. It includes precise location data, route history, and driving schedule. ¶ 1. It also includes information about driving practices, including fuel or charging levels, phone usage while driving, hard braking events, hard acceleration events, instances of tailgating, time spent idling, vehicle speed, and late-night driving. *Id.* Lastly, the data collected includes identifying information like names, phone numbers, addresses, mobile ad-ID, and device ID (the aforementioned data is referred to collectively herein as "Personal Data"). ¶ 8.

Defendants' Motion to Dismiss centers on the affirmative defense of consent, for which they bear the burden, and which they wrongly contend was lawfully obtained. The Motion turns the pleading standard on its head, ignoring Plaintiffs' allegations regarding Defendants' collection of vast quantities of Personal Data *without* consent, bizarrely claiming that Plaintiffs never allege that Defendants collected their data, and mischaracterizing the law by challenging the sufficiency of allegations on "information or belief" when Defendants are in sole possession of the underlying facts. Defendants remaining arguments—seeking to shoehorn their misconduct into statutory exceptions or disputing the facts—are likewise fact-based and improper at this stage.

---

[1] Defendants are the Allstate Corporation ("AllCorp"), Allstate Insurance Company ("AIC"), Allstate Vehicle and Property Insurance Company ("AVPIC," and together with AllCorp and AIC, "AllCorp Defendants"), Arity, LLC ("Arity"), Arity 875, LLC ("Arity 875"), and Arity Services, LLC ("Arity Services") (together, "Defendants"). Defendant AllCorp owns AVPIC, Arity, Arity 875, and Arity Services, which are each subsidiaries of AllCorp. ¶¶ 2, 3.

[2] The Consolidated Class Action Complaint (ECF 46) is referred to herein as "CAC." ¶ references refer to paragraphs therein, and the abbreviations and defined terms used herein are the same as those in the CAC.

Defendants' attempts to recast Plaintiffs' well-pled allegations and parse and separate their surreptitious data collection practices among different corporate entities to avoid liability fail. Defendants' surreptitious collection, compilation, and commercialization of the vast quantities of Personal Data they collected from Plaintiffs not only constitutes a serious invasion of privacy, but also violates numerous state and federal laws, even where some individual data points might be publicly observable or fall outside statutory protections. *See*, *e.g.*, *In re Facebook, Inc. Internet Tracking Litig*., 956 F.3d 589, 601 (9th Cir. 2020); *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 940 (N.D. Cal. 2023). Ultimately, the CAC's allegations are more than sufficient to state claims upon which relief can be granted when construed in line with the pleading standard, and when Defendants' mischaracterizations of facts and law are stripped away. Accordingly, Plaintiffs respectfully ask this Court to DENY the Motion.

## LEGAL STANDARD

A motion to dismiss must be denied if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court's evaluation must construe the complaint in the light most favorable to the plaintiff, accept as true all well-pleaded facts therein, and draw all reasonable inferences in plaintiff's favor. *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 946 (7th Cir. 2013).

Whether Rule 9(b) applies depends on the precise claim at issue. *See DiDio v. Jones*, 2014 WL 12591626, *4 (C.D. Cal. Feb. 6, 2014) (only claims that sound in fraud are subject to Rule 9(b)) (citing *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502 (7th Cir. 2007)); *Smith v. Google, LLC*, 735 F. Supp. 3d 1188, 1198 (N.D. Cal. 2024) ("Because plaintiffs are directly challenging Google's alleged data collection rather than challenging any potentially fraudulent or

misleading representations about this collection, their claims do not sound in fraud and are not subject to Rule 9(b).”). To the extent a claim is premised on unfair or unlawful conduct or a simple statutory violation, Rule 9(b) is inapplicable. *See, e.g.*, *In re Broiler Chicken Antitrust Litig.*, 290 F. Supp. 3d 772, 819 (N.D. Ill. 2017).

Under Rule 9(b) parties “must state with particularity the circumstances constituting fraud or mistake” when alleged. Fed. R. Civ. P. 9(b). However, the “‘requisite information’ needed to satisfy the Rule ‘may vary on the facts of a given case,’ and a ‘plaintiff who provides a general outline of [a] fraud scheme sufficient to reasonably notify the defendants of their purported role in the fraud’ will comply with Rule 9(b).” *In re: 100% Grated Parmesan Cheese Mktg. & Sales Pracs. Litig.*, 348 F. Supp. 3d 803, 807 (N.D. Ill. 2018), *rev’d in part on other grounds sub nom Bell v. Publix Super Markets*, 982 F.3d 868 (7th Cir. 2020) (internal citations omitted). Rule 9(b)’s particularity requirement, moreover, may be relaxed where plaintiff lacks access to critical facts. *Cincinnati Life Ins. Co.*, 722 F.3d at 948.

## ARGUMENT

### I. Plaintiffs Plead Facts Sufficient to Satisfy Rules 8 and 9(b)

#### a. Plaintiffs Allege with Specificity the Data Collected and Disclosed by Allstate

Defendants characterize Plaintiffs’ allegations as “generalized,” “threadbare,” and “speculat[ive]” to argue the “short and plaint statement” Rule 8 requires has not been met. Mot. at 5. But, Plaintiffs go well beyond what Federal Rule 8(a) requires, and allege far more than a “sheer possibility that a defendant has acted unlawfully.” Mot. at 5.

Plaintiffs detail the categories of highly sensitive information and communications Defendants designed and configured the SDK to surreptitiously intercept. ¶¶ 410-16. Plaintiffs also specifically identify—based on public reporting and an investigation by the Texas Attorney General’s office—the apps in which Defendants are known to have paid to install the SDK (¶ 441

n.50; ¶ 405 n. 22), including the Allstate Drivewise, Life360 and GasBuddy apps, which were used by thirty-six of the thirty-nine Plaintiffs. ¶ 441 n.50; ¶ 405 n.22. Defendants have never denied publicly, or in their Motion, that they collected data through the listed apps.[3]

Plaintiffs also identify each SDK equipped app and the date of installation.[4] And because the SDK is configured to collect and/or intercept the *same categories of highly sensitive information* from *every app* that incorporates the SDK, Plaintiffs explain exactly "what *did occur* with respect to [every] individual Plaintiff" (Mot. at 6) (emphasis in original): Defendants used the SDK to intercept communications and misappropriate the Personal Data.

These allegations are a far cry from the "conjectures and hypothetical scenarios" in the inapposite cases Defendants cite: *B.K. v. Eisenhower Med. Ctr*., 721 F. Supp. 3d 1056 (C.D. Cal. Feb. 29, 2024), and *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117 (S.D. Cal. 2023). In *B.K.* and *Cousin*, whether the defendant's website "pixel" intercepted sensitive information depended entirely on the information the plaintiffs submitted through the website. *B.K.*, 721 F. Supp. 3d at 1061; *Cousin*, 681 F. Supp. 3d at 1123. Plaintiffs were obligated to detail the private information they communicated through the website, which was then intercepted by the pixel. *See id.* ("Plaintiffs do not explain what information they provided to Defendant."); *B.K.*, 721 F. Supp. 3d at 1064 ("Plaintiffs fail to allege what, if any, medical information or medical records were transmitted or disclosed."). Here, the SDK surreptitiously intercepts the same private information from app users regardless of the app, and Plaintiffs allege specific types of data Defendants obtained (*see supra* note 4). It would be antithetical to Rule 8 to require more specificity.

[3] *See, e.g.,* ¶ 405 n.21 (citing *Street Fight Magazine* article quoting Fred Dimesa, Head of Aggregated Data and Advertising Product Lines at Arity).

[4] *See* named Plaintiffs' allegations at ¶¶ 18-21, 27-30, 36-39, 45-48, 54-58, 64-67, 73-76, 81-85, 91-94, 100-103, 109-112, 118-121, 127-130, 136-139, 145-149, 155-158, 164-167, 173-176, 182-185, 191-195, 201-204, 210-213, 219-222, 228-231, 237-240, 246-249, 255-259, 265-269, 275-279, 285-289, 295-299, 305-308, 314-317, 323-326, 332-335, 341-345, 351-354, 360-363, 369-372.

Equally wrong is Defendants' claim that Plaintiffs "speculate that their data is 'in the possession of third parties' without explaining how it got there or who received it." Mot. at 6. Plaintiffs identify the various channels through which Defendants sell and monetize their private information using *Defendants' own words*. *See, e.g.*, ¶¶ 428-29, 441-42 (citing Arity webpages describing Drivesight, ArityIQ, Arity Marketing Platform, Arity Audiences, Realtime Insights and Routely products sold by Defendants). Only Defendants know every insurer or other third party who purchased Plaintiffs' Personal Data. Regardless, for this stage, Plaintiffs have sufficiently alleged Defendants collection and sharing of their Personal Data with third parties without consent. *See, e.g.*, *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 797 (N.D. Cal. 2019) (sustaining claims concerning sharing information with unknown third parties).

That certain allegations are made on information and belief is inconsequential, as recognized by Defendants' own cases. *Cf.* Mot. at 6 n.2 (citing *Green v. Beth*, 663 F. App'x 471, 474 (7th Cir. 2016) (internal citations omitted) ("belief is based on factual information that makes the inference of culpability plausible"); (citing *Heard v. Becton, Dickinson & Co.*, 440 F. Supp. 3d 960, 969 (N.D. Ill. 2020) (finding belief of biometric data disclosure would be supported by prior reports of same). The "full nature" of Defendants' collection and disclosure will be "developed more fully during discovery." *Howard v. Lab'y Corp. of Am.*, 2024 WL 4250677, at *9 (M.D.N.C. Aug. 8, 2024), *report and recommendation adopted*, 2024 WL 4326898 (M.D.N.C. Sept. 27, 2024). Plaintiffs have provided "what of their data was actually disclosed, to whom, and how each Plaintiff was individually harmed." Mot. at 7. Rule 8 is satisfied.

**b. Each Plaintiff Adequately Alleges an Injury**

As a threshold matter, Plaintiffs' claims are not subject to Rule 9(b) across-the-board simply because they allege Defendants proceeded in "secret." Mot. at 8. As discussed in the "Legal Standard" section, *supra*, whether Rule 9(b) applies depends on the precise claim at issue. *See*

*Smith*, 735 F. Supp. 3d at 1198 (claims challenging Google's data collection, and not its misrepresentations about them, "do not sound in fraud and are not subject to Rule 9(b).").

In any event, Plaintiffs allege with sufficient particularity that Defendants' unlawful conduct uniformly harmed them. As detailed above, each Plaintiff used an app with the SDK, which collected the same categories of Personal Data and was sold to third parties without consent, resulting in loss of privacy and control. That some Plaintiffs also allege increased insurance premiums does not result in Plaintiffs being required to plead more at this stage, especially since discovery has not begun and only Defendants know who purchased Plaintiffs' Personal Data.

Defendants' remaining arguments are equally meritless. Plaintiffs' CAC is not "shotgun" pled merely because it incorporates prior detailed allegations. *See Baity v. Johnson & Johnson*, 2021 WL 3603489, *2 (S.D. Ill. Aug. 13, 2021) (noting that in the Seventh Circuit "shotgun pleading" arguments are treated with "skepticism," and denying motion on that ground). Neither was the CAC's use of the single defined term "Defendants" improper. *See Sloan v. Anker Innovations Ltd.*, 711 F. Supp. 3d 946, 955 (N.D. Ill. 2024) (a "complaint that directs every allegation at all the defendants can provide sufficient detail to put the defendants on notice because the defendants do not have to speculate about which claims or allegations pertain to them; they must defend against them all") (internal quotation omitted).[5]

## II. Allegations of Consent

### a. Plaintiffs Did Not Consent to Defendants' Data Collection and Disclosure

Defendants argue Plaintiffs pled their consent to the collection, use, and sale of their Personal Data. These arguments are meritless, improperly fact based, and invert the pleading

[5] Defendants incorrectly represent that the court in *Mills v. Polar Molecular Corp.*, 12 F.3d 1170 (2nd Cir. 1993), applied Rule 9(b) to a breach of contract claim. Mot. at 8. Instead, the Court applied Rule 9(b) to the plaintiffs' claim alleging securities fraud. *Id.* at 1176.

standard by asking the Court to draw inferences and resolve factual issues in Defendants' favor. Consent arguments are routinely rejected at this stage. *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1003 (N.D. Cal. 2024) ("[W]hether plaintiffs consented to having their data collected is a question of fact . . . [that] the Court cannot determine at the 12(b)(6) stage.").

