**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re: ALLSTATE & ARITY CONSUMER PRIVACY LITIGATION | Master Docket No. 1:25-cv-00407<br><br>Hon. Jeremy C. Daniel |

**REPLY IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS THE CONSOLIDATED COMPLAINT**[1]

[1] Capitalized terms used herein have the meaning provided to them in the Motion.

# TABLE OF CONTENTS


INTRODUCTION ........................................................................................................ 1

ARGUMENT ............................................................................................................. 2

I. Plaintiffs Plead Facts Insufficient to Satisfy Rule 8 and 9(b) Pleading Requirements. ........................................................................................................ 2

II. Plaintiffs Cannot Sidestep their Own Allegations Demonstrating Consent. ...................... 4

III. Plaintiffs' Purported Insurance-Based Harms are Barred by the Filed Rate Doctrine. ...... 9

IV. Plaintiffs' State Law Claims Are Preempted by the FCRA. ............................................ 11

V. Plaintiffs Federal and State Wiretap Claims Should Be Dismissed. ............................... 12

- A. The Party Exception to the FWA Exempts Defendants from Liability. ............... 12
- B. Plaintiffs Fail to Plead the Elements of an FWA Claim. ..................................... 15
- C. Plaintiffs' State Statutory Wiretapping Claims Should Be Dismissed. ................ 17

VI. Plaintiffs Fail to Plausibly Allege Their Other Claims .................................................. 18

- A. Plaintiffs' Federal and State Computer Hacking Statute Claims Fail.................. 18
- B. Plaintiffs Fail to State a Claim Under the FCRA. ................................................ 19
- C. Plaintiffs' Consumer Protection Claims Must Be Dismissed. ............................. 21
- D. Plaintiffs' Privacy Tort Claims Fail as Matter of Law. ....................................... 24

VII. The Claims Against AllCorp, AIC, AVPIC, Arity 785, and Arity Services Fail. ............ 24

CONCLUSION ......................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Aargon Agency, Inc v. O'Laughlin*,
70 F.4th 1224 (9th Cir. 2023) ....................11

*Aerojet Rocketdyne, Inc. v. Glob. Aerospace, Inc.*,
No. 2:17-cv-01515-KJM-AC, 2020 WL 3893395 (E.D. Cal. July 10, 2020) ....................23

*Aghaeepour v. N. Leasing Sys., Inc.*,
378 F. Supp. 3d 254 (S.D.N.Y. 2019)....................11

*Allison v. ChexSystems Collection Agency, Inc.*,
No. 23-cv-1132, 2023 WL 3200254 (N.D. Ill. May 2, 2023)....................20

*Alston v. Countrywide Financial Corp.*,
585 F.3d 753 (3d Cir. 2009)....................10

*Andrews v. Sirius XM Radio Inc.*,
932 F.3d 1253 (9th Cir. 2019) ....................19

*In re Application for an Order Authorizing Disclosure of Location Info. of a Specified Wireless Tel.*,
849 F. Supp. 2d 526 (D. Md. 2011) ....................15

*In re Application for Pen Register & Trap/Trace Device with Cell Site Location Auth.*,
396 F. Supp. 2d 747 (S.D. Tex. 2005) ....................15

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024) ....................2, 3

*Baity v. Johnson & Johnson*,
No. 3:20-cv-01367, 2021 WL 3603489 (S.D. Ill. Aug. 13, 2021)....................4

*Bank of Am., N.A. v. Knight*,
725 F.3d 815 (7th Cir. 2013) ....................4

*BCBSM, Inc. v. Walgreen Co.*,
512 F. Supp. 3d 837 (N.D. Ill. 2021) ....................25

*Bell Atlantic v. Twombly*,
550 U.S. 544 (2007)....................1, 4, 5

*Borsellino v. Goldman Sachs Grp., Inc.*,
477 F.3d 502 (7th Cir. 2007) ....................3

*Brodsky v. Apple, Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. Apr. 7, 2020) ....................18

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ....................14, 22

*Brown v. Mortensen*,
253 P.3d 522 (Cal. 2011) ....................11

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) ....................9

*Carlson v. Trans Union, LLC*,
259 F. Supp. 2d 517 (N.D. Tex. 2003) ....................12

*Chabolla v. ClassPass Inc.*,
129 F.4th 1147 (9th Cir. 2025) ....................7

*Commonwealth of Pennsylvania v. Derr*,
293 A.3d 671 (Pa. Super. Ct. 2023), *appeal denied*, 308 A.3d 766 (Pa. 2023)....................19

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023)....................2, 3

*Crabill v. Trans Union, L.L.C.*,
259 F.3d 662 (7th Cir. 2001) ....................21

*Curry v. Revolution Labs, LLC*,
949 F.3d 385 (7th Cir. 2020) ....................25

*Daly v. Wonderful Co., LLC*,
No. 24-cv-1267, 2025 WL 672913 (N.D. Ill. Mar. 3, 2025) ....................2

*Dante Valve Co. v. Republic Brass Sales, Inc.*,
No. 17-cv-2582, 2019 WL 1406583 (S.D. Cal. Mar. 28, 2019) (Opp. 19) ....................10

*Davenport v. Farmers Ins. Grp.*,
378 F.3d 839 (8th Cir. 2004) ....................12

*In re Dealer Mgmt. Sys. Antitrust Litig.*,
362 F. Supp. 3d 510 (N.D. Ill. 2019) ....................21

*Drew v. Equifax Info. Servs.*,
No. C 07-00726 SI, 2007 WL 2028745 (N.D. Cal. Jul. 11, 2007) ....................12

*Eidmann v. Walgreen Co.*,
522 F. Supp. 3d 634 (N.D. Cal. 2021) ....................23

*Ellis v. Equifax Info. Servs., LLC*,
No. 1:18-cv-5185-TCB, 2019 WL 3521436 (N.D. Ga. June 6, 2019) ....................................20

*In re Facebook, Inc., Consumer Privacy User Profile Litigation*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ........................................................................3

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d at 605 ....................................................................................3, 13, 16, 24

*Galper v. J.P. Morgan Chase Bank, N.A.*,
802 F.3d 437 (2d Cir. 2015)...........................................................................12

*Gandert v. Embry-Riddle Aeronautical Univ., Inc.*,
SACV 20-01320-CJC(JDEx), 2020 WL 12575072 (C.D. Cal. Sept. 28, 2020).......................20

*Godun v. JustAnswer LLC*,
135 F.4th 699 (9th Cir. 2025) ..................................................................6, 7

*In re Google Inc. Gmail Litig.*,
No. 13-md-02430-LHK, 2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) .................................8

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) ......................................................................18

*Gray v. Midland Funding*,
No. 5:16-cv-00036-TBR, 2017 WL 1293995 (W.D. Ky. Apr. 4, 2017) .................................7

*Green v. Beth*,
663 F. App'x 471 (7th Cir. 2016) ............................................................................3

*Griffith v. TikTok*,
697 F. Supp. 3d 963 (C.D. Cal. 2023) .......................................................................9

*Hahn v. Walsh*,
762 F.3d 617 (7th Cir. 2014) ...............................................................................22

*Hazel v. Prudential Fin., Inc.*,
No. 22-cv-07465-CRB, 2023 WL 3933073 (N.D. Cal. June 9, 2023) ....................................17

*Heard v. Beckton, Dickinson & Co.*,
440 F. Supp. 3d 960 (N.D. Ill. 2020) ........................................................................3

*Hernandez-Silva v. Instructure Inc.*,
No. 2:25-cv-02711, 2025 WL 2233210 (C.D. Cal. Aug. 4, 2025), *appeal docketed*, No. 25-5438 (9th Cir. Aug. 27, 2025) .................................................2, 17

*Howard v. Lab. Corp. of Am.*,
No. 1:23-cv-00758, 2024 WL 4250677 (M.D.N.Cl. Sept. 27, 2024).......................................3

*Humphrey v. Trans Union LLS*,
759 F. App'x 484 (7th Cir. 2019) ....................................................................................20

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ..........................................................................16

*Javier v. Assurance IQ LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) ............................................................................18

*Ji v. Naver Corp.*,
No. 21-cv-05143-HSG, 2022 WL 4624898 (N.D. Cal. Sept. 30, 2022)..................................22

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) (cited at Opp. 23–24).................................................13

*Knudson v. Wachovia Bank*,
513 F. Supp. 2d 1255 (M.D. Ala. 2007) ..........................................................................12

*Korte v. Allstate Ins. Co.*,
48 F. Supp. 2d 647 (E.D. Tex 1999).........................................................................10, 11

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. Apr. 2, 2025), *appeal docketed*, No. 25-2857
(9th Cir. May 2, 2025) ...................................................................................................5, 8, 9

*Levine v. World Fin. Network Nat'l Bank*,
437 F.3d 1118 (11th Cir. 2006) .......................................................................................20

*Madkin v. Automation Pers. Servs., Inc.*,
No. 2:21-cv-1177-AMM, 2023 WL 12036560 (N.D. Ala. Apr. 17, 2023) .............................22

*Margolis v. Apple Inc.*,
743 F. Supp. 3d 1124 (N.D. Cal. 2024) ..........................................................................19

*Mirabile v. Bank of Am., Nat'l Assn.*,
No. 23-cv-01719, 2024 WL 1250265 (N.D. Ill. Mar. 22, 2024) ............................................12

