**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re: ALLSTATE & ARITY CONSUMER PRIVACY LITIGATION | Master Docket No. 1:25-cv-00407<br><br>Hon. Jeremy C. Daniel |

**DEFENDANTS' REPLY IN SUPPORT OF**
**MOTION FOR INCORPORATION BY REFERENCE ISO MOTION TO DISMISS**

Defendants' Motion for Incorporation by Reference (Dkt No. 62) (the "Motion" or "Mot.") demonstrated that this Court can properly consider the App Agreements and signup flows that Plaintiffs themselves allege they reviewed when signing up for the Apps.[1] As the Motion explained—and Plaintiffs do not contest—Plaintiffs specifically pleaded that, "prior to downloading and using the Apps," they "reviewed the prominent information about the nature and function of the Apps."[2] And as the Motion also established, consideration of these materials in connection with Defendants' Motion to Dismiss is appropriate—and, indeed, critical—because Plaintiffs make allegations based on these materials, thus placing them at issue, and because consent is a fully dispositive issue in this case. *See* Mot. 1–4.

In their Opposition (Dkt. No. 67, "IBR Opp."), Plaintiffs do not (and cannot) deny that they pleaded these allegations or that a ruling on consent could dispose of this case. Instead, Plaintiffs argue that their allegations about these documents were too vague for them to be considered

[1] Capitalized terms used herein have the meaning provided to them in the Motion.

[2] Compl. ¶¶ 18, 27, 36, 45, 54, 64, 82, 91, 100, 109, 118, 127, 136, 145, 155, 164, 173, 182, 191, 201, 210, 219, 228, 237, 246, 255, 265, 275, 285, 295, 305, 314, 323, 332, 341, 351, 360, 369 (identical allegations).

"central" to the Complaint allegations, and that (as a result of a strategic decision not to plead which versions of the App Agreements they saw) there are too many factual issues for the Court to sift through in the Motion. This hide-the-ball effort is exactly what the incorporation by reference doctrine is intended to prevent. *See Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002) (doctrine prevents a plaintiff from "evad[ing] dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that prove[s] that his claim ha[s] no merit"); *Fin. Fiduciaries, LLC v. Gannett Co., Inc.*, 46 F. 4th 654, 663 (7th Cir. 2022) (affirming dismissal where court invoked doctrine, which seeks to "prevent[] a plaintiff from avoiding dismissal by omitting facts or documents that undermine his case").

Both of Plaintiffs' arguments should be rejected. ***First***, they assert that these Agreements and signup flows are not "central" to their claims, only to Defendants' affirmative defenses. IBR Opp. 1. That is simply wrong. As Defendants' Motion to Dismiss demonstrates, *plaintiffs themselves affirmatively pleaded* lack of consent throughout the Complaint, *see, e.g.*, Compl. ¶¶ 1, 15, 16, 19, 20, 28, 37, 46, 55, 65, 74, 83, 92, 101, 110, 119, 128, 137, 146, 156, 165, 174, 183, 192, 202, 211, 220, 229, 238, 247, 256, 266, 276, 286, 296, 306, 315, 324, 333, 342, 352, 361, 370, and their Complaint actually reproduces images of User Flows for Apps that Plaintiffs encountered, *id*. ¶¶ 447–48. It is unclear whether Plaintiffs' Opposition is, in fact, bizarrely challenging the same User Flows appended to the Motion that they reproduced in their Complaint. Regardless, Plaintiffs can hardly deny that they have pleaded claims under federal and state statutes where key elements include whether the alleged access of their devices or data was "without authorization," "without permission," or exceeded "authorized access." *E.g.*, Compl. ¶¶ 501–13, 591–606, 916–25. Each of these elements is affirmatively pleaded in Plaintiffs' Complaint, *see id.*, and Plaintiffs cannot sidestep the centrality of consent to their own claims.