### i. It Is Premature to Decide an Affirmative Consent Defense

Consent is an affirmative defense for which Defendants bear the burden. *TikTok, Inc. In-App Browser Priv. Litig.*, 2024 WL 4367849, at *8 (N.D. Ill. Oct. 1, 2024). Resolution of the consent issue is inappropriate at this stage of the litigation. *Rodriguez v. ByteDance, Inc.*, 2025 WL 672951, at *3 (N.D. Ill. March 3, 2025) ("whether plaintiffs waived their rights to bring suit based on their alleged consent to [a] Privacy Policy is an affirmative defense that cannot be resolved via this Rule 12(b)(6) motion.").[6] Even if the Court decides that Defendants' consent

---

[6] Defendants go to great lengths to suggest consent is an "element" of Plaintiffs' claims or an "alleged factual basis of a claim" (Ex. B), but those assertions go against the weight of the authority in multiple circuits. *See, e.g.*, *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 619–20 & n.3 (N.D. Cal. 2021) (consent is an affirmative defense to Federal Wiretap Act, 18 U.S.C. §§ 2510 *et seq.*, Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. §§ 1030 *et seq.*, unjust enrichment, Cal. Invasion of Privacy Act ("CIPA"), Cal. Pen. Code §§ 630 *et seq.*, and Cal. Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*, claims); *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1063 (N.D. Cal. 2021) (consent is an affirmative defense to Federal Wiretap Act, Cal. Computer Data Access & Fraud Act ("CDAFA"), Cal. Pen. Code § 502, common-law intrusion upon seclusion, and California Constitutional Invasion of Privacy claims); *In re TikTok, Inc. In-App Browser Priv. Litig.*, 2024 WL 4367849, at *8 & n.7 (consent is an affirmative defense to Federal Wiretap Act, CIPA, Florida Security of Communications Act ("FSCA"), Fla. Stat. §§ 934.01 *et seq.*, Illinois Wiretapping, Electronic Surveillance, and Interception of Communications Law, 720 ILCS 5/14-1 *et seq.*, Pennsylvania Wiretapping and Electronic Surveillance Act ("WECMA"),18 Pa. Cons. Stat. §§ 5703 *et seq.*, Cal. UCL, and unjust enrichment claims); *Bowden v. The Med. Ctr., Inc.*, 773 S.E.2d 692, 698 (Ga. 2015) (consent is a defense to Georgia Uniform Deceptive Trade Practices Act ("GUDTPA"), Ga. Code Ann. § 10-1-370 *et seq.*, claim); *Doe v. Kaiser Found. Health Plan, Inc.*, 2024 WL 1589982, at *6–7 (N.D. Cal. Apr. 11, 2024) (consent is a defense to Oregon Unlawful Trade Practices Act ("UTPA"), ORS §§ 646.605 *et seq.*, GUDTPA, CIPA, California Constitutional Invasion of Privacy, common-law invasion of privacy and intrusion upon seclusion, and breach of contract claims). Defendants concede consent is an affirmative defense to the common-law right to privacy, intrusion upon seclusion, unjust enrichment and breach of contract claims, as well as the California Constitutional Invasion of Privacy, Cal. Pen Register or Trap and Trace Device, Cal. Pen. Code § 638.51, and Pennsylvania Invasion of Privacy claims.

arguments are ripe (they are not), those arguments will fail. None of Defendants' materials are specific enough to establish consent.

### ii. Plaintiffs Do Not Concede Consent

Nowhere in the CAC do Plaintiffs plead consent to Defendants' collection, use, and sale of their Personal Data, and none of the "disclosures" identified by Defendants in the CAC are adequate to establish consent.[7] In the first paragraph of the CAC Plaintiffs allege the data collection was "unconsented[.]" ¶ 1. Plaintiffs assert they "reviewed the prominent information about the nature and function of the apps presented to [them] prior to downloading and using the apps," but were "not provided meaningful notice that Defendants would use the apps to collect and share [their] Personal Data." *See, e.g.*, ¶¶ 18, 27, 36, 45.

To establish express or implied consent, Defendants must show that the "data collection at issue" was "unambiguously disclosed" in the information Plaintiffs reviewed. *In re TikTok, Inc. In-App Browser Priv. Litig.*, 2024 WL 4367849, at *8 (internal quotations omitted). And "the disclosures must explicitly notify users of the practice at issue." *Calhoun*, 526 F. Supp. 3d at 620 (internal quotation omitted). At the motion to dismiss stage, the disclosure must have only one plausible interpretation to find consent. *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d at 789.

Defendants gloss over these applicable standards, arguing "warnings that third parties would collect and use their data" constitute sufficient disclosure, and because Plaintiffs say they viewed terms, they plead themselves out of court. Mot. at 10. Defendants point to a screenshot in the CAC from the Life360 app they purport "refers to 'location sharing', 'motion sensors', 'activity

---

[7] Defendants argue, in a footnote that "*Actual* notice of terms is not required, inquiry notice suffices." (Mot. at 10 n.4) (emphasis original). This is a fact intensive inquiry that cannot be resolved at this stage of the litigation. *In re Google Inc. Gmail Litig.*, 2014 WL 1102660, at *16 (N.D. Cal. Mar. 18, 2014) ("Implied consent is an intensely factual question that requires consideration of the circumstances ....").

data', 'driving safety', [and] 'crash detection[.]'" ¶ 447. This language does not have only one plausible interpretation and lacks the specificity necessary to disclose the data practices at issue.

The data Defendants list is "referred to" in the context of the "permissions" the app requires to "work properly[.]" *Id*. This does not disclose that this data is collected and distributed to third parties. The only information regarding data collection and distribution that is actually included appears in fine print at the bottom of the screen, which states, "In addition to the above, your location data will be used in accordance with our Privacy Policy and your preferences which may include sharing with third parties for purposes such as research, tailored advertising, and analytics." This is not prominently displayed and includes only "location data." *Cf.* ¶¶ 1-2 (alleging collection of "driving schedule, fuel or charging levels, phone usage, hard braking events, hard acceleration events . . .and more"). Thus, the information Defendants contend is a disclosure is not adequate to establish consent. *Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 977 (N.D. Cal. 2023) (holding discrepancies among the broad language of a disclosure and the specific data plaintiffs alleged were not synonymous "both as a matter of common sense and as defined by the policy"); *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d at 1003 (holding defendant's contended "explicit disclosures" did not equate to consent to collection of the "sensitive financial information" plaintiffs alleged was collected.).

Nor does the screenshot at ¶ 447 adequately disclose to whom Plaintiffs' data would be distributed. Generic assertions of "third parties" are not enough. *Griffith v. TikTok, Inc.*, 697 F. Supp. 3d 963, 972 (C.D. Cal. 2023) (holding insufficient privacy policies' failure to identify TikTok specifically); *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1039 (S.D. Cal. 2023) ("Plaintiff gave consent for data collection to app developers, but not to Defendant.").

And this language is subject to multiple interpretations. The fine print states, "Your location data will be used in accordance with our Privacy Policy *and your preferences*[.]" ¶ 447 (emphasis added). A reasonable user could conclude from the italicized language that he or she must affirmatively choose to disclose location data before it's shared. *See Calhoun*, 526 F. Supp. 3d at 621 ("Thus, a reasonable user consenting to Google's Terms of Service . . . might have concluded that she was not consenting to Google's Privacy Policy.").

The catch-all phrase "In addition to the above" that precedes the disclosure does not rehabilitate it. A reasonable user would not interpret "In addition to the above" as disclosing the collection, use, and sale of the listed data. And, at the motion to dismiss stage a consent disclosure must have only one plausible interpretation. *Id*. at 620 ("[I]f a reasonable . . . user could have plausibly interpreted the contract language as not disclosing that the [defendant] would engage in particular conduct, then [the defendant] cannot obtain dismissal of a claim about that conduct (at least not based on the issue of consent)."). The Fuel Rewards screenshot in ¶ 448 suffers from substantially similar specificity and multiple interpretation issues.

Defendants' authorities do not hold otherwise. *Lakes v. Ubisoft, Inc.*, held that "a reasonable user would understand . . . that he or she is consenting to the use of cookies including by third parties." 2025 WL 1036639, at *6 (N.D. Cal. Apr. 2, 2025). Not so, here, where no reasonable user would conclude that the shared "location data" includes "driving schedule, fuel or charging levels, phone usage, hard braking events, hard acceleration events, tailgating, time spent idle, speeds over 80 miles per hour, vehicle speed, average speed, late night driving, driver attention, and more." ¶ 1. Equally inapposite is *Washington v. Flixbus, Inc.*, where the court held adequate the defendant's disclosure of "the use of cookies and tracking pixels[.]"2025 WL 1592961, at *4 (S.D. Cal. June 5, 2025). No such disclosures are present in the CAC. And

Defendants' reliance on *Bonny v. Soc'y of Lloyd's*, is perplexing as its 1993 holding predates the widespread adoption of the internet. 3 F.3d 156 (7th Cir. 1993).

#### iii. The Materials Defendants Move to Incorporate Do Not Establish Consent

As a threshold matter, the materials Defendants move to incorporate should not be considered because they are not central to the complaint and their authenticity and accuracy is disputed. *See* Plaintiffs' Opposition to Motion to Incorporate by Reference. Nor can Defendants establish consent through third party terms, conditions, and policies (Exs. A (Fuel Rewards), C (Life360), and D (GasBuddy)). Consent provided to an app developer does not extend to other companies collecting data through those apps. *See Greenley*, 684 F. Supp. 3d at 1048–49 (concluding, where the defendant had installed an SDK to collect the data of third-party app users, that "consent to third-party app developers does not confer consent to [the defendant]"); *Griffith*, 697 F. Supp. 3d at 967 (plaintiffs, who had never used the defendant's app, "never consented to [the defendants'] collection of their data" from third-party websites); *Rodriguez v. Google LLC*, 772 F. Supp. 3d 1093, 1108 (N.D. Cal. 2025) (rejecting argument that consent provided to a third-party app developer "extends to vendors who process such data").

#### 1. Plaintiffs Assert Claims Against Defendant-Owned Apps

In a footnote, Defendants argue Plaintiffs' claims against their apps (Routley, Drivewise, and the Allstate app) must be dismissed because Plaintiffs only allege tracking via third party apps. Mot. at 12 n.5. But Plaintiffs allege that Defendants tracked Plaintiffs both through their own applications and through third-party applications. *See, e.g.*, ¶ 405 ("Defendants developed and integrated their SDK not only into their own applications (such as Drivewise), but also into third-party apps unrelated to the provision of automotive insurance"). Plaintiffs' claims regarding Defendant-owned apps stand.

### 2. Consent Cannot be Established Through Terms and Conditions, Privacy Policies, and Registration Pages Plaintiffs Did Not See

The materials before the Court at this stage do not conclusively establish if, when, and how Plaintiffs consented to the terms in the policies, nor have they been properly authenticated. In order to prove consent, Defendants must show (1) which policy each named Plaintiff agreed to and (2) that each named Plaintiff had notice of the policy. *Rodriguez*, 2025 WL 672951, at *3; *In re TikTok, Inc. In-App Browser Priv. Litig.*, 2024 WL 4367849, at *9.

First, Defendants cannot establish consent for Plaintiffs who used the Sirius, Drivewise, or Allstate apps. Plaintiffs do not reference these policies in the CAC, and Defendants have not moved to incorporate them by reference. *See, e.g.,* ¶ 64, 100, 127, 136, 145, 173, 182, 228, 246, 275, 332, 341, 351, 360, 369.

Second, Defendants cannot establish consent for Plaintiffs who allege they download apps prior to when the terms and conditions Defendants moved to incorporate went into effect. For example, Defendants include a Privacy Policy for Fuel Rewards dated November 27, 2024, (Ex. A), which is a date *after* any of the Plaintiffs would have seen or consented to that privacy policy. ¶¶ 64, 91, 182, 201, 210, 285, 305, 314, 332, 360. . *In re TikTok, Inc. In-App Browser Priv. Litig.*, 2024 WL 4367849, at *9 (holding consent could not be determined for plaintiffs alleging they installed and used an app before the policy defendant incorporated). And "[a]ny retroactive disclosure in a later-issued version would be insufficient to establish effective prior consent." *Id.* (citing *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *2 (9th Cir. May 31, 2022)). The same holds for Gas Buddy terms predating 2018 and Life360 terms predating 2020.

Third, the registration screens Defendants move to incorporate are undated (Exs. F, H-1, J) or postdate (Ex. G) the allegations of when Plaintiffs downloaded and used the apps. So, Defendants have no proof that the named Plaintiffs ever saw them. *Id.* at *9 ("Defendants do not

provide dates when their screenshots of TikTok's "log in / sign up" dialogs were created.); *Rodriguez*, 2025 WL 672951, at *3 ("The Court thus has no way of knowing whether the named plaintiffs agreed to the attached policies or another version that might contain material differences.").

Fourth, permissions screens will look different on different phones depending on the operating system (iOS or Android) and which version of the software a plaintiff is using. *See Patterson v. Respondus, Inc.*, 593 F. Supp. 3d 783, 805 (N.D. Ill. 2022) (holding what representations "looked like at different moments in time" key to establishing consent).

Fifth, even where Defendant provided a privacy policy within the correct date range, there's no evidence the registration page is the right one. Defendants haven't shown that users had to create accounts, and that Plaintiffs did so and saw these terms in the process. Combined with Plaintiffs' allegations of non-consent to the collection of their Personal Data, Defendants' effort fails. *In re TikTok, Inc. In-App Browser Priv. Litig.*, 2024 WL 4367849, at *9.

#### 3. Defendants' Registration and Permissions Screenshots Also Fail to Establish Consent

Defendants' materials fail to prove that (1) use of the apps required agreement to the terms, and (2) the policies and permissions were unambiguous and Plaintiffs clearly agreed to them.