*Nagel v. ADM Investor Servs., Inc.*,
795 F.3d 647 (7th Cir. 2015) ..........................................................................................25

*Newman v. Metro. Life Ins. Co.*,
885 F.3d 992 (7th Cir. 2018) ..........................................................................................22

*Northbound Grp., Inc. v. Norvax, Inc.*,
795 F.3d 647 (7th Cir. 2015) ..........................................................................................25

*Novak v. Experian Info. Sols., Inc.*,
782 F. Supp. 2d 617 (N.D. Ill. 2011) ..............................................................................21

*NovelPoster v. Javitch Canfield Grp.*,
140 F. Supp. 3d 954 (N.D. Cal. 2014) ....................20

*Opperman v. Path, Inc.*,
87 F. Supp. 3d 1018 (N.D. Cal. 2014) ....................9

*Perdue v. Hy-Vee, Inc.*,
455 F. Supp. 3d 749 (C.D. Ill. 2020) ....................23

*Peters v. Mundelein Consol. High Sch. Dist. No. 120*,
No. 21-cv-0336, 2022 WL 393572 (N.D. Ill. Feb. 9, 2022) ....................16

*In re Pharmatrak*,
329 F.3d 9 (1st Cir. 2003) ....................16

*Ponder v. Experian Info. Sols., Inc.*,
No. 1:19-cv-5494, 2021 WL 2688648 (N.D. Ga. May 18, 2021) ....................11

*Popa v. Microsoft Corp.*,
--- F.4th ---, 2025 WL 2448824 (9th Cir. Aug. 26, 2025) ....................24

*Purcell v. Bank of Am.*,
659 F.3d 622 (7th Cir. 2011) ....................12

*Renninger v. ChexSystems*,
No. 98-cv-669, 1998 WL 295497 (N.D. Ill. May 22, 1998) ....................20

*Riganian v. LiveRamp Holdings, Inc.*,
--- F. Supp. 3d ---, 2025 WL 2021802 (N.D. Cal. Jul. 18, 2025) ....................14

*Rodriguez v. Bytedance, Inc.*,
No. 23-cv-04953, 2025 WL 2495865 (N.D. Ill. Aug. 29, 2025) ....................17

*Rodriguez v. ByteDance*,
No. 23-cv-4953, 2025 WL 672951 (N.D. Ill. Mar. 3, 2025) ....................5, 7, 19

*Rodriguez v. Google LLC*,
No. 20-cv-04688-RS, 2021 WL 2026726 (N.D. Cal May 21, 2021) ....................14

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) ....................16

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins Co.*,
559 U.S. 393 (2010), Opp. 40 ....................21

*Silver v. Stripe Inc.*,
No. 4:20-cv-08196-YGR, 2021 WL 3191752 (N.D. Cal. July 28, 2021) ....................5

*Sloan v. Anker Innovations Ltd.*,
711 F. Supp. 3d 946 (N.D. Ill. 2024) ....................................................................4

*Smith v. Google*,
735 F. Supp. 3d 1188 (N.D. Cal. 2024) ....................................................................3

*Snyder v. G6 Hosp. LLC*,
No. 5:24-cv-02423-AH-(SHKx), 2025 WL 2426613 (C.D. Cal. Aug. 18, 2025) ....................................................................5, 7, 8

*Stein v. Edward-Elmhurst Health*,
No. 23-cv-14515, 2025 WL 580556 (N.D. Ill. Feb. 21, 2025) ....................................................................14, 18

*Stergiopoulos v. First Midwest Bancorp, Inc.*,
427 F.3d 1043 (7th Cir. 2005) ....................................................................2, 11, 15, 24

*Taylor v. Screening Reps.*,
No. 13 C 02886, 2015 WL 4052824 (N.D. Ill. July 2, 2015) ....................................................................20

*TikTok, Inc. In-App Browser Priv. Litig.*,
24-cv-2110, 2024 WL 4367849 (N.D. Ill. Oct. 1, 2024); ....................................................................5

*Time Warner Cable Midwest LLC v. Pennyrile Rural Electric Cooperative Corp.*,
No. 5:15-cv-00045-TBR, 2015 WL 4464105 (W.D. Ky. July 21, 2015) ....................................................................10

*Trzeciak v. Allstate Property and Casualty Insurance Co*.,
569 F. Supp. 3d 640 (E.D. Mich. 2021) ....................................................................10

*Twumasi-Ankrah v. Checkr, Inc.*,
954 F.3d 938 (6th Cir. 2020) ....................................................................20

*Van Buren v. United States*,
593 U.S. 374 (2021) ....................................................................19

*Vasil v. Kiip, Inc.*,
No. 16-cv-09937, 2018 WL 1156328 (N.D. Ill. Mar. 5, 2018) ....................................................................16

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) ....................................................................23

*Washington v. Flixbus, Inc*.,
No. 3:25-cv-00212-H-MSB, 2025 WL 1592961 (S.D. Cal. June 5, 2025) ....................................................................5

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) ....................................................................13

*Yockey v. Salesforce, Inc.*,
688 F. Supp. 3d 962 (N.D. Cal. 2023) ....................................................................9

*Young v. Experian Info. Sols., Inc.*,
776 F. Supp. 3d 721 (N.D. Ill. 2025) ........................................................................21

*In re Zynga Privacy Litig.*,
750 F. 3d 1098 (9th Cir. 2014) ..............................................................................16

**Statutes**

15 U.S.C. § 1681h(e) ..........................................................................................12

18 U.S.C. § 2510(8) ............................................................................................16

18 U.S.C. § 3117(b) ............................................................................................15

Tex. Bus. & Com. Code Ann. § 17.505(a) ..............................................................21

Utah Code Ann. 1953 § 13-11a-4 ..........................................................................21

**Other Authorities**

Fed. R. Civ. P. 8 ..........................................................................................2, 4, 24

Fed. R. Civ. P. 9 ........................................................................................2. 3, 4, 24

Fed. R. Civ. P. 23 ...............................................................................................21

**INTRODUCTION**

Defendants' Motion to Dismiss showed that Plaintiffs do not allege *facts* that their data was disclosed, do not allege *facts* that they did not consent, and do not allege *facts* that they were harmed. Not only does Plaintiffs' Opposition fail to respond to these deficiencies, but it affirmatively confirms just how little their sprawling Complaint actually alleges. It has been almost 20 years since *Twombly*. Conclusions and speculation are not enough.

Plaintiffs concede that they filed their actions as an opportunistic follow-on to a lawsuit filed by the Texas Attorney General, and not based on their own experience. It is little surprise that they fail to plead any facts supporting a claim that *their* personal data was improperly disclosed. In response to Defendants' argument showing that Plaintiffs consented to any purported disclosure, Plaintiffs ignore their affirmative allegations that they *did* review and agree to such disclosure, and ask the Court to punt on that issue as a question of "fact." But any more *facts* of each Plaintiff's consent are known to each of them and strategically not alleged. Remarkably, Plaintiffs do not deny either that consent is a fully dispositive issue *or* that they saw the disclosures incorporated into the Complaint—they merely claim that a legal conclusion that they did not "consent" is enough for their claims to survive (for now). They are wrong, as routinely and recently held by other courts. And Plaintiffs do not point to any actual, cognizable harm, instead impermissibly asking the Court—against settled law—to find that some unpled and unquantified difference between state-mandated filed insurance rates and what Plaintiffs *think* they *should* pay is "harm."

Further, the Opposition shows that the sprawling legal claims Plaintiffs try to assert here—from wiretapping and computer hacking, to the FCRA, to statutory consumer protection and fraud-based claims—fail for reasons in addition to and wholly independent of consent, as these claims either do not apply to the technology at issue here, or require a showing of actual injury (which Plaintiffs *again* do not and cannot allege). Their wiretapping and hacking claims fail for many

reasons; their FCRA claims are preempted; their privacy torts fail at the gate; and their UDAP claims rest on fraud but fail under Rule 9(b). At bottom, Plaintiffs seek to transform conduct that they cannot allege was anything but disclosed, regulated, and consented-to into retroactive legal claims. Plaintiffs' Complaint is not just overreaching—it is legally unsustainable.[2]

## ARGUMENT

### I. Plaintiffs Plead Facts Insufficient to Satisfy Rule 8 and 9(b) Pleading Requirements.

The Complaint fails to satisfy Rules 8 and 9 because (1) it rests on vague and conjectural allegations about hypothetical disclosures, as opposed to disclosures of *Plaintiffs'* purported data, and (2) although the allegations are based in fraud, they are impermissibly pleaded in a shotgun manner that fails under Rule 9. The Opposition's attempt to rehabilitate the Complaint fails.

*First*, although Plaintiffs argue that they pled how the Apps and SDK work and *can* be used, they concede that, when it comes to their own data, they rest on generalized, uniform allegations about Defendants' conduct. *See* Opp. 3–4. But thirty-nine individuals' allegations that their own, personal data *may* have been disclosed does not allege that *anyone's actual data* was disclosed. *See, e.g.*, *Daly v. Wonderful Co., LLC*, No. 24-cv-1267, 2025 WL 672913, at *6 (N.D. Ill. Mar. 3, 2025) (plaintiff alleged that water bottles contain microplastics but not that defendant's bottles had microplastics); *Hernandez-Silva v. Instructure Inc.*, No. 2:25-cv-02711, 2025 WL 2233210, at *2–3 (C.D. Cal. Aug. 4, 2025) (dismissing generalized allegations that "offer[ ] scant detail about Plaintiffs' own experiences"), *appeal docketed*, No. 25-5438 (9th Cir. Aug. 27, 2025).