***Second***, Plaintiffs' fallback argument that they might not have seen the exact Agreements and Flows appended to the Motion is spurious. *See* IBR Opp. 6–8. It was their pleading obligation, when they decided to file fourteen class actions based entirely on the fact that they saw the Texas Attorney General file a case against Defendants, to plead allegations specific to their own purported loss of data. And it was also their obligation to plead facts to support their allegations that Defendants' conduct was without authorization or in excess of their authorization. And, again, Plaintiffs affirmatively pleaded that they *saw* the terms and conditions, so this cannot be a case where there were no such terms and conditions or they only came into existence later. The pretextual issues they now raise regarding the documents appended to the Motion do not stem from concerns about whether such documents exist, or their authenticity, but from Plaintiffs' attempt to sidestep their own pleading. What Plaintiffs have done is the precise type of artful pleading that the incorporation-by-reference doctrine is designed to prevent, where documents Plaintiffs need to prove their case are dispositive, but strategically obscured in their pleading.

The Court should reject both of Plaintiffs' arguments and grant this Motion. The concessions in Plaintiffs' Opposition, however, also invite the Court to go one step further. Plaintiffs' own arguments emphasize that *each and every* Plaintiff is differently situated on the issue of consent—their argument now is that there are key differences of timing and assent that preclude incorporation by reference of the App Agreements or User Flows. If that is their argument, then it is an implicit concession that individualized questions predominate over common questions on the case-dispositive issue of consent, rendering impracticable class action treatment under Federal Rule of Civil Procedure 23(b)(3). Thus, to the extent the Court denies either the Motion to Dismiss or Motion for Incorporation by Reference, Defendants respectfully request the opportunity to move to strike all class allegations.

## ARGUMENT

### I. Consent Is Central to the Complaint and a Gateway Issue in This Case.

Plaintiffs' Opposition takes a broad brush to the thirty-eight Counts in the Complaint, asserting that consent is central to none. That blanket claim is at odds with the very case law they cite and disregards Defendants' Count-by-Count analysis of how each Count hinges on consent. *See* Ex. B to Mot. to Dismiss, Dkt. No. 61-2.

"[T]he question of whether Plaintiffs consented to the [Arity SDK's] data collection under the Privacy Policy [or Terms and Conditions] is 'central' to the Complaint; lack of consent is a prima facie element of many of their claims." *TikTok, Inc. In-App Browser Priv. Litig.*, No. 24-cv-2110, 2024 WL 4367849, at *8 (N.D. Ill. Oct. 1, 2024). Judge Pallmeyer came to this conclusion in the *TikTok, Inc. In-App Browser* case on a complaint that (while different in matters that are dispositive on the merits) also pleaded an alleged interception of data without consent. There, a class of plaintiffs alleged TikTok "unlawfully intercepted private and personally identifiable data from TikTok users and used such data to generate massive revenue." Compl. ¶ 4, *TikTok, Inc. In-App Browser Priv. Litig.*, 1:24-cv-02110 (N.D. Ill. Apr. 9, 2024), Dkt. No. 44. On that theory, the *TikTok* plaintiffs asserted claims under the Federal Wiretap Act, state wiretapping and eavesdropping statutes, unfair competition laws, invasion of privacy, and unjust enrichment. *Id.* ¶¶ 196–378. The *TikTok* complaint did not include screenshots of any relevant agreements or user flows. It alleged only:

> Nowhere in Defendants' Terms of Service or the privacy policies is it disclosed that Defendants compel their users to use an in-app browser that installs JavaScipt code into the external websites that users visit from the TikTok app which then provides TikTok with a complete record of every keystroke, every tap on any button, link, image or other component on any website, and details about the elements the users clicked.

*Id.* ¶ 180. Here, Plaintiffs allege *far more* on the disclosures they reviewed from which this Court can conclude the centrality of consent. Like in *TikTok*, Plaintiffs allege that "Defendants and the apps running Defendants' SDK either failed to inform Plaintiffs and Class Members that Defendants were collecting Personal Data and Driving Data, or purported to do so in a manner so misleading, confusing, deceptive, and opaque that no reasonable consumer would have understood the extent of the Personal Data and Driving Data collection." Compl. ¶ 445. They refer to "[v]ague disclosures offered by third party apps stating that they are 'powered by Arity' or that 'certain information' is shared with Defendants" which, Plaintiffs further allege, "did not hint at the scope, sensitive nature, detail, and volume of data sharing, nor that Defendants were using them to build profiles to [be] used and sold for profit." *Id.* Plaintiffs here take it several leaps further than *TikTok*, inserting screenshots from two of those third party Apps—both of which link to the underlying Privacy Policies that Defendants seek to incorporate by reference. *Id.* ¶ 447–48. Plaintiffs also, unlike in *TikTok,* affirmatively allege that they saw and read the disclosures.