Without providing any evidence, Defendants claim, "As shown above, [Plaintiffs] could not have used the Apps as alleged without agreeing to these contracts." Mot. at 17. Nothing in the current record or in the materials Defendants move to incorporate by reference supports this assertion, and Defendants' statement in their brief should not be considered. *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

Defendants also do not establish that their requisite policies were sufficiently conspicuous or that Plaintiffs sufficiently manifested their agreement. Defendants cannot prove that any of the

Plaintiffs saw the specific screenshots in Exs. E through L or that they were required to agree to any terms, conditions, and policies before they used the apps. *Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1158 (9th Cir. 2025) ("[A] user must agree to the terms, not merely see them."); *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 403 (E.D.N.Y. 2015) ("[t]he court cannot assume that [the plaintiff] affirmatively clicked the box and intended to be bound to the company's Terms of Use, which were in effect in 2011."); *Gray v. Midland Funding, LLC*, 2017 WL 1293995, at *4 (W.D. Ky. Apr. 4, 2017) (denying summary judgment because fact-finding is needed to determine whether the plaintiff "manifested her assent" to online agreement).

The screenshots themselves do not demonstrate consent. Fuel Rewards (Ex. E) and Gas Buddy (Ex. F) have check boxes to indicate agreement to the terms, but it's unclear if an account holder would be required to agree to those terms prior to using either app. Life360 (Ex. G) has a check box that shows that by signing up, the user agrees to the Privacy Policy and Terms of Service, but it's not clear a user has to "sign up" to use the app. Routely (Ex. H-1) indicates a user agrees to the terms by clicking a button or using the app, but it is not clear when this screen would be presented to a user if at all. Sirus XM (Ex. I) has what appears to be a link but a user does not have to affirmatively agree to anything to use the service, and DriveSense (Ex. J)—which no Plaintiff alleges he or she used—states that by selecting continue and enabling certain permissions a user agrees to data collection, but it is not clear when that collection would start.

And while screenshots of the registration boxes do seem to show hyperlinks (though that cannot be proven at this stage), the screenshots alone cannot prove conspicuousness because the context of the app's disclosures are not apparent. *See, e.g.*, *Chabolla*, 129 F.4th at 1158 (analyzing various screens presented to determine conspicuousness). Nor can all of the screenshots conclusively establish assent because they do not "explain that certain actions will be understood

by the offeror to signal assent to contractual terms." *Godun v. JustAnswer LLC*, 135 F.4th 699, 710–11 (9th Cir. 2025) (internal citations and quotations omitted).

As to the two permissions screens Defendants provide (Exs. K and L), Defendants cannot prove at this stage that any Plaintiff saw a permissions screen at all, let alone these two specific screens. Regardless, Exs. K and L each purport to show only one app and one operating system (Routely/Android OS and DriveSense/iOS respectively), ignoring many other operating systems including Windows OS, Harmony OS, Blackberry OS and all the different versions of Android OS and iOS currently in use. Exs. K and L's disclosures of "motion and fitness activity" and "physical activity" do not equate to data being collected and sold. *See also* Section II.a.iii.4, *infra.*

Defendants' cited authority does not support dismissal. No cases were decided at the motion to dismiss stage (all compel arbitration on far more developed factual records), and they are all distinguishable on the facts. *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 70 (2d Cir. 2017), was decided on a developed recorded which included a declaration attesting to the authenticity of the version of the terms in place at the time the plaintiff assented and proof of his assent to those terms, neither of which is present, here. *Brown v. Madison Reed Inc.*, 2021 WL 3861457, at *2 and *5 (N.D. Cal. Aug. 30, 2021) and *Weimin Chen v. Sierra Trading Post, Inc.*, 2019 WL 3564659, at *1 (W.D. Wash. Aug. 6, 2019) were decided on a developed records that included declarations that showed all of the different ways the terms were presented to the plaintiff. *Valiente v. StockX, Inc.*, 645 F. Supp. 3d 1331, 1338 (S.D. Fla. 2022) was also decided on a record including a declaration. The plaintiffs in *Hubbert v. Dell Corp.*, 835 N.E.2d 113, 118-19 (Ill. App. Ct. 2005), did not dispute they received the actual contract before the court, and the entire online contract was in the record—not so here where Defendants have moved to incorporate by reference only bits and pieces of various policies, terms, conditions, registrations and permissions. And

Defendants cite no authority at all to support their argument that enabling certain permissions is sufficient to establish consent.

#### 4. The Materials Do Not Adequately Disclose the Practices at Issue

The terms, conditions, policies, registrations and permissions Defendants move to incorporate are too vague to procure consent to the collection, use, and sale of the detailed Personal Data Plaintiffs allege. To establish consent the data collected must be "unambiguously disclosed[.]" *In re TikTok, Inc. In-App Browser Priv. Litig.*, 2024 WL 4367849, at *8 (internal quotations omitted). Any disclosure must "adequately indicate[] to users that Defendants would engage in the disclosures at issue, such that users could fairly be said to have 'agreed' to these disclosures." *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 823 (N.D. Cal. 2020). Consent is only "effective if the person alleging harm consented 'to the particular conduct, or to substantially the same conduct'[.]" *Brown v. Google LLC*, 685 F. Supp. 3d 909, 926 (N.D. Cal. 2023) (internal citation omitted). Defendants cite to examples of disclosures they claim to be sufficient, but they cite to only one case—that is on appeal—to support their argument that the Terms and Conditions they move to incorporate by reference are sufficiently specific. The bulk of the authority holds the disclosures are not sufficient and dismissal is not appropriate. Plaintiffs allege they were not informed as to the specific Personal Data collected, the third parties it was shared with, and the use it was put to. ¶¶ 445-54.

First, Plaintiffs allege Defendants collected driving data including "geolocation, route history, driving schedule, fuel or charging levels, phone usage, hard braking events, hard acceleration events, tailgating, time spent idle, speeds over 80 miles per hour, vehicle speed, average speed, late night driving, [and] driver attention" and identifying information including "last name, phone number, address, zip code, mobile ad-ID ("MAID"), and device ID[.]" ¶¶ 1, 8.

The Fuel Rewards Privacy Policy (Ex. A) does not mention collection of any driving data. And the "personal information" disclosures (Ex. A at 5) are nowhere near specific enough to "encompass the conduct at issue." *Yockey*, 688 F. Supp. 3d at 977. The Routely Terms of Use and Privacy Policies (Ex. B) broadly refer to "driving behavior and patterns" as well as specific data points such as "acceleration" and "braking behavior" but they do not disclose other data points alleged such as "late night driving," "phone usage," and "fuel and charging levels[.]" ¶ 1. Similarly, the Life360 Privacy Policy and Terms of Use (Ex. C) refer to "location" and "speed" but make no mention of "driver attention" or "tail gating[.]" ¶1; And the GasBuddy Privacy Policy mentions collection of "speed" and "driving distance" but not "time spent idle[.]" And even if some of the information Plaintiffs alleged was included in some policies, terms and conditions Defendants move to incorporate, Plaintiffs did "not indicate consent to all of it." *Doe v. Microsoft Corp.*, 2023 WL 8780879, at *6 (W.D. Wash. Dec. 19, 2023). Moreover, none of the policies, terms, or conditions disclose that data will be collected when the user is not driving, such as when they are a passenger, or riding a roller coaster, or that the data collected would be decontextualized such as if a hard braking event occurred because a child ran into the road.

Second, Plaintiffs allege Defendants do not adequately disclose specific third parties with whom the collected data will be shared. "[R]etailers[,]" "brands[,]" "companies[,]" "business clients[,]" and "service providers" are not specific enough to establish consent. Mot. at 15-16. *See Griffith*, 697 F. Supp. 3d at 972 ("it is undisputed that the privacy policies generally disclosed that some of Plaintiff's information would be shared with third parties but did not specifically provide that it would be given to TikTok."); *see also Yockey*, 688 F. Supp. 3d at 977.

Third, Plaintiffs alleged the purpose for which their Personal Data was collected was not adequately disclosed. ¶¶ 1, 401, 451. Defendants challenge these allegations by arguing that they

disclosed that the Personal Data would be used for "risk modeling, the creation of driver profiles, and the pricing and underwriting of insurance products." Mot. at 14.[8] But the actual language does not disclose that data could be used to justify raising Plaintiffs' insurance rates. It addresses "updating" "pricing and underwriting models[,]" "improv[ing] our products and services[,]" and "predicting risk" *Id*. at 14-15. A "reasonable user" would not "plausibly interpret[]" these phrases as a disclosure that their data would be used to increase their insurance rates, and Defendants "cannot obtain dismissal" of that conduct based on consent. *Calhoun*, 526 F. Supp. 3d at 620; *see also Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 847 (N.D. Cal. 2014) ("[A]ny consent with respect to the processing and sending of messages itself does not necessarily constitute consent to the specific practice alleged in this case—that is, the scanning of message content for use in targeted advertising.").

Some of the cited language also include misrepresentations. Stating data will be used to "calculate discounts, rewards or pricing offers by third parties such as insurance companies" (Mot. at 15) is at best confusing and at worst actively misleading. *Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1060 (N.D. Cal. 2014) (Defendants cannot obtain consent "by misrepresenting their purpose."). Even Life360 and GasBuddy's statements that data will be provided to Arity do not explain that Arity will use that data to increase insurance rates. *Javier v. Assurance IQ, LLC*, 2021 WL 940319, at *2 (N.D. Cal. Mar. 9, 2021) ("[C]onsent is . . . generally limited to the specific conduct authorized."); *see also Campbell*, 77 F. Supp. 3d at 847.

All of Defendants' consent arguments fail. They have not shown that Plaintiffs conceded consent, nor shown consent through the materials they move to incorporate by reference. Consent is a fact-specific issue that is more appropriate for resolution on a developed factual record.

[8] Defendants cite to no such disclosures in the Fuel Rewards Privacy Policy and there are none. (Ex. A).

## III. Filed Rate Doctrine

### a. Plaintiffs' Damages Allegations Are Sufficient Under Rule 8

Defendants argue it is insufficient for Plaintiffs to allege on information and belief that the increased insurance premiums they have experienced are attributable, in part, to the wrongfully obtained Personal Data. As outlined in Section I.a *supra*, Plaintiffs pled sufficient allegations about Defendants' scheme to misappropriate data for sale and use by their affiliates and other insurers. These factual allegations provide a plausible basis for Plaintiffs' claim that the alleged data misappropriation resulted in inflated insurance premiums and are sufficient to place Defendants on notice of the nature of the claims and basis for relief. *See Dante Valve Co. v. Republic Brass Sales, Inc.*, 2019 WL 1406583, at *2 (S.D. Cal. Mar. 28, 2019) ("[S]o long as there is a plausible foundation to such claims, allegations based on 'information and belief' are sufficient to survive dismissal").

The specific information each insurer considered in determining each Plaintiff's rate, and the weight it applied to each factor, is solely in the possession of the insurer and thus can only be alleged on information and belief at this stage. *See id.* ("Additionally, when information is within the possession and control of the defendant, Rule 8 permits allegations based on 'information and belief.'"). And the specific amount of the alleged overcharges is not necessary at the pleading stage. *See Time Warner Cable Midwest LLC v. Pennyrile Rural Elec. Coop. Corp.*, 2015 WL 4464105, at *6 (W.D. Ky. July 21, 2015) ("[I]t will be sufficient for a plaintiff . . .to merely state the nature of damages and allow the damage issue to be further delineated by pretrial discovery.") (quoting *Everco Indus., Inc. v. O.E.M. Prods. Co.*, 63 F.R.D. 662, 666 (N.D. Ill.1974)).

### b. The Filed Rate Doctrine Does Not Preclude Plaintiffs' Claims

Defendant argues that because Defendants' rates are governed by their various states' Department of Insurance, the Filed Rate Doctrine restricts their relief. Mot. at 20. Defendants'

reliance on the Filed Rate Doctrine is misplaced. In each of the cases the Defendants cite, the Filed Rate Doctrine applied because Plaintiffs were contesting the rates which is not so here.[9]

Here, Plaintiffs are alleging that, but for Defendants' misuse and sale of Plaintiffs' Personal Data, the amount charged by their insurer would have been lower. The claim is not grounded in the rate itself or its approval by regulators, nor does it attack the insurer directly. Rather, Plaintiffs allege they were damaged by the sale of their Personal Data to their insurer and other third parties.