Plaintiffs offer no cases supporting their argument, and instead point to Defendants' cases, *B.K.* and *Cousin*, both involving nearly-identical theories of liability (with websites, instead of apps) and the same claims asserted here. And, like it should here, the *B.K.* and *Cousin* courts

---

[2] Plaintiffs appear to abandon Count 27, which does not provide a private cause of action, an apparent concession that the claim should be dismissed.

dismissed based on plaintiffs' failure to allege *facts* about "their experiences with Defendant," *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1064 (C.D. Cal. 2024), or "personal participation in any of this," *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1123 (S.D. Cal. 2023).

*Second*, Plaintiffs fail to show any basis for the Court to credit their "information and belief" allegations. Many of the facts underlying Plaintiffs' allegations are *not* "particularly in [the] possession and control of [the] defendant." *Green v. Beth*, 663 F. App'x 471, 473–74 (7th Cir. 2016) (citation omitted). For example, unlike cases where the alleged harm is less concrete, Plaintiffs presumably receive (and pay) actual insurance bills and know whether and which insurers purportedly raised their insurance rates. Compl. ¶¶ 14, 21, 428; *see Heard v. Beckton, Dickinson & Co.*, 440 F. Supp. 3d 960, 969 (N.D. Ill. 2020) (dismissing information and belief pleading where implausible that defendants had exclusive control over the pertinent facts).[3]

*Third*, Plaintiffs try to avoid Rule 9(b) by revising their allegations to say only that "Defendants proceeded in 'secret.'" Opp. 5. But the Complaint repeatedly accuses Defendants not just of being "secretive," but also of "deceptive" and "unauthorized" conduct, and pleads claims under at least five statutes with "fraud" in the title. *See, e.g.*, Compl. ¶¶ 445, 459–67; Counts 2, 8, 9, 18, 24. Plaintiffs' reliance on *Smith v. Google* is wholly misplaced: the plaintiffs there challenged "Google's alleged data collection" but *not* any "potentially fraudulent or misleading representations about this collection." 735 F. Supp. 3d 1188, 1198 (N.D. Cal. 2024). Here, Plaintiffs' explicit allegations of a "common enterprise" of deception, Compl. ¶ 383, fall squarely within Rule 9(b), which "applies to 'averments of fraud,' not [just] claims of fraud." *Borsellino v.*

[3] Further, *In re Facebook Inc., Consumer Privacy User Profile Litigation* is factually distinguishable, as it did not turn on information exclusively within defendants' possession. 402 F. Supp. 3d 767, 797 (N.D. Cal. 2019). Plaintiffs cite *Howard v. Laboratory Corporation of America.*, Opp. 5, but there, unlike here, plaintiffs sufficiently pleaded that data about "*their* sensitive medical issues" was collected without consent. No. 1:23-cv-00758, 2024 WL 4250677, at *9 (M.D.N.C. Aug. 8, 2024) (emphasis added), report and recommendation adopted, 2024 WL 4326898 (M.D.N.C. Sept. 27, 2024).

*Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007); *see also Sloan v. Anker Innovations Ltd.*, 711 F. Supp. 3d 946, 956 (N.D. Ill. 2024) (applying Rule 9(b) to UDAP claims).

*Fourth*, Plaintiffs' attempts to justify their shotgun pleading fail. They do not deny that their Complaint pleads only theoretical group-wide harms against all Defendants. Mot. 48–49 (citing cases). Plaintiffs instead suggest that they are allowed to group-plead for interrelated and common conduct, but their own Complaint undermines that argument; they allege that the Allstate and Arity Defendants operate entirely differently as insurance and technology companies. *See* Compl. ¶¶ 2–3. The Complaint's lack of consistent detail specific to each defendant is fatal. *See Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013) (alleging that "defendants looted the corporation—without any details about who did what—is inadequate").[4]

"Factual allegations must be enough to raise a right to relief above a speculative level." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). The Complaint does not meet this standard.

## II. Plaintiffs Cannot Sidestep their Own Allegations Demonstrating Consent.

Consent is a central threshold issue in this case, and Plaintiffs' Opposition wrongly suggests they can avoid it by front-loading a conclusory allegation that the collection was "unconsented." Opp. 8 (citing Compl. ¶ 1). Plaintiffs assert that consent is only an "affirmative defense," but Plaintiffs *affirmatively alleged* lack of consent as an integral part of their claims. And for good reason: there can be neither improper disclosure nor any harm if Plaintiffs knew or should have known what was going to happen when they had to—and admittedly did—download, register, sign in, read terms, and agree to terms before using the app they wanted. "Consent" is a

[4] Plaintiffs' cases, Opp. 6, do not help. *Sloan* concerns Rule 8, not Rule 9(b). 711 F. Supp. 3d at 955–56. The purported holding that "in the Seventh Circuit shotgun pleading arguments are treated with skepticism," is a misreading of *Baity v. Johnson & Johnson*, No. 3:20-cv-01367, 2021 WL 3603489, at *2 (S.D. Ill. Aug. 13, 2021), which is devoid of Seventh Circuit precedent. *Baity* reflects a single, out-of-district-court's *own* "skepticism" of the rule (in contrast to an N.D. Ill. case that held otherwise), that *even still* acknowledged that "overuse" and "obfuscation … might well warrant dismissal." *Id.* Such is the case here.

legal conclusion, and Plaintiffs do not allege any *facts* that consent was lacking. This alone is sufficient to make Plaintiffs try again under *Twombly* because it underscores a "basic deficiency" that is entirely known to plaintiffs that "should … be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id.* at 558 (citation omitted).[5]

But even worse, we *already* know on the basis of the Complaint that Plaintiffs' pleading is incurable. Courts repeatedly have dismissed online privacy class actions amid a recent tsunami of cases like this one, where plaintiffs ask courts to ignore consent until later, but consent is evident on the face of the Complaint. *See Snyder v. G6 Hosp. LLC*, No. 5:24-cv-02423-AH-(SHKx), 2025 WL 2426613, at *4–5 (C.D. Cal. Aug. 18, 2025) (considering consent "on a motion to dismiss where lack of consent is an element of the claim") (quoting *Silver v. Stripe Inc.*, No. 4:20-cv-08196-YGR, 2021 WL 3191752, at *5 (N.D. Cal. July 28, 2021), *appeal docketed*, No. 25-5586 (9th Cir. Sept. 4, 2025); *Flixbus, Inc.*, 2025 WL 1592961, at *5; *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1060 (N.D. Cal. Apr. 2, 2025), *appeal docketed*, No. 25-2857 (9th Cir. May 2, 2025). The Court should do so here, as well.

***Plaintiffs' Assent to the App Agreements***. The Opposition insists that the Plaintiffs who allegedly used multiple Apps across multiple years preclude Defendants from "prov[ing]" each named Plaintiff assented to the App Agreements. Opp. 11–16. But unlike in other cases, Plaintiffs' own pleading does this work, alleging that they downloaded the Apps *and* "reviewed the prominent information about the nature and function . . . prior to downloading." Mot. 9 & n.3. Plaintiffs

---

[5] Even the cases Plaintiffs cite, Opp. 7, confirm that when, as here, consent is "central" to the claims, it is "fairly before the court at this stage." *TikTok, Inc. In-App Browser Priv. Litig.*, No. 24-C-2110, 2024 WL 4367849, at *8–9 (N.D. Ill. Oct. 1, 2024); *see also Rodriguez*, 2025 WL 672951, at *2 (similar); *Washington v. Flixbus, Inc*., No. 3:25-cv-00212-H-MSB, 2025 WL 1592961, at *3 (S.D. Cal. June 5, 2025) (similar). Plaintiffs say the issue is premature, but their own allegations show otherwise. *See* Mot. 8–10.

actually concede that they *saw* these disclosures and *agreed* to them. Compl. ¶¶ 445–54.[6] This is thus *very* different from cases where a plaintiff alleged a lack of consent. Having made this fatal admission, Plaintiffs' Opposition instead can bicker only that agreements are subject to different "interpretations" or that they changed over time, *see* Opp. 10–11, but in *this case* (unlike in other cases like *TikTok*), Plaintiffs *cannot* argue that language post-dated their signups, or was not apparent, because they themselves *allege* it was *there* and they *saw and read it*. *See Godun v. JustAnswer LLC*, 135 F.4th 699, 710–11 (9th Cir. 2025) ("[a] hefty dose of common sense goes a long way" in determining consent).