In their Opposition, Plaintiffs now try to argue that their allegation that they "reviewed the prominent information about the nature and function of the app presented to [them] prior to downloading [their respective] app" could mean a lot of things, and might not be a reference specifically to the App Agreements. IBR Opp. 5. Likewise, they minimize the two screenshots of User Flows they pictured in the Complaint as something that should be discarded as just "examples," not something central to their arguments. *Id.* at 4. The Court should not countenance such "artful pleading by [P]laintiffs," nor should it be deterred from drawing obvious and reasonable inferences from Plaintiffs' own allegations. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002–03 (9th Cir. 2018) ("The doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents

that weaken—or doom—their claims."). Plaintiffs pleaded these "examples" and these allegations because they knew perfectly well that a conclusory allegation that the purported data disclosures they allege were "unpermitted" or "unauthorized" would have been insufficient under Rule 8 (the first argument Defendants make in their motion to dismiss the Complaint, before even getting to the materials to be incorporated)—they cannot run from those allegations now. *See, e.g.*, Compl. ¶¶ 446–48 (including screenshots in support of overall obligation that "neither Defendants nor the apps on Defendants' behalf, informed Plaintiffs and Class Members of the various ways that Defendants would" collect and use their data).

Consent is unquestionably "central" to the Complaint, an affirmative issue for many of Plaintiffs' claims, and the cases Plaintiffs cite do not hold otherwise. In *Rodriguez v. ByteDance, Inc.*, No. 23-cv-4953, 2025 WL 672951 (N.D. Ill. Mar. 3, 2025), Judge Alexakis *granted* the defendant's motion to incorporate by reference "three versions of CapCut's Privacy Policy, from 2020, 2022, and 2023," holding that "whether these policies constituted plaintiffs' consent to the alleged data collection is central to their claims that defendants violated various privacy-related statutes.[3] *Id.* at *2. That same reasoning applies here, and the case of *Karling v. Samsara Inc.*, 610 F. Supp. 3d 1094, 1102 (N.D. Ill. 2022) does not suggest a different result. There, Judge Ellis declined to incorporate by reference an entire webpage containing a privacy policy, where the complaint only cited that webpage to show that that defendant admitted it relies "on facial recognition information derived from images of drivers." *Id.* at 1102; Compl. ¶ 1, *Karling v. Samsara Inc.*, Case No. 1:22-cv-00295 (N.D. Ill. Jan. 18, 2022), Dkt. No. 1-1. The Court held this citation merely set out "introductory background material" and was not central to the complaint.

[3] Like here, the complaint in *Rodriguez* alleged claims under the CFAA, unfair competition and unjust enrichment, and various common law privacy torts. *See* Compl. ¶¶ 155–329, *Rodriguez v. ByteDance, Inc.*, No. 23-cv-4953 (N.D. Ill. Feb. 1, 2024), Dkt. No. 22.

*Karling*, 610 F.Supp.3d at 1102. Here, Plaintiffs do not refer to the App Agreements and User Flows for "background." They do so because lack of the consent is expressly *required* for several Counts, including, at a minimum, the Federal Wiretap Act, CFAA, CDAFA, Invasion of Privacy, Florida Security of Communications Act, Illinois Eavesdropping, Pennsylvania Unlawful Use of Computer, and the Pennsylvania Wiretap Act. *See* Ex. B to Mot. to Dismiss, Dkt. No. 61-2, and citations therein. As for the other claims, they cannot survive unless they are "unauthorized," the result of "intentional intrusions," or "deceptive."[4] *See, e.g.*, Compl. ¶¶ 531, 570, 659, 760, 776.