Courts have recognized that the Filed Rate Doctrine does not apply where plaintiffs target conduct rather than the rate. *See Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 765 (3d Cir. 2009). That principle applies here. Plaintiffs challenge how Defendants acquired and used their Personal Data, not whether the resulting rate was fair or reasonable. *Id.* at 764. Other courts have reached similar outcomes. In *Trzeciak v. Allstate Prop. and Casualty Ins. Co.*, the court declined to apply the Filed Rate Doctrine where plaintiffs alleged Allstate used price optimization tools that utilized undisclosed non-risk-based factors to increase policy holder premiums. 569 F. Supp. 3d 640, 649 (E.D. Mich. 2021). Even though the harm manifested in higher rates, the *Trzeciak* court found the claim focused on the insurer's potential unlawful conduct, not the rate themselves. *Id.*

Even if the Court were to find that some aspect of Plaintiffs' claims touches on rate-related

[9] *Texas Commercial Energy v. TXU Energy, Inc.* 413 F.3d 503 (5th Cir. 2005) (energy retailer barred from making a claim against energy supplier who allegedly inflated energy prices due to market manipulation); *Marcus v. AT&T Corp.*, 138 F.3d 46, 58-59 (2d. Cir. 1998) (Filed Rate Doctrine held to apply when consumers are contesting that they should have paid a competitor's lower rates); *Goldwasser v. Ameritech Corp.*, 222 F.3d 390 (7th Cir. 2000) (Filed Rate Doctrine applies where Plaintiffs were suing for inflated rates as a result of alleged antitrust violations); *MacKay v. Super. Ct.*, 115 Cal.Rptr.3d 893 (Cal. Ct. App. 2010) (Filed Rate Doctrine barring claims alleging unlawful rate setting practices); *Maislin Indus. v. Primary Steel, Inc.*, 497 U.S. 116, 130 (1990) (permitting lower and privately negotiated rates violates the Filed Rate Doctrine); *Ex parte Cincinnati Ins. Co.*, 51 So. 3d 298 (Ala. 2010) (filed rate doctrine bars restitution or disgorgement of payments of unnecessary and illusory coverage); and *Korte v. Allstate Ins. Co.*, 48 F. Supp. 2d 647, 649-53 (E.D. Tex 1999) (Filed Rate Doctrine bars plaintiffs claim of inflated premiums as a result of the filed rates' infection with "illegal subsidy factor accounts").

issues, the Filed Rate Doctrine does not bar Plaintiffs from asserting statutory damages,[10] because statutory damages do not intrude on an agency's ratemaking authority. *See Alston*, 585 F.3d at 764.

## IV. Plaintiffs' State Law Claims Are Not Preempted by FCRA

Defendants make two arguments in support of preemption. Both fail.

First, Defendants argue that Plaintiffs' state law claims based on the collection of Plaintiffs' data "without notice or consent" are preempted by the Fair Credit Reporting Act ("FCRA") because "Defendants' took these actions for the purposes of underwriting insurance." Mot. at 22. So, Defendants' position is that if they are collecting information for a credit report that is used for insurance underwriting (a permitted purpose under FCRA), they are immune from state laws prohibiting wiretapping, placing GPS tracking devices on vehicles, or any of the other myriad invasive behaviors that require consent or are outright unlawful. This is nonsensical.

FCRA preemption is bound by its text: state law is only preempted "to the extent that those laws are inconsistent with any provision of this subchapter," and "*only to the extent of the inconsistency*." 15 U.S.C. § 1681t(a) (emphasis added). Here, Plaintiffs' state law claims are not in conflict with FCRA because they challenge conduct beyond that contemplated by FCRA. For instance, FCRA does not regulate methods of collecting information from consumers. Further, state laws, like the consumer statues here, are not inconsistent with FCRA merely because they give *more* protection than FCRA. *See Aghaeepour v. N. Leasing Sys., Inc.*, 378 F. Supp. 3d 254 (S.D.N.Y. 2019) (holding law *explicitly* requiring notice to a consumer before a consumer report was obtained not preempted by FCRA); *Davenport v. Farmers Ins. Grp.*, 378 F.3d 839, 843 (8th Cir. 2004) (same); *Credit Data of Ariz. v. State of Ariz.,* 602 F.2d 195, 198 (9th Cir. 1979)

---

[10] Including, but not limited to: 18 U.S.C. § 2520; 15 U.S.C. § 1681n(a)(1); Ala. Code § 8-19-10(a)(1); Fla. Stat. § 934.10(1)(a); N.Y. Gen. Bus. Law § 349(h); N.Y. Gen. Bus. Law § 350-e(3); N.C. Gen. Stat. § 75-16; and ORS § 646.638(1).

(upholding law requiring free disclosure of file to consumer even though FCRA allowed a "reasonable charge"); *Brown v. Mortensen*, 126 Cal.Rptr.3d 428, 442-43 (Cal. Ct. App. 2011) (holding state medical confidentiality law covering information beyond that covered by FCRA not preempted); *Drew v. Equifax Info. Serv.*, 2007 WL 2028745, at *5 (N.D. Cal. July 11, 2007) (refusal to dismiss state law claims requiring users to verify and correct credit information).[11]

Defendants' second argument that "Arity and Arity 875 could be 'furnishers' of information" and invoke FCRA's express preemption provision under 15 U.S.C. § 1681t(b)(1)(F) fares no better. Express preemption as to furnishers of information only applies "with respect to the subject matter regulated under . . . section 1681s-2." 15 U.S.C. § 1681t(b)(1)(F). The duties imposed on furnishers by section 1681s-2 concern reporting information the furnisher "knows or has reasonable cause to believe" is inaccurate, and related disputes. 15 U.S.C. §§ 1681s-2(a)(1)(A) and (b).

Defendants in turn ask the Court to extend this preemption to all state law claims, even those unrelated to information accuracy. Courts have declined such a broad reading. *Aargon Agency, Inc. v. O'Laughlin*, 70 F.4th 1224, 1235–36 (9th Cir. 2023) (the use of the phrase "with respect to" "massively limits the scope of preemption" to only those state laws that "concern" the phrase's referents) (citing *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 261 (2013)).

Indeed, none of Plaintiffs' state law claims require as an element that Defendants reported or failed to correct inaccurate information. *See Galper v. JP Morgan Chase Bank, N.A.,* 802 F.3d

[11] This interpretation is also in line with FCRA's qualified immunity provision (15 U.S.C. § 1681h(e)), which only applies to negligence-based invasion of privacy theories. In short, if, as Defendants argue, FCRA preempts all state law related to credit reporting, it would be unnecessary to provide qualified immunity from *any* state laws. Such a reading impermissibly renders the qualified immunity provision mere "surplusage." *See United States v. Forey-Quintero*, 626 F.3d 1323, 1327 (11th Cir. 2010) (explaining that the canon against surplusage is a "basic premise of statutory construction" (citation and internal quotation omitted)).

437, 446 (2d Cir. 2015) (holding state law claim not preempted where it did not depend on bank's FCRA furnisher responsibilities; bank just happened to be a furnisher); *Carlson v. Trans Union, L.L.C.*, 259 F. Supp. 2d 517 (N.D. Tex. 2003) (claims not preempted where they require no proof concerning enumerated FCRA furnisher duty). Plaintiffs' state law claims do not impose any additional "requirement" or "prohibition" with respect to Defendants' obligations regarding information accuracy and thus are not expressly preempted by Sections 1681t(b)(1).

## V. Plaintiffs' State and Federal Wiretap Claims Should Be Upheld

As required by the Federal Wiretap Act ("FWA"), Plaintiffs plausibly plead that Defendants (1) intentionally (2) intercepted (3) the contents of (4) an electronic communication (5) using a device. *In re Pharmatrak, Inc.*, 329 F.3d 9, 18 (1st Cir. 2003); *see* ¶¶ 492-97. Plaintiffs alleged that Defendants intentionally embedded their SDK in third-party apps to surreptitiously intercept the contents of app users' electronic communications. ¶¶ 492-97. As Plaintiffs went about their daily lives, the sensors embedded in their devices generated data for Plaintiffs' benefit, which Plaintiffs reasonably understood would be stored on-device or transmitted to the third-party app's servers. Unbeknownst to Plaintiffs, the SDK intercepted and siphoned that data and diverted it to Defendants. ¶ 461. Each of Defendants' challenges to Plaintiffs' FWA claims fail.

### a. Defendants Were Not Party to the Intercepted Communications

The FWA prohibits intentionally intercepting communications, 18 U.S.C. § 2511(1)(a), as well as intentionally disclosing or using their contents while knowing they were unlawfully intercepted, 18 U.S.C. § 2511(1)(c), (d). Defendants claim they were parties to the intercepted communications and unaware that the party exception did not apply. Mot. at 27, n.16. Defendants, however, were surreptitious collectors, not intended recipients. *See, e.g., Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 894 (N.D. Cal. 2023) (holding software provider who tracked "keystrokes, mouse clicks, data entry, and other electronic communications" through "piece of

code" on a website is a non-party); *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 521 (C.D. Cal. 2021) (same); *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 944 (N.D. Cal. 2023) ("[a data collector] is not a party to Plaintiffs' alleged communications" with third parties).

Defendants' cited authority is inapposite. In *In re Google Inc. Cookie Placement*, plaintiffs alleged defendant's browser transmitted their communications to the defendant directly, unlike here, where Plaintiffs allege that their communications with certain apps were intercepted or siphoned by Defendants via their SDK. 806 F.3d 125, 140-41 (3d Cir. 2015). Defendants also ignore the 9th Circuit's more recent decision in *Facebook Internet Tracking*, which disagreed with *Google Cookie*, and followed the First and Seventh Circuits' approach "that entities that surreptitiously duplicate transmissions between two parties are not parties to communications within the meaning of the Act." 956 F.3d 589, 607 (9th Cir. 2020). Defendants' citation to *Kurowski v. Rush Sys. for Health* is also misplaced. There, the court applied the party exception to a website through which plaintiffs submitted their communications, not, as here, an entity surreptitiously intercepting those communications. 659 F. Supp. 3d 931, 937-38 (N.D. Ill. 2023).

Plaintiffs also plausibly allege Defendants knew or had "reason to know" that they intercepted the communications through an unlawful wiretap. 18 U.S.C. § 2511(1)(c), (d). Defendants cite *McCann v. Iroquois Mem. Hosp.*, 622 F.3d 745, 753 (7th Cir. 2010) for the proposition that unknowing interception does not violate the FWA. But *McCann* concerned a dispute whether a dictation device that created a recording was inadvertently activated. *Id.* at 752-53. In contrast, Plaintiffs alleged that Defendants designed and implemented their SDK to ensure surreptitious interception, such that when an individual downloaded an app, they unwittingly downloaded Defendants' software without being informed of the SDK's data collection SDK. ¶ 405.

**b. One-Party Consent Does Not Defeat the FWA Claim**

Defendants' argument that third-party apps gave Plaintiffs an avenue for consent is

likewise without merit. Mot. at 26. And regardless of any purported consent by third-party apps, Plaintiffs plausibly allege that Defendants' conduct in intercepting communications was "for the purpose of committing any criminal or tortious act" under 18 U.S.C. § 2511(2)(d), providing an exception to the one-party consent rule. *See* ¶¶ 453, 454, 467 (alleging privacy-violating interceptions for purpose of building and selling driving profiles); *Riganian v. LiveRamp Holdings, Inc.*, 2025 WL 2021802, at *10 (N.D. Cal. July 18, 2025) (intercepting communications for the purpose of enhancing profiles and selling such profiles invokes the crime-tort exception and "render[s] consent an inapplicable defense"); *Brown v. Google*, 525 F. Supp. 3d at 1067 (allegation defendant intercepted communications for associating data with user profiles in violation of plaintiffs' privacy sufficient to invoke crime-tort exception).

Defendants argue that the crime-tort exception applies only where the "primary motivation or a determining factor" is the injury, essentially arguing that exploiting unlawfully obtained information is excused where the motivation is profit, relying on *Katz-Lacabe*, 668 F. Supp. 3d at 945, and other cases tracing back to *In re k Inc. Privacy Litigation*, 154 F.Supp. 2d 497, 518 (S.D.N.Y. 2001). Mot. at 26-27. But numerous courts have disagreed with *Katz-Lacabe* and the *DoubleClick* line of cases, noting:

> [I]t would be odd to exclude an otherwise criminal or tortious act solely because it was also motivated by financial gain. The existence of an underlying financial motivation does not mean that the act lacked a criminal or a tortious purpose. That's like saying that a bank robber's purpose was not to commit a crime—it was to make money.

*Stein v. Edward-Elmhurst Health*, 2025 WL 580556, at *6 (N.D. Ill. Feb. 21, 2025) (collecting cases); *In re Grp. Health Plan Litig.*, 709 F. Supp. 3d 707, 720 (D. Minn. 2023) (disagreeing with *Katz-Lacabe* that the goal of "mak[ing] money" immunizes a tortfeasor); *R.S. v. Prime Healthcare Servs., Inc.*, 2025 WL 103488, at *7 (C.D. Cal. Jan. 13, 2025) (joining "those courts that have held

a monetary purpose does not insulate a party from liability under the ECPA"). Courts have repeatedly found the exception applies where, as here, the further use of the intercepted data was in violation of the right to privacy. *See, e.g., Riganian*, 2025 WL 2021802, at *9 (allegations of privacy violations sufficient to apply crime-tort exception); *B.K. v. Desert Care Network*, 2024 WL 1343305, at *5 (N.D. Cal. Feb. 1, 2024) (same). Because Plaintiffs' claims include these predicate tortious acts, the exception applies.

**c. Defendants Intercepted the Contents of Plaintiffs' Electronic Communications**

Under the FWA, an "[e]lectronic communication" is "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature . . ." 18 U.S.C.§ 2510(12). And "contents," in the context of any "wire, oral, or electronic communication" includes "any information concerning the substance, purport, or meaning of that communication[.]" 18 U.S.C. § 2510(8). Plaintiffs allege the "substance, purport, or meaning" of the Personal Data Defendants intercepted includes telemetric information about, trip distance and duration, phone usage, user attention, acceleration, and hard braking. ¶ 461. By intercepting this information, which Plaintiffs submit and generate in connection with their intended use of the apps, Defendants have intercepted the "contents" of communications.