Plaintiffs' argument that the Court should not consider the sign-in flows because those flows were not incorporated into the Complaint falls equally flat. *Plaintiffs* themselves included and described some of those flows in the Complaint. Compl. ¶¶ 445–54 (including images of sign-up flows). The other flows discussed in the Motion are additional examples (across different Apps) of those included in Complaint, and each satisfies the requirements for notice and assent. *See Godun*, 135 F.4th at 711 (disclosure stating that a user agrees to terms by clicking "continue" held sufficient); *Cf. See* Motion for Incorporation by Reference ("IBR Mot.") Ex. E through H-1 (similar for GasBuddy, Life360, Routely, and Fuel Rewards). These disclosures, as a matter of ordinary contract law, are more than sufficient under the authorities Plaintiffs invoke. *See* Opp. 13–14 (citing *Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1154 (9th Cir. 2025) ("Online contracts are subject to the same elemental principles of contract formation as paper contracts")).

[6] Plaintiffs clarify that "no Plaintiff alleges he or she used" DriveSense. Opp. 14. Defendants do not contest Plaintiffs' assertions of what Apps they used, but this clarification is one of the many contradictions in Plaintiffs' factual allegations. Plaintiff Smith who alleges that she "purchased insurance from Esurance, an Allstate subsidiary," *see* Compl. ¶ 298, would have had to use the DriveSense app to do so. Yet Plaintiffs now disclaim any interaction with the App, *see* Opp. 14, and are not suing Esurance.

Plaintiffs' last, halfhearted attempt to establish "ambiguity" also should be rejected on its own terms. Plaintiffs nonsensically argue that checking an "I agree" box somehow leaves it "unclear" whether the user actually agreed to the Fuel Rewards terms. Opp. 14. They claim it is "not clear" whether users have to "sign up" to use Life360, despite the enrollment screen plainly requesting an email address to proceed, Mot. Ex. G, Dkt. 62-7, and despite their *own pleading* implying they assented. Compl. ¶ 447. Plaintiffs cite cases where the plaintiffs allegedly never saw disclosures, *see, e.g.*, *Rodriguez v. ByteDance*, No. 23-cv-4953, 2025 WL 672951, at *3 (N.D. Ill. Mar. 3, 2025), but here, Plaintiffs alleged they *did*, and are left quibbling about whether "bits and pieces" of those disclosures were or should have been discussed in the Motion. Opp. 15–16. This misses the point: the Complaint affirmatively alleges that each Plaintiff reviewed and agreed to the consent language.[7] Indeed, Plaintiffs' protestations are astonishing given the very purpose of these lifestyle Apps is to *track locations*—of users, their families, where they are going, where they can buy gas, and the like. *See also*, *e.g.*, Compl. ¶ 428 (Routely is an auto insurance company's App created to provide "helpful insights into consumers' driving habits to encourage safer driving") (internal citation omitted).

***Adequacy of the App Disclosures.*** Plaintiffs' remaining argument that the disclosures in the App privacy policies were not detailed enough, Opp. 16, insists on a level of granularity and

[7] Plaintiffs' caselaw is distinguishable. Unlike in *Godun*, where the defendant's sign-up page lacked *any* explanatory language linking user action to assent, 135 F.4th at 712–13, the screens here include exactly that kind of language, as shown in the Exhibits. *Chabolla* is similarly inapposite. 129 F.4th at 1158 (disclosures were spread across multiple pages and action buttons). Here, even setting aside Plaintiffs' own admission of their review of the disclosures, the terms were plainly disclosed during the sign-up flow. And *Gray v. Midland Funding* is entirely inapposite because the plaintiff alleged all interactions were by phone, never visited the website, and did not even own a computer. No. 5:16-cv-00036-TBR, 2017 WL 1293995, at *4 (W.D. Ky. Apr. 4, 2017). Plaintiffs' allegations are far closer to those in *Snyder*, decided only weeks ago in another online privacy class action, where the court held that, given the overall context of booking an online hotel room, "a reasonable person that by clicking the box agreeing to 'rate and room policies'" would understand that they also were agreeing to the hotel's privacy policy. 2025 WL 2426613, at *4.

specificity that is ironic (if not outright disingenuous) given their own defense of the vague and generalized pleadings throughout their own Complaint. But the caselaw does not require that these policies name Defendants specifically or describe the exact "identifiers" that may be disclosed. *See Lakes*, 777 F. Supp. 3d at 1056–57 (rejecting demand for "highly granular disclosure"); *Snyder*, 2025 WL 2426613, at *4 (similar). Here, the App Agreements provided sufficient notice to a reasonable consumer of the categories of data collected, the possibility of third-party sharing, and the purposes of collection. That is all the law requires.

The examples Plaintiffs cite to argue disclosures were "insufficient" backfire. Plaintiffs argue that the Fuel Rewards and Routely[8] policies (among others) do not "mention collection of any driving data," Opp. 17, but that is wrong. *See* Mot. Ex. A, Dkt. 62-1 at 3–5 (listing categories including "precise location data, including through GPS," "your car make/model/year or VIN," and "a profile relating to your preferences, characteristics, psychological trends, predispositions, behavior, attitudes, intelligence, abilities, and aptitude"); Mot. Ex. B, Dkt. 62-2 at 7 (categories include trip "start and end time," "aggregate usage" of mobile device, vehicle "diagnostic information").[9] Regardless, the law requires notice of the *types* of information collected, not an encyclopedia of every metric that can be inferred from those types. *See, e.g.*, *In re Google Inc. Gmail Litig.*, No. 13-md-02430-LHK, 2014 WL 1102660, at *20 (N.D. Cal. Mar. 18, 2014) (cited in Opp. 8 n.7) (disclosure that "did not specifically name COB processing" nonetheless could show that users consented to "the interceptions of their emails for purposes of targeted advertisements").

[8] Additionally, a user can only access the Routely app with a code from their auto insurer, making Plaintiffs' allegations that they did not know driving data would be collected even more absurd.

[9] Plaintiffs' other examples are also flawed. For example, they concede that Life360 discloses collection of "Driving Event Data" (*e.g.*, "speeding, hard braking, crash detection"), but argue it does not include "driver attention" or "tailgating." Opp. 17. They do not cite a single case turning on such a distinction.

Plaintiffs' remaining argument—that the disclosures are insufficient because they do not reference Defendants or how Defendants may use the data—are undermined by their own caselaw. In *Griffith v. TikTok, Inc.*, there was "no allegation that Plaintiff read any of [the privacy] policies," and the question at issue was plaintiff's reasonable expectation of privacy, not consent. 697 F. Supp. 3d 963, 972 (C.D. Cal. 2023). Likewise, in *Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 977 (N.D. Cal. 2023) plaintiffs alleged that transcripts of their website communications were disclosed, nothing like the disclosures here, where Plaintiffs acknowledge that they downloaded Apps knowing they would track their location and other information. Likewise, although Plaintiffs argue that they were not told how their data might be used, the cases they cite involve affirmative misrepresentations of how the data was used, which they do not and cannot allege here. *See Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1060 (N.D. Cal. 2014) (defendants said they would "scan" address books to enable a "find friends" feature, but secretly copied that data for their own use); *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 847–48 (N.D. Cal. 2014) (no overlap between the vague disclosure and the specific practice alleged). Here, where the Apps specifically disclosed that data collected may be shared with third parties for various purposes, no Plaintiff can avoid a conclusion that they understood those Agreements "that he or she [wa]s consenting" to third parties accessing their information.[10] *See Ubisoft, Inc.*, 777 F. Supp. 3d at 1057.

## III. Plaintiffs' Purported Insurance-Based Harms are Barred by the Filed Rate Doctrine.

As the Motion made clear, the filed rate doctrine forecloses Plaintiffs' theory that they were harmed because they paid more for insurance than they should have as a result of their alleged App

[10] *See, e.g.*, Fuel Rewards, Mot. Ex. A, Dkt. 62-1 at 7, (retailers, brands, and companies); Routely, Mot. Ex. B, Dkt. 62-2 at 12–13, 29–31, 39–40 (similar); Life 360, Mot. Ex. C, Dkt. 62-3 at 8–9, 38–39, 68–69 ("Arity 875, LLC"); GasBuddy, Mot. Ex. D, Dkt. 63-4 at 29–31, 43–44, 57–58, 72–73 ("Arity"). The purposes of these disclosures was also described. *See, e.g.*, Routely, Mot. Ex. B, Dkt. 62-2 at 10, 29, 38, 49, 64, 84 ("insurance company business clients" could use data to "update their pricing"); Life 360, Mot. Ex. C, Dkt. 62-3 at 8, 38, 68 (similar); GasBuddy, Mot. Ex. D, Dkt. 62-4 at 29–31, 43–44, 57–58, 72–73 (similar).

use. Moreover, as the Motion argued—and the Opposition fails to rebut—Plaintiffs' theory separately fails because it is pleaded solely on "information and belief." Plaintiffs respond that they do not know the "specific information" *considered* in setting their rates. Opp. 19. This argument rings hollow. Plaintiffs know whether (and by how much) their insurance rates increased. They cannot duck that knowledge with "information and belief" allegations.[11]

Plaintiffs separately try to avoid the filed rate doctrine by asserting they are not "contesting the rates," but instead that their harm is *based* on those rates. Opp. 20. This Court should ignore Plaintiffs' semantic game-playing. The doctrine applies when a plaintiff asks the Court, as here, to determine damages from the delta between a filed rate and a but-for rate. *See Korte v. Allstate Ins. Co.*, 48 F. Supp. 2d 647, 649–53 (E.D. Tex 1999). Plaintiffs' caselaw does not hold otherwise. In *Alston v. Countrywide Financial Corp.*, 585 F.3d 753 (3d Cir. 2009), plaintiffs alleged kickbacks between lender and a reinsurer—their damages had nothing to do with the rate. *Id.* at 757–58. Similarly, the filed rate discussion in *Trzeciak v. Allstate Property and Casualty Insurance Co.*, 569 F. Supp. 3d 640 (E.D. Mich. 2021)—which the Court included *after* dismissing the case with prejudice on other grounds—centered "on whether Allstate properly disclosed" certain "rating elements in their contract," but did not "challenge the elements of the rate itself," *id.* at 650, *i.e.*, such challenge *would* be precluded by the doctrine. Here, Plaintiffs directly plead that premiums "would have been lower" but for an alleged element of the rate based on alleged misappropriation.