Like *Karling*, the case of *Patterson v. Respondus, Inc*. similarly involved a defendant seeking to introduce entire webpages through incorporation by reference. 593 F. Supp. 3d 783, 804 (N.D. Ill. 2022). There, the defendant "seem[ed] to believe that because Plaintiffs' [Biometric Information and Privacy Act] claims relate broadly to [defendant's] written policies,'" all written policies were fair game. *Id*. Judge Pallmeyer, who later wrote the opinion in *TikTok, infra*, rejected that argument, reasoning that "[t]o be incorporated by reference, the documents themselves—not just their general category or theme—must be central to the complaint and referred to in it." *Id*. at 805. Here, Defendants do not seek to incorporate "general" categories or themes of documents. As required at this stage, Defendants accept the allegations in the Complaint as true, and offer the actual App Agreements and User Flows that Plaintiffs would necessarily encounter and agree to as part of downloading and using the Apps. Applying the incorporation by reference doctrine now before subjecting parties to burdensome discovery is warranted. It makes no difference that *other* plaintiffs rightly decided to not oppose such conservatism in more recent cases. IBR Opp. 6

---

[4] Even to the extent that consent may also be an "affirmative defense," courts in this District "have granted Rule 12(b)(6) motions on the basis of affirmative defenses and [the Seventh Circuit] has affirmed those dismissals." *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 n.1 (7th Cir. 2012).

(attempting to distinguish *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047 (N.D. Cal. 2025) and *Washington v. Flixbus, Inc.*, No. 25-cv-00212, 2025 WL 1592961 (S.D. Cal. June 5, 2025)).

## II. Plaintiffs' Manufactured Disputes About Document Authenticity and Completeness Arise Solely from Their Own Pleading Failures and Strategic Ambiguity.

Almost certainly understanding that the App Agreements and User Flows are central to this case, Plaintiffs manufacture a "host of disputed facts" pertaining to whether these materials are the "correct" ones. IBR Opp. 6. Plaintiffs again apply a broad brush—arguing that either *every* App Agreement and *every* User Flow applicable to *every* Plaintiff must be submitted, or the Court can consider none. *Id*. at 6–8. No case law cabins the Court's discretion with such a rigid all-or-nothing approach. *See Hartman v. Meta Platforms, Inc.*, Case No. 3:23-cv-02995, 2024 WL 4213302, at *4 (S.D. Ill. Sept. 17, 2024) (the decision to consider "extraneous document[s]" lies "within the Court's discretion"). More fundamentally, Plaintiffs' "dispute" over the veracity or adequacy of the materials stem not from any issues of *authentication*—it stems from the deliberate ambiguity used to obscure the gateway issue of consent in this case. To put it simply, it is within each Plaintiff's knowledge because they admittedly reviewed these documents; their choice to keep their allegations at a higher level of abstraction should not force Defendants to identify every policy ever in existence. And, again, unlike other cases, there is no question that a policy existed.

It was *Plaintiffs* who chose to bring sweeping class-action claims based on alleged *unauthorized* collection, use, and sharing of their data. That decision imposed on them—and their attorneys—an obligation to allege *facts* supporting their theory, including which agreements and disclosures each Plaintiff encountered. Although Plaintiffs chose to allege that they read the agreements and disclosures, they omitted necessary detail, unfairly disadvantaged Defendants and this Court, and then decried *Defendants* for not coming forth with "all of the facts and materials relevant to the issue of consent." IBR Opp. 6–7. Neither *Twombly* nor Rule 8 authorize a plaintiff

to shift the pleading burden by deliberately advancing vague and generalized allegations that effectively force Defendants and the Court to speculate about what Plaintiffs' saw and agreed to when they downloaded, signed up for, and used the Apps. Precisely to address such pleading tactics, federal courts developed a safeguard—the incorporation by reference doctrine—that authorizes looking beyond the pleadings when faced with evasive and strategically vague allegations of the type Plaintiffs advance here. *See Tierney,* 304 F.3d at 738.

Plaintiffs' demands for the "full universe of App Agreements and App User Flows implicated by the CAC," IBR Opp. 8, are similarly hollow, as Plaintiffs have provided no factual basis or credible assertion that any variations across versions would affect the consent analysis. Even within the limited universe of App Agreements Defendants have provided, Plaintiffs do not identify a single discrepancy across versions of *the same* App Agreement, let alone any difference between the provided App Agreements and the App Agreements they purportedly "reviewed." Again—if there was some material difference—any plaintiff could point that out, having admittedly read the information. The insistence on an exhaustive "universe" of documents mirrors Plaintiffs' broader tactic of throwing every conceivable objection at the wall—hypothetical, factually incorrect, or otherwise—hoping that something sticks. *See, e.g.*, Reply ISO Motion to Dismiss at 7–9 (addressing Plaintiffs' demands for hyper-specific disclosures in the App Agreements).