Defendants distort the CAC's allegations to argue that Plaintiffs did not know they were communicating, so the intercepted Personal Data was not "content" per the FWA, citing *Vasil v. Kiip, Inc.* Mot. at 28. In *Vasil*, the FWA claim encompassed only data collected when users were not using their devices. 2018 WL 1156328, at *3 (N.D. Ill. Mar. 5, 2018). Here, Plaintiffs alleged that they did not know Defendants were intercepting their communications to collect their Personal Data, and did not consent to any collection, not that they did not know they were making communications. ¶ 1. Plaintiffs' FWA claim encompasses Defendants' interception while Plaintiffs were *using* their mobile devices. *See*, *e.g.*, ¶¶ 458, 493-95. *Vasil* is distinguishable.

Similarly, Defendants rely on inapposite cases dealing with "record information"—asserting that record information is data "generated automatically" or "identifying" parties to a communication. Mot. at 29. Defendants cite *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1061 (N.D. Cal. 2012) to support their contention that automatically generated data does not fall under the FWA – but *iPhone* dealt only with the interception of geolocation data, not the troves of sensitive personal and behavioral data at issue here. Nor do Defendants' other cases support their argument. *In re Carrier IQ, Inc.*, in which FWA and other state wiretap claims were upheld, dealt with whether the usernames and passwords defendant intercepted fell within the FWA. 78 F. Supp. 3d 1051, 1082 (N.D. Cal. 2015). And while the Court held that those two data points did not fall within the FWA, it upheld the claim as to other intercepted data. *Id*.

Defendants attempt to characterize the intercepted Personal Data as "identity" information, which includes the "name," "address," and "subscriber number or identity" of a subscriber or customer (18 U.S.C. § 2702(c)(2)), or record information that reflects the characteristics of a message, rather than a communication. Mot. at 9-10. The FWA "adopts a 'broad, functional' definition of an electronic communication." *In re Pharmatrak,* 329 F.3d 9 at 18. (internal citation omitted). "[C]ontent" includes users "search[es]" and "inputs" because they "could divulge a user's . . . queries[] and habits on third-party websites." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 605; *see also Saleh*, 562 F. Supp. 3d at 517–18 (holding users' "clicks, typing, scrolling, swiping, tapping, keystrokes, geographic location, IP addresses, and data entry" constitute content); *Pharmatrak,* 329 F.3d 9 at 18 (collection of user inputs, including date of birth and medical condition, constituted "contents" of electronic communications). Defendants overreach, because the Personal Data they intercepted is more akin to the information at issue in *Internet Tracking*, *Saleh* and *Pharmatrak*, as it goes far beyond the limited identity or record set

at issue in *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014) (referrer header information), *Gilday v. Dubois*, 124 F.3d 277, 296 n.27 (1st Cir. 1997) (call record information); and *United States v. Reed*, 575 F.3d 900, 917 (9th Cir. 2009) (same). Here, the Personal Data intercepted includes, among other things, driving behavior data, user's interactions with an app, accelerometer data, and derived events such as distracted driving. *E.g.*, ¶ 461. Defendants attempt to distinguish *Pharmatrak* by asserting that no Plaintiff alleged that they "intended to convey information to the Apps or Arity SDK" so no content was submitted by users (Mot. at 29 n.17). Defendants get one thing right—no Plaintiff using a third-party app intended to convey information to Defendants. However, they misrepresent the record in saying that no Plaintiff intended to convey information to the various apps themselves. Each Plaintiff describes their use of the various apps for the purpose for which the app was intended, *e.g.*, GasBuddy (save money on gas, estimate trip costs), Life360 (family safety), FuelRewards (save money on gas), SiriusXM (streaming audio entertainment). ¶¶ 18, 27, 36, 45, 54, 64, 73, 82, 91, 100, 109, 118, 127, 136, 145, 155, 164, 173, 182, 191, 201, 210, 219, 228, 237, 246, 255, 265, 275, 285, 295, 305, 314, 323, 332, 341, 351, 360, 369. Defendants cannot argue otherwise.

**d. The Allegations Show Communications Were Contemporaneously Intercepted**

An "interception" occurs under the Wiretap Act where "the acquisition of a communication must be contemporaneous with its transmission." *Peters v. Mundelein Consol. High Sch. Dist. No. 120*, 2022 WL 393572, at *11 (N.D. Ill. Feb. 9, 2022) (quoting *Boudreau v. Lussier*, 901 F.3d 65, 77 (1st Cir. 2018)). Defendants admit that they collect data contemporaneously, or in "real-time" (Mot. at 30) but argue that because their SDK is integrated into the apps there is no interception: "Defendants cannot intercept communications to themselves." Mot. at 30. As discussed above, Defendants are not party to the intercepted communications (*see, supra,* Section V.a.). Plaintiffs' allegations, reflecting Defendants' own marketing materials, also show contemporaneous

interception. *See*, *e.g.*, ¶ 6 (Defendants' software enables them to "capture data" in "real-time" from "40 [million] active mobile connections."); ¶ 410 (the "Arity SDK collects telemetric information … in "real-time."); ¶ 492 ("As the sensors in Plaintiffs' devices generated data . . . the Arity SDK intercepted and siphoned that data and diverted it to Defendants."). These allegations are sufficient to show Defendants' contemporaneous interception. *See, e.g.*, *Hazel v. Prudential Fin., Inc.*, 2023 WL 3933073, at *3 (N.D. Cal. June 9, 2023) (upholding a wiretap claim on the basis allegations of real-time interception at the pleading stage).

Defendants attempted framing of their interception as "happen[ing] entirely within a self-contained app" (Mot. at 30) and thus not affecting interstate commerce is misleading at best.[12] As set forth above, Plaintiffs have alleged the electronic communications are "transmitted in whole or in part" by a "system that affects interstate or foreign commerce." 18 U.S.C. § 2510(12). The Supreme Court has long recognized that Congress intended to cover the "fullest . . . breadth constitutionally permissible under the Commerce Clause" by using the term "affecting commerce." *N.L.R.B. v. Reliance Fuel Oil Corp.*, 371 U.S. 224, 226 (1963). Plaintiffs alleged Defendants have "intercepted and siphoned and diverted data" from internet connected devices, not that data remained within self-contained apps. ¶ 492. Defendants' cited authority (*Rene v. G.F. Fishers, Inc.*, 817 F. Supp. 2d 1090, 1094 (S.D. Ind. 2011)) dealt with a keystroke logger on an individual computer, not a connected device. Further, Plaintiffs alleged Defendants amassed a vast trove of data on 45 million Americans nationwide (¶ 392), and monetized this data by selling it to third parties, including other insurers. ¶¶ 392-93. This is a clear impact on interstate commerce *See*, *e.g.*, *Gonzales v. Raich*, 545 U.S. 1, 19 (2005) (assessing effect on commerce in the aggregate).

---

[12] In conflating their SDK and the third-party apps and arguing that the apps themselves are "self-contained," Defendants put forth untested factual assumptions about the technological processes at issue. This is inappropriate on a motion to dismiss, as the technical details of Defendants' conduct is "a question for summary judgment." *Hazel*, 2023 WL 3933073, at *4.

**e. The SDK Is Not a "Tracking Device"**

Defendants argue in the alternative that because the Personal Data they intercepted includes location data, the "tracking device" exemption applies. Mot. at 11-12. Not so. Where, as here, the smart phone devices Defendants leverage to intercept Personal Data are "multi-function devices" that capture more than just location data, the tracking device exception does not apply the non-location data. *In re Application for an Order Authorizing Disclosure of Location Info. of a Specified Wireless Telephone*, 849 F. Supp. 2d 526, 576 (D. Md. 2011) (collecting cases holding that cell phone signals are electronic communications and cell phone providers are electronic communications service providers, except to the extent that a cell phone is being used to provide location data, *e.g.*, as a tracking device.); *see also In re Application for Pen Reg. & Trap/Trace Device with Cell Site Location Auth.*, 396 F. Supp. 2d 747, 756 (S.D. Tex. 2005) (it is a "fallacy" to argue "classifying cell site data as tracking information means that a cell phone must be regarded solely as a tracking device for all purposes"). Plaintiffs described the massive amounts of data Defendants intercept, beyond location data. *E.g.*, ¶¶ 410-11. Defendants cannot escape liability under the FWA because the devices they use for interception also transmit location information.

**f. Defendants' Challenges to the State Wiretap Claims Also Fail**

Defendants acknowledge that Plaintiffs' California, Florida, Illinois, and Pennsylvania wiretap claims "largely track" the FWA, and, for the same reasons explained above in connection with the FWA (Mot. at 30-31), the Court should sustain Plaintiffs' state wiretapping claims.[13] Defendants are wrong. Critically, Defendants' challenges to the California, Florida, Illinois, and Pennsylvania wiretap claims also fail because these are all two-party consent jurisdictions. *See,*

---

[13] Defendants raise the "party exception" only as to the California and Illinois wiretapping claims, falsely claiming that data was "sent" directly to Defendants, and not, as Plaintiffs allege, intercepted. In the unlikely event the Court is persuaded, only the California and Illinois wiretap claims are impacted.

*e.g.*, *Brown. v. Google, LLC*, 685 F. Supp. 3d at 909, 933, 937 n.33; Fla. Stat. § 934.03(3)(d); 720 ILCS 5/14-2(a)(3); 18 Pa. Stat. § 5704(4). And because Plaintiffs adequately pled that Defendants did not obtain informed consent before intercepting their "electronic communications," the state wiretap claims should be upheld.[14]

## VI. Plaintiffs Plausibly Alleged Their Other Claims

### a. Plaintiffs State Claims for Computer Hacking

Defendants' challenges Plaintiffs' Computer Fraud and Abuse Act ("CFAA") (Count 2), California Computer Data Access and Fraud Act ("CDAFA") (Count 9), and Pennsylvania's Unlawful Use of Computer statute ("PUUC") (Count 32) similarly lack merit. Mot. at 32

#### i. Defendants Intentionally Accessed the Devices Without Authorization

Defendants argue that Plaintiffs fail to allege that Defendants accessed their computer devices "without authorization" as required to assert a claim under the CFAA, and that the CDAFA and PUUC "largely follow" the CFAA, such that they "rise or fall" together. Mot. at 32.

As a threshold matter, Defendants' conclusory assertion that the CDAFA and PUUC "largely follow" the CFAA is a gross oversimplification. The relevant provisions of the three statutes are substantively different and, as Defendants themselves recognize, courts have interpreted them differently. *See, e.g.*, *Van Buren v. United States*, 593 U.S. 374, 378 (2021) (interpreting CFAA's statutory definition of "exceeds authorized access" narrowly, applying it only when an individual obtains information from "particular areas in the computer—such as files, folders, or databases— to which their computer access does not extend"); *Commonwealth v. Derr*, 293 A.3d 671, 680-81 (Pa. Super. Ct. 2023) (distinguishing *Van Buren* because PUUC does not

---

[14] Defendants do not challenge that their SDK is a "pen register" under CIPA, rather, they assert that consent "is an absolute defense" Mot. at 32. But as discussed above in Section II, Plaintiffs did not consent to Defendants' conduct, so Defendants' challenge to the pen register claim (Count 12) also fails.

share CFAA's narrow definition of "exceeds authorized access", and holding that PUUC, unlike CFAA, applies where an individual accesses data for unauthorized purposes); *Volkswagen Grp. of Am., Inc. v. Smartcar, Inc.*, 2022 WL 20184651, at *5 (N.D. Cal. July 7, 2022) ("Unlike the CFAA, CDAFA 'does not require unauthorized access. It merely requires *knowing* access.") (quoting *United States v. Christensen*, 828 F.3d 763, 789 (9th Cir. 2015)) (emphasis in original). Moreover, unlike the CFAA, which criminalizes only "unauthorized access," the CDAFA also criminalizes "unauthorized use," regardless of how access was obtained. *Id.*; *see, e.g.*, *Rodriguez v. Google, LLC*, 2021 WL 2026726, at *7 (N.D. Cal. May 21, 2021) (allegations of "Google's knowing access to, and unpermitted taking of, plaintiffs' app activity data" adequate under the CDAFA.).

More fundamentally, Defendants' "without authorization" argument is simply its flawed "consent" argument dressed in slightly different garb. As previously explained, Defendants did not obtain Plaintiffs' valid consent before harvesting their Personal Data. *See, e.g.*, *Margolis v. Apple Inc.*, 743 F. Supp. 3d 1124, 1134 (N.D. Cal. 2024) (rejecting argument that downloading iOS 15 voluntarily "means that Apple did not damage their devices 'without authorization.'"); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d at 1101 (rejecting argument that by downloading apps "plaintiffs gave 'permission' to the defendants to access and transmit their personal data.").