---

[11] Plaintiffs cite *Dante Valve Co. v. Republic Brass Sales, Inc.*, No. 17-cv-2582, 2019 WL 1406583 (S.D. Cal. Mar. 28, 2019) (Opp. 19), which simply finds that a "solely-pled instance" can provide a "'plausible foundation' of similar instances." *Id.* at *2. But Plaintiffs are not asking for inferences based on "sole instances"—they have not pleaded any instances at all. Likewise, Plaintiffs say that they need only state the "nature of damages" under *Time Warner Cable Midwest LLC v. Pennyrile Rural Electric Cooperative Corp.*, No. 5:15-cv-00045-TBR, 2015 WL 4464105, at *6 (W.D. Ky. July 21, 2015), but that case articulates the rule for pleading "special damages" in defamation claims, an irrelevant issue here. *Id*. at *7.

Opp. 20. That requires re-rating, and "would involve this Court in retroactive alteration of the filed rate—a function which this Court should not perform." *Korte*, 48 F. Supp. 2d at 652.

## IV. Plaintiffs' State Law Claims Are Preempted by the FCRA.

As the Motion explained, the FCRA preempts Plaintiffs' state law claims against Defendants because they are premised on allegations that Defendants collected and sold Plaintiffs' data for underwriting purposes without notice or consent. Mot. 22–25. The Opposition incorrectly argues that the state statutes at issue here are not preempted because they regulate conduct beyond the FCRA. Opp. 21–23. But that ignores allegations that at least some Defendants are CRAs, and that Plaintiffs seek to use the state law to impose liability on CRAs for not notifying and obtaining consumer consent before collecting and reporting data. "[A]ny state law requiring a CRA to first obtain authorization from a consumer before it produced or disseminated a report about that consumer would render the majority of the requirements found in the FCRA meaningless." *Ponder v. Experian Info. Sols., Inc.*, No. 1:19-cv-5494, 2021 WL 2688648, at *24 (N.D. Ga. May 18, 2021), *report and recommendation adopted*, 2021 WL 5033483 (N.D. Ga. July 9, 2021).

The Opposition avoids acknowledging that Plaintiffs are seeking a remedy that would allow them or other consumers to opt out of the FCRA reporting scheme and avoid the statute's limited consent requirements. *See Stergiopoulos v. First Midwest Bancorp, Inc.*, 427 F.3d 1043, 1046 (7th Cir. 2005) (FCRA "does not require that consumers expressly approve each request for a [consumer] report"). Instead, it cites inapposite case law about state statutes requiring notice but not consent:[12] while notice rules might slow a CRA in reporting information, requiring consent

---

[12] *See Aghaeepour v. N. Leasing Sys., Inc.*, 378 F. Supp. 3d 254, 259 (S.D.N.Y. 2019); *Aargon Agency, Inc v. O'Laughlin*, 70 F.4th 1224, 1229 (9th Cir. 2023). Plaintiffs also rely on *Brown v. Mortensen*, 253 P.3d 522, 524, 530 (Cal. 2011), where the court acknowledged that disclosure of information was not preempted by the FCRA because Congress *already* passed HIPAA. Plaintiffs do not allege an antecedent federal law.

would prevent the CRA from its reporting role in direct conflict with the FCRA. The other cases Plaintiff cite are similarly distinguishable.[13] *See Davenport v. Farmers Ins. Grp.*, 378 F.3d 839, 843 (8th Cir. 2004) (acknowledging that CRAs can furnish reports without first getting the consumer's permission); *Drew v. Equifax Info. Servs.*, No. C 07-00726 SI, 2007 WL 2028745, at *4–5 (N.D. Cal. Jul. 11, 2007) (although state laws unrelated to a furnisher's duties were not preempted, laws concerning furnishers' duties to report information to CRAs accurately were).[14]

Plaintiffs separately argue that FCRA preemption does not apply to Defendants as "furnishers" of information here because it only applies where the furnishers report information they "'know[] or ha[ve] reasonable cause to believe' is inaccurate, and related disputes." Opp. 22 (citing 15 U.S.C. §§ 1681s-2(a)(1)(A) and (b)); *see also Mirabile v. Bank of Am., Nat'l Assn.*, No. 23-cv-01719, 2024 WL 1250265, at *3 (N.D. Ill. Mar. 22, 2024) (breach of contract claim based on failure to accurately report information preempted because allegations directly related to furnisher responsibilities). But Plaintiffs allege just that here. *See, e.g.*, Compl. ¶ 439 (alleging "flawed Driving Data").[15] Because this theory is in direct conflict with the FCRA, it is preempted.

## V. Plaintiffs Federal and State Wiretap Claims Should Be Dismissed.

### A. The Party Exception to the FWA Exempts Defendants from Liability.

---

[13] Plaintiffs' reliance on *Credit Data of Ariz. v. State of Ariz.* is misplaced, because there, unlike here, the state statute posed no obstacle to a CRA's FCRA responsibilities. 602 F.2d 195, 198–99 (9th Cir. 1979).

[14] Plaintiffs also argue that their position is "in line with the FCRA's qualified immunity provision (15 U.S.C. § 1681h(e)), which only applies to negligence-based invasion of privacy theories." Opp. 22 n.11. Defendants do not argue that § 1681h(e) is relevant to this case because its application is limited to requirements of CRAs in their disclosure to consumers (§§ 1681g and 1681h) and users of information that take adverse action against the consumer. *See Knudson v. Wachovia Bank*, 513 F. Supp. 2d 1255, 1259–60 (M.D. Ala. 2007).

[15] The cases Plaintiffs cite, Opp. 22–23, are inapposite and outdated. *See Galper v. J.P. Morgan Chase Bank, N.A.*, 802 F.3d 437, 447–48 (2d Cir. 2015) (no preemption of identity theft statutes that did not impose any additional requirements on furnishers of information to CRAs); *see also Carlson v. Trans Union, LLC*, 259 F. Supp. 2d 517, 521 (N.D. Tex. 2003) (no preemption where § 1681t(b)(1)(F) only applied to state statutory regulation); *cf. Purcell v. Bank of Am.*, 659 F.3d 622, 623–26 (7th Cir. 2011) (after *Carlson*, interpreting § 1681t(b) to preempt both state common law and state statutory claims).

Defendants' Motion explained that, because the FWA is a one-party consent statute and because Plaintiffs concede that the App manufacturers voluntarily agreed to integrating the Arity SDK into their Apps, they necessarily consented to Defendants' purported receipt of that information. Mot. 25–27. Plaintiffs acknowledge that the FWA only requires consent from one party, but argues that Defendants "were surreptitious collectors, not intended recipients." Opp. 23. This is hyperbole, and contradicted by the Complaint and Plaintiffs' own citation to *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 944 (N.D. Cal. 2023) (cited at Opp. 23–24) where FWA claims against Oracle (the purported "collector" in that case) were dismissed. The court held, "as [Oracle]'s customers must have chosen to deploy Oracle's tools on their websites, it necessarily follows that 'one of the parties to the communication'—the websites themselves—gave 'prior consent to such interception.'" *Id.* (citation omitted). Thus, because Plaintiffs allege that the App makers chose to deploy the SDK on their Apps, Compl. ¶ 6, it *necessarily follows* that those App makers gave prior consent to such alleged interception. *See id.*; *see also In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1028 (N.D. Cal. 2014) (explaining the party exception only requires one of the parties "to the communication to consent to an interception [by a third party]").[16]

Plaintiffs suggest that the Motion ignores *In re Facebook, Inc. Internet Tracking Litig.*, but the court there found *no interception* occurred because the plaintiff was alleging two separate communications, one between the browser and the website (the App, here), and a second between the browser and Facebook. 956 F.3d 589, 607 (9th Cir. 2020) ("entities that surreptitiously duplicate transmissions between two parties are not parties to the communications"). But if that is what Plaintiffs are alleging—or now trying to argue mid-briefing by recasting their vague

[16] By limiting their allegations under the FWA claim to "third-party apps," *see* Opp. 23, Plaintiffs acknowledge that this argument would be particularly absurd for those Plaintiffs alleging use of the Routely and Allstate apps, *see* Compl. ¶¶ 100, 155, 210, 237, 369. They cannot argue that auto insurance companies were not the intended recipients of data automatically generated by an auto insurance product. *Id.* ¶ 428.

allegations—then there is no "wiretap" at all, but two separate communications, one involving Plaintiffs and the Apps, and a separate involving the Apps (or Plaintiffs) and Defendants. As noted in the Motion, if Plaintiffs try to sidestep the one-party exception by claiming Defendants did not participate in their Apps' communications, then the wiretapping claims must be dismissed because they are not alleging a wiretap. *See* Mot. 31 n.20 (citing cases); *see also Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2021 WL 2026726 at *6 (N.D. Cal May 21, 2021) (dismissing FWA claim against third-party to communication, Google). To this, Plaintiffs have no answer. Plaintiffs also state that they "plausibly allege Defendants knew or had 'reason to know' that they intercepted communications through an unlawful wiretap." Opp. 24 (citing 18 U.S.C. § 2511(c) & (d)). Plaintiffs cannot have it both ways: either Defendants intercepted the communication, triggering the one-party consent exception, or they collected it separately, which is not a wiretap.