This is not a case involving "corporate websites" that "change over time," with no way of knowing whether the content "change[d] during the years relevant to Plaintiffs' claims." IBR Opp. 7 (quoting *Patterson,* 593 F. Supp. 3d at 805, 806–07). *See also id*. (quoting *Hartman,* 2024 WL 4213302, at *7 ("terms and conditions may have been modified over the years"). Defendants *admit* the App Agreements might change over time—which is precisely why the Motion for

Incorporation by Reference includes various versions of the same App Agreements. Unlike webpages with potentially imperceptible changes, the App Agreements are either expressly *dated*, or were captured using an archival tool that captured historical images of those App Agreements. *See Arteaga v. United States*, 711 F.3d 828, 834 (7th Cir. 2013) (considering archived webpage in affirming Rule 12(b)(6) dismissal without discussing authentication); *Hepp v. Ultra Green Energy Servs., LLC*, No. 13-cv-4692, 2016 WL 1073070, at *2 n.1 (N.D. Ill. Mar. 18, 2016) ("Courts have taken judicial notice of the contents of web pages available through the Wayback Machine as facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned, *see* Fed. R. Evid. 201."). Plaintiffs cannot ask that Defendants provide the version of the App Agreement and User Flow that corresponds to *every* Plaintiff during *each* relevant time period, then deliberately fail to allege facts that would enable Defendants to meet that ask, all while not providing even a hint as to what differences may exist.

At minimum, Plaintiffs must replead to properly allege the predicate facts they themselves admit are required to determine what each individual Plaintiff agreed to and when.

**III. Plaintiffs Confirm That Individualized Consent Issues Defeat Class Certification.**

Plaintiffs' defensive posture at the pleading stage inadvertently underscores why their claims are ill-suited for class treatment later in this case. After pleading the same boilerplate allegation across all but one Plaintiff (*i.e.*, that they "reviewed the prominent information about the nature and function of the apps," *see supra* n.2), Plaintiffs pull an about-face and argue that the Court must find now these identical allegations means *something different* for each of the 38 Plaintiffs. Plaintiffs argue that the Court should not resolve the issue of consent now because there are too many variations in the timing of Plaintiffs' App use and purported consent, uncertainty regarding changes to and dates of App User Flow screenshots, variability in each user's experiences, and differences in User Flows across devices. IBR Opp. 8. Stated differently,

Plaintiffs seek relief from a motion to dismiss by conceding that ***none of them is similarly situated*** because the case-dispositive issue of consent turns on individualized determinations of "when each Plaintiff started using the app and when particular technology relevant to the claims was incorporated into the app." IBR Opp. 7.

The Court should not allow Plaintiffs to impose broad and burdensome class-wide discovery obligations when Plaintiffs themselves have acknowledged the individualized and plaintiff-specific nature of the central issue—*and* seek a judicial benefit from that argument. Common questions of law or fact must "predominate over any questions affecting only individual members" before the class action device may be utilized. Fed. R. Civ. P. 23(b)(3). Plaintiffs all but concede that such predominance is not present here. Thus, to the extent the Court denies either the Motion for Incorporation by Reference or Motion to Dismiss, Plaintiffs' class action allegations necessarily will be insufficient.

This Court should grant Defendants' Motion for Incorporation by Reference.

Dated: September 15, 2025

Respectfully submitted,

*/s/ David A. Gordon*
David A. Gordon
Ian M. Ross
H. Javier Kordi
Liamarie M. Quinde
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036
dgordon@sidley.com

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that on September 15, 2025, the foregoing *Defendants' Reply in Support of the Motion for Incorporation by Reference ISO Motion to Dismiss* was filed electronically using the ECF system, which will send notification of such filing to all counsel of record at their e-mail addresses on file with the Court.

*/s/ David A. Gordon*

David A. Gordon
One of the Attorneys for Defendants