**ii. Plaintiffs Alleged Harm Under the CFAA and CDAFA**

Defendants also argue Plaintiffs' described losses are outside the CFAA's scope. Because Plaintiffs suffered actual monetary losses and other losses cognizable under the CFAA, they state a CFAA claim. The CFAA defines "loss" as not only "any reasonable cost to any victim," but also costs for investigating, responding to or restoring the data, systems, or information accessed, as well as any lost revenue, costs, or other consequential damages suffered as a result of the loss of service. 18 U.S.C. § 1030(e)(11). In contrast, "damage" is "any impairment to the integrity or

availability of data, a program, a system, or information[.]" *Id*. at § 1030(e)(8). "Thus, while 'damage' covers harm to data and information, 'loss' refers to monetary harms sustained by the plaintiff." *NovelPoster v. Javitch Canfield Grp*., 140 F. Supp. 3d 954, 961 (N.D. Cal. 2014).

Contrary to Defendants' assertions, "loss" under the CFAA encompasses more than just "technological harms—such as the corruption of files." Mot. at 34. Indeed, courts have found sufficient alleged losses can include lost time, *Healthcare Advocs., Inc. v. Harding, Earley, Follmer & Frailey*, 497 F. Supp. 2d 627, 647 (E.D. Pa. 2007), and "the expenditure of resources to investigate and remediate defendants' conduct." *WhatsApp Inc. v. NSO Grp. Techs. Ltd.*, 472 F. Supp. 3d 649, 683 (N.D. Cal. 2020). "Other consequential damages" is a broad category that may encompass a wide range of economic losses. *Sartori v. Schrodt*, 424 F. Supp. 3d 1121, 1129-30 (N.D. Fla. 2019), *aff'd*, 2021 WL 6060975 (11th Cir. Dec. 20, 2021) (husband's allegations that his wife's unauthorized access to his email account which resulted in increased litigation costs during divorce proceedings were sufficient to state a claim under CFAA). These loses, as required, are reasonable and causally linked to the unlawful conduct.

As alleged throughout the CAC, Personal Data was used in a variety of ways that caused Plaintiffs financial harm, including the loss of their privacy in and control of their mobility data, the increase in their insurance premiums, and the sudden denial of coverage by Defendant Allstate. *See, e.g.*, ¶¶ 37, 39, 41, 46, 48, 50, 55, 58, 60, 65, 67, 69. These out-of-pocket costs were not *de minimis*. The aggregate value of the data stolen from at least 40 million individuals through the Arity SDK is estimated to be worth millions of dollars. ¶¶ 33, 440. In addition, Plaintiffs suffered increases in insurance premiums and were unexpectedly dropped from Allstate, requiring increased premiums to a new insurer. ¶ 457. These harms are "costs to the victim[s]" of Defendants' CFAA violations. *See* 18 U.S.C. § 1030(e)(11). Further, Plaintiffs and other Class

Members spent time investigating the accuracy of their insurance reports and increases to their insurance premiums (despite a lack of claims or accidents) and seeking out alternative insurance, which further supports their claimed losses. ¶¶ 44, 54, 56. The lost value of time is a cognizable loss under the CFAA. *See Healthcare Advocs.*, 497 F. Supp. 2d at 647; *Modrowski v. Pigatto*, 712 F.3d 1166, 1170 (7th Cir. 2013) (listing evidence of "the number of hours [plaintiff] devoted to recovering his emails" among examples of evidence sufficient to establish loss in excess of $5,000). As such, Plaintiffs have alleged various cognizable losses.

Defendants' citation to *In re iPhone Application Litigation*, is distinguishable because it focuses only on the argument that unauthorized access to data reduces the value of said data. 844 F. Supp. 2d at 1068. The court did not analyze a scenario like this one in which defendants accessed and used Plaintiffs and Class Members' Personal Data to scrutinize driving behavior and adjust customers' insurance premiums, among other things. Plaintiffs here sustained losses beyond the diminution in value of their personal information.

Defendants' argument with regard to Plaintiffs' CDAFA claim, the state analog to the CFAA, is simply that the CDAFA claim "tracks the CFAA's scope of harms." Mot. at 34. Plaintiffs have sufficiently alleged both unauthorized access and cognizable losses under the CFAA as set forth above, and therefore have alleged the same under the CDAFA.

**b. FCRA Claims Are Sufficiently Alleged**

**i. Plaintiffs Sufficiently Alleged the Inaccuracy of Their Reports**

FCRA's section 1681e(b) inaccuracy "requirement can be satisfied by demonstrating the data furnished was (1) patently incorrect, or (2) materially misleading, including by omission." *Frazier v. Dovenmuehle Mortg., Inc.*, 72 F.4th 769, 772 (7th Cir. 2023).

First, Plaintiffs have met their burden by alleging the inaccuracies in the reports resulting

from Defendants' failure to provide context or specify the driver for collected driving data. *See Gandert v. Embry-Riddle Aeronautical Univ., Inc.*, 2020 WL 12575072, at *2 (C.D. Cal. Sept. 28, 2020) (finding allegations that defendant "inaccurately reported the amount and status of [Plaintiff's] student loans" sufficient as "Plaintiff need not plead facts he cannot know prior to discovery"). As alleged, Defendants' analysis of the Personal Data fails to distinguish when Plaintiffs are drivers or merely passengers, thereby attributing speeding or hard braking to them even when they were only passengers. ¶¶ 11, 426, 436. Each Plaintiff alleges that they carried their phones during car trips when they were passengers. *See, e.g.*, ¶¶ 240, 249, 259, 354, 363, 372. Plaintiffs further identified well publicized instances where Defendants' data analysis produced inaccurate reports. ¶ 437.

Second, Plaintiffs also met their burden by alleging the misleading way the reports present Plaintiffs' driving data. *See Taylor v. Screening Reps., Inc.*, 2015 WL 4052824, at *4 (N.D. Ill. July 2, 2015) (a report that is technically correct but nonetheless misleading is not maximally accurate or fair to the report subject). For example, it penalizes "hard braking" even when it reflects safe driving. ¶ 12. This omission-based decontextualization falls within *Frazier*'s description of misleading—"misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." Allegations that both inaccurate data was collected and that accurate data was presented in a decontextualized manner are more than sufficient to show that they created false and misleading impressions. ¶ 438. *Twumasi-Ankrah v. Checkr, Inc.*, 954 F.3d 938, 943-45 (6th Cir. 2020) (finding sufficient plaintiff's allegation that a report was inaccurate because it did not clarify that plaintiff was not at fault in two out of three listed car accidents.). Flaws in Defendants' methods of collecting and analyzing Personal Data fall below "reasonable procedures to assure maximum possible accuracy" of the reports. 15 U.S.C. § 1681e(b).

Furthermore, Defendants' characterization of Plaintiffs' allegations as conclusory is unwarranted where, as here, the data and method of analysis is solely in the possession of Defendants. A motion to dismiss "is not the appropriate vehicle for making fact-based arguments that dispute the factual accuracy of the allegations made in the Complaint." *Campbell v. Equifax Info. Servs., LLC*, 2019 WL 1332375, at *2 (S.D. Ga. Mar. 25, 2019). Plaintiffs have alleged sufficient facts regarding the inaccuracy of their reports.

**ii. Plaintiffs Alleged Harm Caused by Defendants' Misreporting**

Each Plaintiff stated that "[u]pon information and belief, insurance premiums paid by Plaintiff [] was in part, based on Personal Data covertly collected and used by Defendants." *See, e.g.*, ¶ 21. Defendants attempt to hold Plaintiffs' allegations to a higher standard by requiring Plaintiffs "to disaggregate" the reasons for the increase in their premiums and quantify the exact damage suffered by each plaintiff. This is not necessary at the pleading stage. *See Ellis v. Equifax Info. Servs., LLC*, 2019 WL 3521436, at *5 (N.D. Ga. June 6, 2019), *report and recommendation adopted*, 2019 WL 5406558 (N.D. Ga. June 25, 2019) ("factual specificity is not required to state a plausible claim."); *Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1123–24 (11th Cir. 2006) (reversing dismissal where general allegations of harm are sufficient to state an FCRA claim when the complaint as a whole supports the inference that the defendant is liable for the claim).

Plaintiffs' allegations of harm caused by Defendants' inaccurate and misleading reports are sufficient:

> Plaintiffs have had insurers drop them from coverage, have been denied coverage, have experienced a substantial increase in insurance premiums compared to the steady and regular increases they would otherwise expect, and have been quoted excessively high premiums. These Plaintiffs have not had any accidents, speeding tickets, or other moving violations that could reasonably be attributed to their loss of coverage or these otherwise unreasonable rate increases.

¶ 464.

Defendants also allege that "there is no basis to infer any third-party user of the date [sic] acted upon anything." Mot. at 38 (internal quotation omitted). First, this is irrelevant. "[T]he false reporting itself is the injury." *Santos v. Healthcare Revenue Recovery Grp., LLC.*, 90 F.4th 1144, 1151 (11th Cir. 2024) (alteration and quotation omitted). And even if reliance was a component of FCRA (it is not), Plaintiffs allege "the data Defendants collect just on consumer geolocation is sold to advertisers so that they can target consumers based on location and driving habits, allowing advertisers to target consumers 'on when and where they drive.'" ¶ 441. Further, Defendants "sell this data to other insurers, enabling those insurers to make their own coverage decisions about individual consumers." ¶ 14. "From 2017 to present, Arity Defendants have marketed and sold Driving Data and Identity Information to Allstate Insurance Defendants as well as to non-Allstate affiliates." ¶ 387. Plaintiffs' allegations included statements from Arity directly admitting the role their telematics data played in the premiums charged by third-parties: "[t]elematics data available at time of quote through the Arity IQSM network was exactly what many of our partners needed to return to a stable, profitable state." ¶ 442. Plaintiffs have sufficiently alleged the resulting harm.

**iii. Plaintiffs Sufficiently Alleged Willful Violation of FCRA**

Defendants again attempt to dismiss FCRA claims by disputing the facts alleged in the CAC. Defendants argue that "[s]imply stating that a defendant acted willfully, without more, is insufficient to access special damages under Section 1681n(a)." But Plaintiffs' allegations go further than simply stating willfulness. See *Murray v. New Cingular Wireless Servs., Inc.*, 523 F.3d 719, 725–26 (7th Cir. 2008) (holding FCRA willfulness "means recklessness—something more than negligence but less than knowledge of the law's requirements.").

The following allegations from the CAC sufficiently demonstrate Defendants' willful violation of FCRA for the pleading stage:

- Defendants "conspired to collect and sell the driving behavior data of at least 40 million consumers, totaling '2 trillion miles,' collecting more than one billion miles of driving data every single day. ¶ 4.
- They "[a]dopt[ed] and implement[ed] systems which misreport Driver Data and as being associated with one individual, when that information should be associated with other individuals. ¶ 524.
- They "[c]ontinu[ed] to misreport Driver Data and Identity Information even when the Arity Defendants know that the systems they developed to collect and report such information is prone to errors, does not correctly report Driver Data, provides no context for certain Driver Data, and is not subject to review to ensure that the Driver Data is correct." *Id.*
- They "[p]repar[ed] reports which the Arity Defendants knew, or were reckless in not knowing, that the Driver Data included therein was inaccurate." *Id.*

Defendants knew or should have known that their data collection methods fall below "reasonable procedures to assure maximum possible accuracy" of the reports and chose to continue to misreport driver data in violation of 15 U.S.C. § 1681e(b).

**iv. Defendants Do Not Challenge Plaintiffs' Impermissible Purpose Allegations**

Defendants have not challenged Plaintiffs' claim for improperly disseminating consumer reports for purposes outside of insurance such as marketing and analytics. As alleged by Plaintiffs the Arity Defendants describe their own "Arity Audiences" and "Arity Marketing Platform" products and services as tailored to providing data useful for targeted advertising – not for insurance underwriting. ¶ 520. Pursuant to Section 1681b(a) credit reporting agencies are permitted to provide consumer purposes for limited purposes, and it is well established that marketing is not a permitted purpose for credit reports. *Trans Union Corp. v. F.T.C.*, 81 F.3d 228,

229 (D.C. Cir. 1996); *Greenway v. Info. Dynamics, Ltd.*, 399 F. Supp. 1092 (D. Ariz. 1974), *aff'd,* 524 F.2d 1145 (9th Cir. 1975). Defendants do not, and cannot, challenge this separate, independent FCRA violation.

**c. Plaintiffs State Plausible Consumer Protection Claims**

**i. Plaintiffs Fulfilled Any Pre-Suit Notice Requirement**

Because Plaintiffs complied with the applicable pre-suit notice requirements by sending a notice letter on May 14, 2025 (prior to filing the CAC on May 27, 2025) that summarized Defendants' wrongdoing and Plaintiffs' injuries, the Court should reject Defendants' request for dismissal of Counts 7, 20, 22, 29, 36, and 37 for lack of pre-suit notice under the Unfair or Deceptive Acts or Practices ("UDAP") statutes of Alabama, Indiana, Mississippi, Ohio, Texas, and Utah, respectively. Mot. at 39-40; Declaration of Gary Klinger in Support of Opposition to Dismissal Motion, Ex. A Consumer Notice Letter ("Notice"). The Notice states that Defendants acquired Plaintiffs' Personal Data without their consent and sold that data to third parties for profit so third parties could use it for their own profit, including through insurance business. *Id*. The Notice further details that Plaintiffs suffered economic damages as a result of Defendants' conduct, including loss of tangible value of Personal Data, loss of privacy, and increased insurance rates. *Id*.