Plaintiffs argue that the Court should apply the crime-tort carveout to the one-party exception, but for the reasons stated, Mot. 26–27, that carveout is inapplicable. The cases cited by Plaintiffs are readily distinguishable, as the courts there relied on allegations of unlawfully-obtained and sensitive information not present here that go well beyond typical profit-making behavior. *See Riganian v. LiveRamp Holdings, Inc.*, --- F. Supp. 3d ---, 2025 WL 2021802, at *2, *9 (N.D. Cal. Jul. 18, 2025) (defendant allegedly "commercially exploit[ed] unlawfully obtained information" concerning, among other things, religion, sexuality, health, pregnancy status, clinic visits, gambling, and poverty); *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1065-67 (N.D. Cal. 2021) (permitting crime-fraud exception where Google repeatedly promised ability to "browse privately" but instead tracked and associated browsing history with preexisting user profiles); *Stein v. Edward-Elmhurst Health*, No. 23-cv-14515, 2025 WL 580556, at *4 (N.D. Ill. Feb. 21, 2025) (relying on separate tort of revealing health information deemed separately protectable by statute).

In any event, the on-point and better-reasoned cases cited in the Motion focus on the *primary purpose* of the alleged interception, finding that where it is a commercial purpose, and that commercial purpose is not merely adjacent to some other purpose, the crime-tort carveout does not apply. Mot. 26–27 (citing cases). Plaintiffs' Opposition implicitly concedes that their Complaint itself alleges the whole point here was commercial, *see, e.g.*, Compl. ¶ 1 (Defendants allegedly collected and sold data "for profit"); thus, the carveout does not apply.

### B. Plaintiffs Fail to Plead the Elements of an FWA Claim.

Plaintiffs' Opposition fails to rebut the other bases for dismissal outlined in the Motion.

*First*, Plaintiffs argue that their phones are not "tracking devices" exempt from the FWA because those phones are "multi-function devices" that "capture more than just location data." Opp. 30. But their own pleading (and the entire theory) claims that Apps including the SDK allowed App developers and Defendants to "track[] the *movement of a person or object*." 18 U.S.C. § 3117(b). (emphasis added); *see In re Application for Pen Register & Trap/Trace Device with Cell Site Location Auth.*, 396 F. Supp. 2d 747, 759 (S.D. Tex. 2005) ("Real-time location monitoring effectively converts a cell phone into a tracking device," so outside scope of FWA). And the information derived from location data, *e.g.*, route, speed, and other data, are covered by the tracking device exception to the FWA because it involves *movements* and is derived from location data. Plaintiffs acknowledge it; they allege the Arity SDK collects "the user's geolocation and movements." Compl. ¶ 406; *see also In re Application for an Order Authorizing Disclosure of Location Info. of a Specified Wireless Tel.*, 849 F. Supp. 2d 526, 576–77 (D. Md. 2011) (holding that cell phones providing "prospective, real time location information . . . are tracking devices" that "perform, in many cases, identical functions to traditional tracking devices").

*Second*, in response to the Motion's argument that the data allegedly intercepted is not "content" under the FWA, Mot. 28–29, Plaintiffs assert that their communications are content that

they "intended" to communicate with the Apps. Opp. 26, 28.[17] Their intent is irrelevant. Data that is generated automatically—like here—does not meet the definition of "substance, purport, or meaning" under the FWA. 18 U.S.C. § 2510(8). Neither does record information such as "name, address, and subscriber number[s] or identit[ies]." *In re Zynga Privacy Litig.*, 750 F. 3d 1098, 1107 (9th Cir. 2014) (internal quotation marks omitted). Plaintiffs complain that the Motion relies on cases involving only geolocation information, unlike the "troves" of data alleged here. Opp. 27. But those cases did not turn on the volume of data, but on whether the data was "automatically" generating identity and record information, rather than a substantive communication. *See In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1061 (N.D. Cal. 2012). Here, based on Plaintiffs' own allegations regarding how information was generated, and their contention that this information was collected whether or not they intended and even when the phone was not in use, the alleged data is not "content." *See In re Pharmatrak*, 329 F.3d 9, 18–19 (1st Cir. 2003) (personal information constituted content only because the consumer actively input that information during the alleged interception); *In re Zynga Priv. Litig.*, 750 F.3d at 1106 (identification and address was inactionable record information because it was not the substance of consumer's communication).[18]

*Third*, and critically, the Opposition fails to show that Plaintiffs sufficiently pleaded that the contents of communications were intercepted *contemporaneously* during transmission. Mot. at 29–30 (citing *Peters v. Mundelein Consol. High Sch. Dist. No. 120*, No. 21-cv-0336, 2022 WL 393572, at *11 (N.D. Ill. Feb. 9, 2022)). District courts, in recently dismissing similar claims, have

---

[17] Plaintiffs argue *Vasil v. Kiip, Inc.,* No. 16-cv-09937, 2018 WL 1156328 (N.D. Ill. Mar. 5, 2018) differs because it involved data collection while users were not using their phone. Opp. 26. But the Complaint alleges that "Arity SDK runs in the background" when users are "not currently using an app." Compl. ¶ 414.

[18] Plaintiffs also rely on two cases, where, unlike here, the data allegedly intercepted was private, substantive, and *actively communicated* to the website by the consumer. *See In re Facebook, Inc. Internet Tracking Litig.,* 956 F.3d at 605 (intercepting website search queries); *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 517–18 (C.D. Cal. 2021) (intercepting mouse movements and web activity).

made clear that allegations that data is shared "in real time" or "near-real time" are insufficient to demonstrate eavesdropping, as learning of a communication even just "*after* it has been sent is not eavesdropping." *Hernandez-Silva*, 2025 WL 2233210, at *5 (emphasis added); *Rodriguez v. Bytedance, Inc.*, No. 23-cv-04953, 2025 WL 2495865, at *6 (N.D. Ill. Aug. 29, 2025) (allegations of access to plaintiffs' data "do not say how [Defendants'] conduct amounts to contemporaneous *interception* of user communications").

Here, Plaintiffs' allegations are insufficient as they posit only that the SDK "can" intercept information in "real time," but not that it actually did so here, and did so with their data.[19] Unlike in *Hazel v. Prudential Financial, Inc.*, where the plaintiffs specifically alleged that the third-party software on defendant's website "begins to monitor the webpage" when a "user is moving through the webform," and stores the data collected on the third-party's server, *see* No. 22-cv-07465-CRB, 2023 WL 3933073, at *3 (N.D. Cal. June 9, 2023), Plaintiffs here only state in conclusory fashion that their data was intercepted in "real-time." Compl. ¶¶ 6, 410. Setting aside the fact that in "real time" does not necessarily imply contemporaneous interception, this conclusory allegation is plainly insufficient. *See Rodriguez*, 2025 WL 2495865, at *6–7 (rejecting "unreasonable inferential leap" that plaintiffs' communications were contemporaneously intercepted); *Hernandez-Silva*, 2025 WL 2233210, at *5 (allegations insufficient to show that defendant was "secretly listening" while communication occurred). Thus, the FWA claim should be dismissed.

### C. Plaintiffs' State Statutory Wiretapping Claims Should Be Dismissed.

As demonstrated in the Motion, Plaintiffs' state statutory wiretap claims are analyzed using the same elements as the FWA, and they should be dismissed for the same reasons. Although

[19] Plaintiffs bizarrely suggest that Defendants have admitted "that they collect data contemporaneously, or in "real-time." Opp. 28. This is nonsense: Defendants are *required* to accept Plaintiffs' allegations as true at this stage, but have not admitted to that allegation or, given its conclusory nature, its sufficiency. And Defendants, in that very same sentence, said as much: "Under this allegation …." Mot. 30.

Plaintiffs distinguish the California and Illinois statutes as two-party consent statutes, they do not dispute the applicability of Defendants' other arguments to the state statutes. And, as to the two-party exceptions in these statutes, Plaintiffs' inconsistent arguments as to whether Defendants were "non-parties" collecting the information from the App developers, Opp. 23–24, as opposed to third parties intercepting their data directly, render their distinction between the statutes meaningless. Two-party consent is only relevant where a third-party is "listening" or intercepting data contemporaneously.[20] *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 831 (N.D. Cal. 2021) ("[A] party to a communication can record it (and is not eavesdropping when it does)" without incurring CIPA liability); *Javier v. Assurance IQ LLC*, 649 F. Supp. 3d 891, 898 (N.D. Cal. 2023) (same); *Stein*, 2025 WL 580556, at *8 (dismissing Illinois wiretap claim on the basis of party exception).