Defendants argue that the UDAP claims should be dismissed because Plaintiffs did not sufficiently allege "proper compliance" with pre-suit notice in their complaint. As an initial matter, Defendants' argument fails for Alabama because the pre-suit requirements do not apply to Plaintiffs' claims. Ala. Code § 8-19-10(e) (notice requirement does not apply where defendant does not have a place of business or assets in this state). As to the other states, Defendants provide no authority that Plaintiffs must plead the details of the notice they sent. *See, e.g.*, *Holmes v. Behr*

*Process Corp.*, 2015 WL 7252662, at *2 (N.D. Ala. Nov. 17. 2015) (what is required by statute is only written notice, not additional allegations of that notice); *Castagna v. Newmar Corp.*, 2016 WL 3413770, at *9 (N.D. Ind. Jun. 22, 2016) (same); *Charger Servs., LLC v. Togs USA, Inc.*, 2019 WL 11519056, at *1 (W.D. Tex. Apr. 10, 2019) (same); *Proctor & Gamble Co. v. Haugen*, 947 F. Supp. 1551, 155 (D. Utah 1996) (same); *see also Rickman v. BMW of N. Am.*, 2020 WL 3468250, at *15-16 (D.N.J. Jun 25, 2020) (refusing to dismiss claim based on the Mississippi Consumer Protection Act because plaintiff did not participate in a settlement program required under the act prior to filing lawsuit). To the extent Defendants challenge the sufficiency of Plaintiffs' notice, that is an issue of fact that cannot be decided on the pleadings. *See v. Mars Petcare US, Inc.*, 592 F.Supp. 3d 759, 764 (N.D. Ill. 2022) (sufficiency of notice is a question of fact).

In any event, statutory pre-suit notice provisions are procedural, not substantive, meaning a technical failure does not preclude Plaintiffs from pursuing their claims in federal court. *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 407 (2010) (holding that state procedural rules do not control in federal court because Rule 23 sets forth the only requirements to file a class action). Federal courts regularly permit consumer protection claims to proceed notwithstanding non-compliance with statutory pre-suit notice provisions. *See, e.g.*, *In re Hair Relaxer Mktg. Sales Pracs. & Prods. Liab. Litig.*, 2024 WL 4333246, at *13 (N.D. Ill. Sept. 27, 2024); *see also Rickman*, 2020 WL 3468250. An alleged failure to comply with these state procedural rules does not bar Plaintiffs' claims here.

**ii. Plaintiffs State Claims Under UDAP Statutes**

Defendants ignore the well-pled allegations in the CAC and applicable case law when they argue that Plaintiffs' claims under fifteen state consumer protection statutes must be dismissed because they fail to allege actual harms. Mot. at 41-42.

Defendants' suggestion that Plaintiffs' actual harms are "intangible" contradicts the allegations in the CAC. *See* ¶¶ 391-467. Plaintiffs have pled very real, very actual harms posed by the loss of their personal data. ¶ 466. And courts recognize that personal data have economic value, such that loss of the data or diminution in its value (through unauthorized disclosure) constitutes an actual loss. *See e.g., In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 460-62 (D. Md. 2020) ("the personal data of Americans … has economic value."). Like other personal data, driving data has independent and quantifiable market value, as evidenced by Defendants' own sale of such data to third parties. ¶ 466. By secretly collecting, retaining, and monetizing this data without consent, Defendants unjustly enriched themselves at Plaintiffs' expense. ¶¶ 453, 467. There is also nothing "intangible" about being dropped from insurance coverage, being denied coverage, or experiencing a substantial increase in insurance premiums—which Plaintiffs plausibly plead. ¶ 464.

Contrary to Defendants' arguments, it is sufficient under nearly every state UDAP statute cited by Defendants (except Alabama and Illinois, addressed below) for a plaintiff to allege ascertainable loss or allege injury to maintain a claim; there is no requirement to plead out-of-pocket monetary loss. Plaintiffs sufficiently alleged ascertainable loss because they alleged the loss of Personal Data, which has economic value to them. Courts increasingly recognize that individuals possess a property interest in their Personal Data, and that unauthorized collection of that data gives rise to compensable injury. *See In re Facebook Priv. Litig.*, 572 F. App'x 494, 494 (9th Cir. 2014) (recognizing injury where defendant itself monetized plaintiffs' data in overruling the district court's dismissal of the state law claims); *Brown v. Google LLC*, 685 F. Supp. at 940 (finding plaintiffs sufficiently alleged concrete harm based on allegations that their data had economic value).

Plaintiffs have also sufficiently alleged their Alabama and Illinois claims, where the state UDAP statutes have been interpreted to require monetary loss. As explained above, Plaintiffs plausibly alleged that Defendants collected inaccurate Personal Data, which were used to deny coverage, inflate insurance premiums, and which may be used in the future to increase their insurance premiums. *See, e.g.*, ¶¶ 165-68, 202-05, 207, 570, 576-77, 723, 732. These losses are more than sufficient to state claims under the Alabama and Illinois consumer protection statutes. *See, e.g.*, *Madkin v. Automation Pers. Servs., Inc.*, 2023 WL 12036560, at *3 (N.D. Ala. Apr. 17, 2023) (finding indirect monetary loss, including denial of credit and lack of access to a food assistance account, to be cognizable harms under the ADTPA); *Newman v. Metro. Life Ins. Co.*, 885 F.3d 992, 1003 (7th Cir. 2018) (inducing plaintiff to pay higher insurance premiums is deceptive, violates public policy, and violates ICFA). Finally, any questions regarding the reasonableness and quantification of damages are issues of fact generally left to the jury. *State Farm Mut. Auto. Ins. Co. v. Performance Orthapaedics & Neurosurgery, LLC*, 315 F. Supp. 3d 1291, 1311 (S.D. Fla. 2018).

Defendants' caselaw is inapposite. First, Defendants cite *Greenley v. Kochava, Inc.* for the proposition that the economic value of data is not enough if a plaintiff fails to allege the economic value to him. 684 F. Supp. 3d at 1054. Here, each Plaintiff has alleged that their Personal Data has intrinsic economic value to them, and that they would have expected compensation in exchange for providing that data to third parties. *See, e.g.*, ¶¶ 24, 33, 42, 51, 61, 70, 79, 88, 97. *Ramirez v. LexisNexis Risk Sols.*, is distinguishable based on the nature of the personal data at issue and the resulting harms. In *Ramirez*, the personal data involved included names, addresses, voter registration, and real property records. 729 F. Supp. 3d 838, 844-45 (N.D. Ill. 2024). The *Ramirez* plaintiffs did not allege that the data were inaccurate, or that any inaccuracies caused them harm.

*Id.* at 850. Here, the data at issue were surreptitiously gathered from Plaintiffs' personal devices, sold to third parties and used to inflate their insurance premiums, even when the collected data was inaccurate. *See, e.g.*, ¶¶ 21, 24, 30, 33, 39, 42, 48, 51. Plaintiffs plausibly alleged they paid more for insurance than they should have due to the monetization of inaccurate driving data. *Id*. And Plaintiffs further alleged that this data had economic value to Plaintiffs and Defendants. *Id*. Defendants cannot both profit from Plaintiffs' Personal Data and deny that it has value or that Plaintiffs have suffered economic loss.

#### iii. Plaintiffs' Unfair and Unlawful Claims Are Not Subject to Rule 9(b), and Defendants Have Not Met Their Burden on Plaintiffs' Deception Claims

Defendants argue that Plaintiffs' consumer protection claims fail to satisfy Rule 9(b), which requires allegations of fraud to be pled with particularity. For many of Plaintiffs' UDAP claims, though, Rule 9(b) does not even apply. First, Defendants ignore that Plaintiffs bring many of their state claims under the unfair or unlawful acts prong of the relevant statute, and such claims do not "sound in fraud" at all, such that Rule 9(b)'s particularity requirement does not apply. Mot. at 43. *See ATC Healthcare Servs., Inc. v. RCM Techs., Inc.*, 192 F. Supp. 3d 943, 954 (N.D. Ill. 2016) (If claims under consumer protection statutes allege only unfair conduct, then they are subject to the pleading standards of Rule 8).

Applying the proper (plausibility) standard to these claims, Plaintiffs' claims are sufficiently pled. Plaintiffs alleged Defendants acted "unlawfully" by intercepting, disclosing, and using Plaintiffs' Personal Data without consent in a violation of myriad laws such as the Federal and State Wiretapping laws, the CFAA, FCRA, and unlawful intrusion into Plaintiffs' privacy. Plaintiffs also adequately allege these same practices constitute unfair or unconscionable conduct. *See* ¶¶ 569-70, 584, 661, 693, 705, 723, 760, 776, 794, 808-09, 823, 864, 878, 888, 894, 931, 969,

981, 1009. To the extent their claims are based on the unlawful and unfair prongs of these consumer protection statutes, Plaintiffs need only satisfy Rule 8, and they have.

Defendants generalized argument that Plaintiffs' claims must be dismissed under Rule 9(b) is not sufficient to show any specific claims should be dismissed. On this point, *Perdue v. Hy-Vee, Inc.* is instructive. Not only did the court find that the data breach plaintiffs' unfair and deceptive trade practice claims were not subject to Rule 9(b), it held that the defendant failed to show that the plaintiffs' claims sounded in fraud, as its sole argument was that the plaintiffs failed to allege the "who, what, when, where, and how" of its conduct. 455 F. Supp. 3d 749, 768-69 (C.D. Ill. 2020). The defendant failed to demonstrate that the elements of the consumer protection statutes were similar to the elements of common law fraud, or that the plaintiffs' theory of recovery rested on a unified course of fraudulent conduct. *Id*. at 769. Defendants' arguments here are near-identical to the ones the *Perdue* court rejected, solely arguing that the "who, what, when, where, and how" standard was not met. Mot. at 44-45. As such, this Court should find that Defendants failed to demonstrate that Plaintiffs' unfair and unconscionable UDAP claims are subject to Rule 9(b).

**iv. Plaintiffs Meet Rule 9(b)'s Requirements**[15]

Defendants do not sufficiently identify the claims they contend are subject to Rule 9(b). Nonetheless, to the extent Rule 9(b) applies (including with respect to Plaintiffs' fraud-based UDAP claims), Plaintiffs have met Rule 9(b)'s heightened pleading standard by describing the "who, what, when, where, and how" of the fraud. *United States ex. Rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 776 (7th Cir. 2016).

First, Plaintiffs allege that Defendants engaged in the fraudulent conduct, the "who."

[15] Defendants' challenge to Plaintiffs' request for statutory attorney's fees and expenses of litigation under OCGA section 13–6–11 (Count 17) also fails because (Mot. at 48), for reasons stated above, the Georgia Plaintiff and subclass have plausibly alleged a Georgia law claim (Count 16).

¶¶ 377-82. Second, Plaintiffs alleged the "what:" Defendants, through their SDK integrated on apps downloaded on Plaintiffs' phones, covertly collected and intercepted Personal Data without Plaintiffs' knowledge or consent. ¶¶ 383-87, 405-06, 411, 419, 445-46. Defendants then, without Plaintiffs' knowledge or consent, used that valuable data for their own profit, and sold that data to third parties, even if the driving data collected was inaccurate. *Id*. Defendants argue Plaintiffs alleged no specific omission, and were informed about the data collection. Mot. at 45. Defendants' vague disclosures that the apps were "powered by Arity" or that "certain information" would be shared did not provide any meaningful notice that Defendants would then use Plaintiffs' Personal Data to build profiles that were used and sold for profit. ¶¶ 444-45. Defendants raise only a question of fact of what a reasonable consumer would have understood, not any pleading defect.

Third, Plaintiffs each allege when they downloaded apps where Defendants' SDK was embedded. *See, e.g.*, ¶¶ 18, 27, 36, 45, 54. Fourth, Plaintiffs each allege that they reviewed the prominent information about the nature and function of the apps, which provided no notice of the extent of Defendants' data harvesting, satisfying the "where" element. ¶¶ 419-20, 423-26, 444-445. Finally, Plaintiffs' allegations regarding the "how" and "why" satisfy Rule 9(b). Plaintiffs alleged Defendants' use of their SDK embedded in the apps to harvest Plaintiffs' Personal Data and how Defendants further used that information to inform and inflate their insurance rates. ¶¶ 427, 435-39, 444-46, 449-51. Further, Plaintiffs alleged that had they and other putative class members known about Defendants' conduct, they would have expected compensation in exchange for providing their personal data to third parties looking to use it for their own benefit. *Id*. These allegations are sufficient to show the "how" and "why" under Rule 9(b). Thus, Plaintiffs have met their burden under 9(b) to the extent it applies to any of their UDAP claims.