## VI. Plaintiffs Fail to Plausibly Allege Their Other Claims

### A. Plaintiffs' Federal and State Computer Hacking Statute Claims Fail.

Plaintiffs cannot bring federal or state hacking claims because (1) their allegations show that their phones were not improperly accessed or hacked, and (2) the Arity SDK caused no damage. Mot. 32–34. Plaintiffs say discussing these statutes together is a "gross oversimplification," hairsplitting that the CDAFA and CFAA prohibit conduct that "exceeds authorized access," but PUUC applies to *any* unauthorized access. Opp. 31. These claims "rise or fall" together. *Brodsky v. Apple, Inc.*, 445 F. Supp. 3d 110, 131 (N.D. Cal. Apr. 7, 2020).

As an initial matter, or the reasons discussed above, *see supra* at pp. 4–8, Plaintiffs cannot allege that the purported access or use of their data was "unauthorized." *They authorized it*. *See*

[20] Defendants' Motion argued that Plaintiffs' consent precluded Plaintiffs' claim under California's Pen Register law (Count 12). Only in a footnote, *see* Opp. 31 n.14, do Plaintiffs state in conclusory fashion that they did not consent to Defendants' conduct. For the reasons stated in the Motion—including the argument that Plaintiffs have not alleged a contemporaneous interception—this claim should be dismissed.

Mot. 33–34.[21] These claims also, separately fail because, fundamentally, what Plaintiffs are alleging is that data was allegedly disclosed to Defendants from the Apps, not that *Defendants* accessed their devices. Although PUUC and CDAFA can extend to improper downstream *uses* of data, Mot. 32–33, Plaintiffs plead no *specific* instance of improper downstream use, especially given that the App Agreements disclosed the collection and sharing of telematics data. *See supra* at 7–8. There can be no "improper use" where the data use aligns with both parties' expectations and the disclosed terms. *See Commonwealth of Pennsylvania v. Derr*, 293 A.3d 671, 680–81 (Pa. Super. Ct. 2023), *appeal denied*, 308 A.3d 766 (Pa. 2023).

Plaintiffs' Opposition also ignores that CFAA and CDAFA limit recoverable damages to "technological harms—such as the corruption of files—of the type unauthorized users cause to computer systems and data" or consequential loss resulting from that damage. *See Van Buren v. United States*, 593 U.S. 374, 391–92 (2021). Plaintiffs, citing cases that predate *Van Buren*, try to equate "loss" with "consequential damages," Opp. 32–33, but that argument usurps the CFAA's "narrow conception of loss." *Andrews v. Sirius XM Radio Inc.*, 932 F.3d 1253, 1263 (9th Cir. 2019) (internal quotation marks omitted); *see* Mot. 34 (citing cases). None of Plaintiffs' asserted harms—"lost time," increased insurance costs, or otherwise—suffices.[22]

### B. Plaintiffs Fail to State a Claim Under the FCRA.

Defendants previously established that Plaintiffs' FCRA claim pleaded copy-and-paste allegations devoid of any facts showing that another person's data was misattributed to them. Mot.

---

[21] Plaintiffs cite *In re Carrier IQ, Inc.*, to argue that downloading an app cannot show authorization, but that case found no consent because the software came *pre-installed* with no ability to remove it. 78 F. Supp. 3d 1051, 1060, 1101 (N.D. Cal. 2015). Here, Plaintiffs voluntarily installed the apps and could have removed them. Plaintiffs also cite *Margolis v. Apple Inc*., 743 F. Supp. 3d 1124, 1134 (N.D. Cal. 2024), but *Margolis* is about unauthorized *damage* (*i.e.*, intentional performance degradation), not *access*.

[22] The Complaint also fails to allege that any Plaintiff incurred $5,000 in qualifying loss within a one-year period. *See Rodriguez*, 2025 WL 672951, at *6 (dismissing CFAA claim that did not detail $5,000 in costs).

36–37. Plaintiffs respond by insisting the Complaint demonstrates both that the data collected by the Arity Defendants was inaccurate and materially misleading. Opp. 35. They are wrong.[23]

Any inaccuracy alleged by Plaintiffs must be particularized to Plaintiffs. *Humphrey v. Trans Union LLS*, 759 F. App'x 484, 488 (7th Cir. 2019) ("consumer must sufficiently allege that *his* credit report contains inaccurate information") (emphasis omitted and added). A "[b]are assertion" that a "credit report was inaccurate—without further factual support—does not support a plausible [FCRA] claim." *Allison v. ChexSystems Collection Agency, Inc.*, No. 23-cv-1132, 2023 WL 3200254, at *2 (N.D. Ill. May 2, 2023). Thus, although Plaintiffs say that they pleaded "identified well publicized instances where Defendants' data analysis produced inaccurate reports," Opp. 35 (citing Compl. ¶ 437), they fail to allege that another person's data was actually misattributed to *them* or that insurance providers were actually misled by this allegedly misattributed data. Plaintiffs argue that Defendants here are improperly "disput[ing] the factual accuracy" of their allegations, Opp. 35, but Defendants are instead pointing to the *absence* of any pleaded facts regarding inaccuracies in Plaintiffs' reports, a fundamental pleading deficiency.

As demonstrated in the Motion, Plaintiffs' FCRA claim also fails because Plaintiffs do not allege they were harmed by Defendants' reporting or otherwise damaged.[24] In their Opposition, Plaintiffs point to a single paragraph where they alleged a series of generalized harms that one or

---

[23] *Cf. NovelPoster v. Javitch Canfield Grp*., 140 F. Supp. 3d 954, 961 (N.D. Cal. 2014) (losses included costs of restoring damaged data). Plaintiffs cite three distinguishable cases where the plaintiffs alleged specific losses. *See Gandert v. Embry-Riddle Aeronautical Univ., Inc.*, SACV 20-01320-CJC(JDEx), 2020 WL 12575072, at *2 (C.D. Cal. Sept. 28, 2020) (misreporting of student loan amounts); *Taylor v. Screening Reps.*, Inc, No. 13 C 02886, 2015 WL 4052824, at *2 (N.D. Ill July 2, 2015) (inaccuracy regarding eviction case); *Twumasi-Ankrah v. Checkr, Inc.*, 954 F.3d 938, 939–41 (6th Cir. 2020) (inaccurate car accident data).

[24] Plaintiffs argue general allegations of harm suffice under *Ellis v. Equifax Info. Servs., LLC,* No. 1:18-cv-5185-TCB, 2019 WL 3521436, at *5 (N.D. Ga. June 6, 2019), *R&R* adopted, No. 1:18-cv-5185-TCB, 2019 WL 5406558 (N.D. Ga. June 25, 2019) and *Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1123–24 (11th Cir. 2006). But Plaintiffs must still allege harm that *they* suffered. Similarly, to plead injury from false reporting, Opp. 37, they must plead (but do not) that the information was given to and acted upon by a third party. *Renninger v. ChexSystems*, No. 98-cv-669, 1998 WL 295497, at *6 (N.D. Ill. May 22, 1998).

more of them may have suffered. Opp. 36 (citing Compl. ¶ 464). But Plaintiffs cannot plead a single conclusory allegation suggesting that some or all of the nearly forty Plaintiffs suffered the same harms. *See, e.g.*, *Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 664 (7th Cir. 2001) (plaintiff must show the adverse action was taken "because of the" inaccuracy); *Novak v. Experian Info. Sols., Inc.*, 782 F. Supp. 2d 617, 623–34 (N.D. Ill. 2011) (plaintiff failed to plead actual damages).

Finally, Plaintiffs rely on conclusory allegations that the Arity Defendants collection and/or sharing of data was knowing or "reckless." Opp. 38 (citing Compl. ¶ 524). But Plaintiffs do not allege knowledge or recklessness when reporting inaccurate information as to Plaintiffs *specifically*, as required for willfulness. *See Young v. Experian Info. Sols., Inc.*, 776 F. Supp. 3d 721, 740 (N.D. Ill. 2025) (no willfulness unless Experian knew the report was incorrect).

### C. Plaintiffs' Consumer Protection Claims Must Be Dismissed.

Defendants' Motion established that Plaintiffs' state UDAP claims each either failed to (1) comply with the statute's pre-suit notice requirements or (2) to plead actual damages. Mot. 39–43. The pre-suit letter Plaintiffs cite in their Opposition, *see* Opp. 39, was delivered only 14 days before the Complaint was filed, and does not satisfy many of the UDAP statutes:

- It does not satisfy the timing requirements under the Texas (Count 36) UDAP statute. *See* Tex. Bus. & Com. Code Ann. § 17.505(a) (60-days' notice).
- It does not purport to provide notice under Utah Code Ann. 1953 § 13-11a-4 (Count 37).
- The letter fails to comply with Mississippi (Count 22) and Ohio's (Count 29) pre-suit requirements. Mot. 40–41. Plaintiffs do not respond here, waiving this issue.