### d. Plaintiffs' Remaining Tort Claims and Counts Should Not Be Dismissed

#### i. Defendants' Data Collection and Sharing Is Highly Offensive

Courts recognize that "the ultimate question of whether [a defendant's] tracking and collection practices could highly offend a reasonable individual is an issue that cannot be resolved at the pleading stage." *In re Facebook, Inc. Internet Tracking Litig*., 956 F.3d at 606. "Relevant factors" to this inquiry "include the degree and setting of the intrusion, and the intruder's motives and objectives." *Hernandez v. Hillsides, Inc.*, 211 P.3d 1063, 1073 (Cal. 2009).

As an initial matter, the Court should reject Defendants' mischaracterization of the conduct at issue. *See* Mot. at 46. As this brief explains, Plaintiffs plausibly and concretely allege that Defendants wrongly collected and disclosed their data. Unlike the cases Defendants cite (Mot. at 46–47), Plaintiffs here allege throughout the CAC that Defendants actually collected and commercially exploited Plaintiffs' sensitive private information. *See, e.g.*, ¶ 421 (personal data was "collected . . . licensed to and shared with Defendants"); ¶ 428 (Defendants used Plaintiffs' data to create and profit from products and services); ¶ 465 (Defendants "marketed and sold [Plaintiffs'] data to insurers to be used to infer driving habits" regardless of their awareness of the "substantial integrity issues" with the data). Plaintiffs further allege that Defendants' wrongful collection and misuse of Data is widespread and pervasive; it is "virtually inevitable" the Defendants wrongfully collected and misused Plaintiffs' data. *See In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 787 (N.D. Cal. 2019) (if, as alleged, the defendant made users' information "readily available" to "a broad swath of companies," then "it is virtually inevitable that some of these companies obtained information on the named plaintiffs"). Accordingly, at the motion to dismiss stage, the conduct at issue in the "highly offensive" inquiry is Defendants' collection and sharing of the data, not, merely potential data collection and sharing.

Defendants' conduct is highly offensive. First, the degree of the intrusion is high. Plaintiffs allege Defendants collected many, specific data points regarding Plaintiffs, including geolocation data, accelerometer data, magnetometer data, gyroscopic data, mobile device information, trip attributes, GPS information, derived events, and other metadata over time. *See, e.g.*, ¶¶ 19-21, 406-17, 435-43. This far exceeds the location data collected in the *In re iPhone Application* case that Defendants cite. *See* Mot. at 47. Courts recognize that collecting many distinct types of information can reveal much more in combination than any isolated record. *Carpenter v. United States*, 585 U.S. 296, 315 (2018) (technological monitoring can reveal "detailed chronicle . . . compiled every day, every moment, over several years" and that "[s]uch a chronicle implicates privacy concerns."); *cf. Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1190 (N.D. Cal. 2020) (concluding that there "is no legally protected privacy interest in IP addresses alone, which [was] the only interest plaintiffs concretely allege[d]"). The monitoring alleged here creates a detailed chronicle that exceeds what would be observable through traditional public surveillance.

Second, Defendants' motives and objectives are highly offensive. Defendants surreptitiously collected and disclosed personal data for commercial gain. *See, e.g.*, ¶ 428 (Defendants used Plaintiffs' data to create and profit from products and services); ¶ 465 (Defendants' "marketed and sold [Plaintiffs'] data to insurers to be used to infer driving habits"). Such conduct is an "egregious breach" of social norms underlying Plaintiffs' right to privacy. *In re Facebook*, 956 F.3d at 601.

Such comprehensive commercial surveillance is highly offensive. In *In re Vizio, Inc., Consumer Priv. Litig.*, the court held that unauthorized collection of individuals' viewing habits for commercial purposes was "highly offensive," because such comprehensive tracking "reveals deeply personal details" about their lives. 238 F. Supp. 3d 1204, 1232 (C.D. Cal. 2017). The same

is true here: Defendants' comprehensive, surreptitious and unauthorized collection of Plaintiffs' data "is an intrusion into the most private areas of a consumer's life[.]" ¶ 458.

**ii. Defendants Violated Plaintiffs' Reasonable Expectation of Privacy**

Defendants contend Plaintiffs do not have a reasonable expectation of privacy in the collected data because it "is, or readily can become, publicly observed or disclosed." Mot. at 46. But Defendants did not collect data related to Plaintiffs' public conduct—it collected behavior recorded inside vehicles and from cellphones across days, weeks, months, and even years. *See, e.g.*, ¶ 461 (detailing categories of data harvested and exfiltrated by Defendants); ¶ 548 ("The unceasing, detailed, comprehensive, and silent collection of data—including data not perceptible to the naked eye— for profile-building purposes far exceeds what any Plaintiff or Class Member reasonably understood another motorist or passerby might notice."). And unlike *Troeckler v. Zeiser*, 2015 WL 1042187 (S.D. Ill. Mar. 5, 2015), the data was linked to individuals, usage patterns, and historical locations, not just the car itself. *See* Mot. at 46.

Finally, as discussed above in Section II, Plaintiffs did not consent to Defendants' wrongful collection and misuse of their Personal Data, so Defendants' consent defense fails.

**VII. Plaintiffs' Properly Pled Claims Against All Defendants**

Defendants argue that all claims against the AllCorp Defendants, Defendant Arity 875, and Defendant Arity Services should be dismissed for "improper group pleading" and based on factors allegedly unique to the AllCorp Defendants. Mot. at 48-49. Neither argument warrants dismissal.

First, there is no blanket prohibition on group pleading; it is permitted where the complaint sufficiently puts defendants on notice of the claims. *Robles v. City of Chicago*, 354 F. Supp. 3d 873, 975 (N.D. Ill. 2019). Allegations directed at multiple defendants satisfy Rule 8 where, as here, the pleading describes collective conduct that forms the basis for liability. *See Sloan v. Anker Innovations Ltd.*, 711 F. Supp. at 956 (rejecting group-pleading challenge because plaintiffs

alleged that each defendant "'acted jointly to perpetrate the acts' underlying the complaint"); *Gorgas v. Amazon.com, Inc.*, 2023 WL 4209489, at *3 (N.D. Ill. June 23, 2023) (finding corporate-affiliate defendants "do not have to speculate about which claims or allegations pertain to them" because claims are plead against all defendants).

Plaintiffs' CAC alleges that all Defendants improperly capture consumers' Personal Data without their knowledge or consent, and subsequently use that sensitive information for their own purposes and for their own profit. *See* ¶¶ 4, 383. The CAC identifies the relevant Allstate and Arity entities, alleges their respective roles within a unified telematics program, and details the shared objective of harvesting and monetizing driving data. *Id.* ¶¶ 2-3, 377-87. These allegations are far from conclusory "shotgun pleading." *Douglas v. Alfasigma USA, Inc.*, 2021 WL 2473790, at *9 (N.D. Ill. June 17, 2021) (declining to dismiss as shotgun pleading a complaint that puts defendant on notice of the claims). Rule 8 requires nothing more of Plaintiffs. Defendants' reliance on *Nagel v. ADM Investor Servs., Inc.* is misplaced. 995 F. Supp. 837 (N.D. Ill. 1998). *Nagel* involved three unaffiliated defendants. Here, Plaintiffs allege specific relationships among Defendants, including that AllCorp founded the Arity Defendants. *See* ¶¶ 377–84; *cf. Vaughan v. Biomat USA, Inc.*, 2022 WL 1266389, at *3 (N.D. Ill. Apr. 28, 2022) (dismissing claims against corporate defendants where plaintiffs failed to set forth the relationship between defendants).

Even to the extent Rule 9(b) applies, Plaintiffs' allegations suffice. The CAC provides sufficient factual detail and fair notice of the claims against each Defendant. The Court should deny dismissal on this basis. Plaintiffs cannot know, absent discovery, each Defendant's specific misconduct. *See Wordlaw v. Enter. Leasing Co. of Chicago, LLC*, 2020 WL 7490414, at *3 (N.D. Ill. Dec. 21, 2020) (group pleading appropriate where plaintiff was "unable to allege which [defendant] installed and controlled" the timekeeping system at issue); *see also Jepson, Inc. v.*

*Makita Corp.*, 34 F.3d 1321, 1329 (7th Cir. 1994) ("[D]efendants . . . are related corporations that can most likely sort out their involvement without significant difficulty.").

Second, Defendants' argument that AllCorp should be dismissed because it is a non-operating holding company fails, because that alone does not shield it from liability. *See Northbound Grp., Inc. v. Norvax, Inc.*, 795 F.3d 647, 651 (7th Cir. 2015) (Under the Illinois doctrine of direct participant liability, a parent company "may be liable for the alleged wrong of its subsidiary when the 'alleged wrong can seemingly be traced to the parent through the conduit of its own personnel and management.'") (citations omitted).

Plaintiffs allege that AllCorp developed the challenged data collection methods and formed Arity to advance them, ¶ 384, thereby establishing AllCorp's direct involvement in and benefit from the misconduct. *See BCBSM, Inc. v. Walgreen Co.*, 512 F. Supp. 3d 837, 862 (N.D. Ill. 2021) (denying motion to dismiss parent holding company). Discovery is necessary to determine the extent of AllCorp's involvement, but at this stage, claims against AllCorp should proceed.

Lastly, Defendants offer no authority in support of their assertion that Plaintiffs must allege the specific states in which AIC and AVPIC operate. Courts routinely hold that such allegations are adequate at the pleading stage. *See, e.g.*, *Curry v. Revolution Labs, LLC*, 949 F.3d 385, 402 (7th Cir. 2020) (reversing dismissal where defendant conducted business nationwide). Plaintiffs' claims against the Allstate Defendants should therefore proceed.

## **CONCLUSION**

For the aforementioned reasons Plaintiffs respectfully request the Court deny the Motion in full.

Dated: August 25, 2025

Respectfully submitted,

*/s/ Robert A. Clifford*
Robert A. Clifford
*rac@cliffordlaw.com*
**CLIFFORD LAW OFFICES, P.C.**
120 North LaSalle Street, 36th Floor
Chicago, Illinois 60602
Tel.: (312) 899-9090

*Liaison Counsel*

*/s/ Gary M. Klinger*
Gary M. Klinger
*gklinger@milberg.com*
**MILBERG COLEMAN BRYSONPHILLIPS GROSSMAN PLLC**
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606
Tel.: (866) 252-0878

*/s/ John A. Yanchunis*
John A. Yanchunis
*jyanchunis@forthepeople.com*
**MORGAN &MORGAN COMPLEXLITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Tel.: (813) 223-5505

*Interim Co-Lead Counsel*

*/s/ Tina Wolfson*
Tina Wolfson
*twolfson@ahdootwolfson.com*
**AHDOOT &WOLFSON PC**
2600 W. Olive Avenue, Suite 500
Burbank, California 91505
Tel.: (310) 474-9111

*/s/ Lesley E. Weaver*
Lesley E. Weaver (SBN 191305)
*lweaver@bfalaw.com*
**BLEICHMAR FONTI &AULD LLP**
1330 Broadway, Suite 630
Oakland, California 94612
Tel.: (415) 445-4003

*/s/ Julian C. Diamond*
Julian C. Diamond
*jdiamond@bursor.com*
**BURSOR &FISHER PA**
1330 Avenue of the Americas, 32nd Floor
New York, New York 10019
Tel.: (646) 837-7150

*/s/ Daniel O. Herrera*
Daniel O. Herrera
*dherrera@caffertyclobes.com*
**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
135 S. LaSalle, Suite 3210
Chicago, Illinois 60603
Tel.: (312) 782-4880

*/s/ Thomas E. Loeser*
Thomas E. Loeser
*tloeser@cpmlegal.com*
**COTCHETT, PITRE &MCCARTHY LLP**
1809 7th Avenue, Suite 1610

*/s/ Adam E. Polk*
Adam E. Polk
*apolk@girardsharp.com*
**GIRARD SHARP LLP**
601 California Street, Suite 1400

Seattle, Washington 98101
Tel.: (206) 970-8181

San Francisco, CA 94108
Tel.: (415) 981-4800

*/s/ Adele Daniel*
Adele Daniel
*adaniel@kellerrohrback.com*
**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, Washington 98101
Tel.: (206) 623-1900

*/s/ Jeff Ostrow*
Jeff Ostrow
*ostrow@kolawyers.com*
**KOPELOWITZ OSTROW P.A.**
One West Las Olas Boulevard, Suite 500
Fort Lauderdale, Florida 33301
Tel: (954) 332-4200

*/s/ Sabita J. Soneji*
Sabita J. Soneji (SBN 224262)
*ssoneji@tzlegal.com*
**TYCKO &ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, California 94612
Tel.: (510) 254-6808

*/s/ Rebecca Solomon*
Rebecca Solomon
*rsolomon@tousley.com*
**TOUSLEY BRAIN STEPHENS PLLC**
1200 5th Avenue, Suite 1700
Seattle, Washington 98101
Tel.: (206) 667-0249

**Plaintiffs' Executive Committee**

*/s/ Charles E. Schaffer*
Charles E. Schaffer
*cschaffer@lfsblaw.com*
**LEVIN SEDRAN & BERMAN LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: (215) 592-1500

**CERTIFICATE OF SERVICE**

I hereby certify that on August 25, 2025, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF. Copies of the foregoing document will be served upon counsel via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Tina Wolfson*
TINA WOLFSON