Plaintiffs cite *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins Co.*, 559 U.S. 393, 410 (2010), Opp. 40, but there, unlike here, the plaintiff demonstrated that the state law at issue conflicted with and thus was superseded by Rule 23. *See In re Dealer Mgmt. Sys. Antitrust Litig.*, 362 F. Supp. 3d

510, 555 (N.D. Ill. 2019) (citing *Hahn v. Walsh*, 762 F.3d 617, 631 (7th Cir. 2014)) ("state notice requirements would apply" where no conflict exists with federal rules).[25]

Regardless, each of Plaintiffs UDAP claims independently fails because there is no alleged actual damage, as opposed to an intangible harm.[26] Plaintiffs argue that their conclusory allegation that their data had "economic value to them" should suffice, Opp. 41, but courts consistently reject that exact allegation, holding that merely asserting data has value is not enough without alleging value to the *specific plaintiff*. *See* Mot. 41–43 (citing cases). Only where a plaintiff pleads specific facts showing "the existence of a market for their data and the impairment of the ability to participate in that market" can such an allegation survive dismissal, but Plaintiffs fail to plead such allegations. *Ji v. Naver Corp*., No. 21-cv-05143-HSG, 2022 WL 4624898, at *9 (N.D. Cal. Sept. 30, 2022). Their conclusory assertions of purported "monetary loss" fare no better, as they blindly allege that their insurance premiums "would necessarily be inflated." Compl. ¶ 21 (repeated as to each Plaintiff). Plaintiffs' failure to plead cognizable damage dooms their UDAP claims, as their own caselaw demonstrates.[27] *See Madkin v. Automation Pers. Servs., Inc*., No. 2:21-cv-1177-AMM, 2023 WL 12036560, at *1–2, *5 (N.D. Ala. Apr. 17, 2023) (alleging specific erroneous cable bills and bank account charges); *Newman v. Metro. Life Ins. Co*., 885 F.3d 992, 997–98, 1003–04 (7th Cir. 2018) (alleging insurer doubled its fixed rate to $3,851.80).

---

[25] As detailed in Defendants' Reply in Support of the Motion for Incorporation by Reference, filed concurrently with this reply, any attempt by Plaintiffs to argue that each Plaintiff was differently situated by interacting with different Apps at different times substantially undermines their class allegations.

[26] Count 17, for recovery of litigation expenses, also fails because it is derivative of relief under the Georgia Plaintiff's UDAP claim (Count 16), for which Plaintiffs fail to plausibly plead a claim for relief.

[27] Plaintiffs cite *Brown v. Google LLC*, but the plaintiffs there proffered evidence of the market for their data, alleging Google itself offered to pay "$3.00 a day for their browsing history." 685 F. Supp. 3d 909, 940 (N.D. Cal. 2023). And in *In re Facebook Priv. Litig.*, the Ninth Circuit *affirmed dismissal* of the UDAP claims because the plaintiffs failed to allege actual damages. 572 F. App'x. 494 (9th Cir. 2014).

The remainder of Plaintiffs' arguments seek to avoid applying Rule 9(b) to their UDAP claims, which they insist are brought under the "unfair or unlawful" prongs of the relevant UDAP statute. Opp. 43. But Rule 9(b) application turns on the nature of the allegations, not the statutory label. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003) (applying Rule 9(b) to allegations of "a unified course of fraudulent conduct" that forms the entire "basis of a claim"); *Eidmann v. Walgreen Co.*, 522 F. Supp. 3d 634, 647 (N.D. Cal. 2021) (applying Rule 9(b) to "unlawful" prong of statute); *Aerojet Rocketdyne, Inc. v. Glob. Aerospace, Inc.*, No. 2:17-cv-01515-KJM-AC, 2020 WL 3893395, at *3 (E.D. Cal. July 10, 2020) (same).[28] Plaintiffs' Opposition points to sprinkled references to "unfair" and "unlawful" conduct throughout their Complaint, Opp. 43–44, but they do little to dispute that the "common enterprise" they are alleging is one of "deceptive" and misleading conduct amidst a Complaint pleading at least five claims under statutes with "fraud" in the title. *See, e.g.*, Compl. ¶¶ 445, 459–67. Thus, Rule 9(b) applies.

The Complaint does not come close to satisfying the who, what, when, and where requirements of Rule 9(b). Instead, it improperly conflates Defendants, *id.* ¶¶ 377–82, alleges a generalized scheme of nondisclosure, *id.* ¶¶ 383–87, 405–06, 411, 419, 445–46, and fails to identify any specific failure to disclose as it relates to any of the Apps or any of the Plaintiffs. And Plaintiffs never allege when they were deceived or misled, or how—instead, they plead only general time periods when they downloaded certain Apps. *E.g.*, *id.* ¶¶ 18, 27, 36, 45, 54. Their strategic silence on these issues—part of their overall effort to obscure their consent to the exact disclosures they allege here—underscores their failure to satisfy Rule 9(b).

[28] The sole case Plaintiffs cite, *Perdue v. Hy-Vee, Inc.*, 455 F. Supp. 3d 749 (C.D. Ill. 2020), does not hold otherwise. *Perdue* merely declined to apply Rule 9(b) to claims arising from a data breach where plaintiffs' accounts were compromised, but not due to any fraud-based deception. *Id.* at 768–69.

### D. Plaintiffs' Privacy Tort Claims Fail as Matter of Law.

In response to Defendants' Motion, Plaintiffs insist that they have sufficiently alleged that the purported disclosures would be highly offensive to a reasonable person and violate their reasonable expectation of privacy. *First*, they argue that these are factual issues, Opp. 46–48, but as the Motion demonstrates, courts can resolve both elements on the pleadings. Mot. 45–46; *see Popa v. Microsoft Corp.*, --- F.4th ---, 2025 WL 2448824, at *5–6 (9th Cir. Aug. 26, 2025) (finding no injury on the pleadings where plaintiff failed to identify how tracking of website interactions with pet store company was highly offensive).

*Second*, Plaintiffs insist they pleaded the purported collection and sharing of their data was highly offensive. Opp. 46. But this case is nothing like *In re Facebook, Inc. Internet Tracking Litig.*, which involved "cradle-to-grave profil[ing]" of employment, politics, religion, habits, and browsing history, even after plaintiffs stopped using the service. 956 F.3d at 599 & n.8. The driving behavior data Plaintiffs allege Defendants collect is instead akin to the data collected in *Popa*, which the Ninth Circuit concluded was not highly offensive. 2025 WL 2448824, at *5 (disclosed website interaction with pet company was not "embarrassing, invasive, or otherwise private," more akin to "store clerk's observing shopping in order to identify aisles that are particularly popular or to spot problems"); *see also* Mot. 46–47 (citing cases).

## VII. The Claims Against AllCorp, AIC, AVPIC, Arity 785, and Arity Services Fail.

As the Motion demonstrated, the Complaint's improper group pleading violates Rules 8 and 9(b) and obscures that Plaintiffs have not alleged any conduct relating to several Defendants at all. Mot. 48–50. Plaintiffs respond by saying that there is no "blanket prohibition"[29] on group

[29] In the cases Plaintiffs cite, there was only one defendant, the plaintiff did not know which defendant was responsible for the conduct, or the plaintiff pleaded "collective conduct." Opp. 48–49 (citing cases). None applies here. And Plaintiffs mischaracterize *Nagel v. v. ADM Investor Servs., Inc.*, as the court there found fault with the failure to plead allegations as to each defendant. 995 F. Supp. 837, 845 (N.D. Ill. 1998).

pleading. Opp. 48–49. But the allegations they point to confirm their insufficiency, as those allegations name each Defendant but fail to allege their purported roles in the conduct. *Id.* 49.

Plaintiffs' effort to double-down on their improper pleading also ignores the facts showing that AllCorp, AIC, and AVPIC must be dismissed. Mot. 49–50. Plaintiffs argue that AllCorp is not automatically shieled from liability as a non-operating holding company.[30] Opp. 50. But AllCorp consistently has been dismissed from cases involving other Allstate entities because it cannot issue, write, or sell insurance products, *see* Mot. 49 (citing cases), and Plaintiffs do not allege it had any role here. As to Plaintiffs' failure to plead any facts as to AIC or AVPIC, the *single* case Plaintiffs cite, *Curry v. Revolution Labs, LLC*, 949 F.3d 385, 388–89, 402 (7th Cir. 2020), was brought by a *pro se* Illinois resident against one competitor. *Curry* hardly supports the thirty-eight Plaintiffs' failure here to allege facts as to each Defendant.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' claims should be dismissed.

Dated: September 15, 2025

Respectfully submitted,

*/s/ David A. Gordon*
David A. Gordon
Ian M. Ross
H. Javier Kordi
Liamarie M. Quinde
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036
dgordon@sidley.com

*Counsel for Defendants*

---

[30] Plaintiffs' other cases are also distinguishable. *See Northbound Grp., Inc. v. Norvax, Inc.*, 795 F.3d 647, 651 (7th Cir. 2015) (dismissing parent company not party to the contract); *BCBSM, Inc. v. Walgreen Co.*, 512 F. Supp. 3d 837, 862 (N.D. Ill. 2021) (parent/subsidiary were allegedly "integrated," unlike here).

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that on September 15, 2025, the foregoing *Reply in Support of Defendants' Motion to Dismiss the Consolidated Complaint* was filed electronically using the ECF system, which will send notification of such filing to all counsel of record at their e-mail addresses on file with the Court.

*/s/ David A. Gordon*

David A. Gordon
One of the Attorneys for Defendants