**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **IN RE: ALLSTATE & ARITY CONSUMER PRIVACY LITIGATION** | Master Docket No. 1:25-cv-00407<br><br>Hon. Jeremy C. Daniel<br><br>Hon. Daniel P. McLaughlin |

**STIPULATION AND ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION**

## 1. PURPOSE

This Order will govern discovery of documents and electronically stored information ("ESI") in the above-captioned litigation (the "Action") as a supplement to the Federal Rules of Civil Procedure and any other applicable orders and rules. The parties agree that this order is consistent with Federal and Local rules and that it will govern the production of documents and ESI in this Action. The failure of this ESI Protocol to address any particular issue is without prejudice to any position that a Party may take on that issue.

## 2. DEFINITIONS

a) "Electronically stored information" or "ESI," as used herein, has the same meaning as contemplated by the Federal Rules of Civil Procedure.

b) "Documents" has the meaning contemplated in the Federal Rules of Civil Procedure.

c) "Non-Party" means any natural person, partnership, corporation, association, or other legal entity that is not a Party (as defined below) in this Action.

d) "Party" means any party to this Action.

e) "Producing Party" means the Party or Non-Party that may be producing Documents in response to a request by the Requesting Party.

f) "Receiving Party" means the Party requesting the production of Documents.

**3. PRESERVATION**

The Parties agree to take reasonable steps to preserve ESI that is reasonably related to the claims and defenses in this litigation ("Relevant Information") in accordance with their obligations under applicable law. Either Party may request to meet and confer about the preservation of ESI. In addition, the Parties agree to identify any data source that a Party believes, after a good faith, reasonable investigation (1) is not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B), and (2) is reasonably likely to contain unique Relevant Information that need not be preserved under the proportionality factors set forth in Fed. R. Civ. P. 26(b)(1). The Parties shall meet and confer regarding whether the burden or expense of preserving and potentially producing any such data source identified by a Producing Party outweighs its likely benefit.

**4. THIRD-PARTY SUBPOENAS AND THE PROCESSING OF NON-PARTY DOCUMENTS**

a) A Requesting Party issuing a Non-Party subpoena ("Issuing Party") shall include a copy of this Order with the subpoena and request that the Non-Party produce documents in accordance with the specifications of this Order relating to form of production. The Issuing Party is responsible for producing to all other Parties any productions obtained in the same form in which the document(s) was/were produced by the Non-Party. Such non-Party productions should be served by the Issuing Party to all other Parties within fourteen (14) calendar days of the Non-

Party's production to the Issuing Party. If any such Non-Party productions are not Bates Numbered by the Non-Party producer, prior to any Party reproducing the Non-Party documents, the Parties will meet and confer regarding whether the documents should be processed prior to reproduction. For the avoidance of doubt, nothing in this Order is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or Non-Parties to object to a subpoena.

**5. SEARCH**

The Parties agree that in responding to an initial Fed. R. Civ. P. 34 request, or earlier if appropriate, they will meet and confer about searching ESI in order to identify ESI that is subject to production in discovery.

a) **Search Terms and Methodology**: The Parties recognize that there exists a variety of search tools and methodologies, including but not limited to the use of search terms and technology-assisted review ("TAR") tools. Within seven (7) days of determining which methodology it has chosen to use, the Producing Party will disclose the search tools and methodologies it intends to use. Within twenty-one (21) days of responding to Requests for Production, but no sooner than fourteen days after the Court enters the ESI Protocol, the Producing Party shall share with the Receiving Party:

i. The custodial and non-custodial sources that the Producing Party intends to search for responsive documents (to the extent such sources have been identified at the time of the exchange through reasonable good faith efforts). For custodial searches, the Producing Party will also provide the job title(s) of each proposed custodian, the time period(s) during which they held such job title(s) provided that information

is attainable through reasonable good faith efforts, and the time period for which the Producing Party proposes to search the custodian's records;

ii. If the Producing Party intends to use electronic search terms (either alone or in advance of TAR) to locate the documents it will review for possible production from a larger set of documents (*e.g.*, custodial email files, custodial or non-custodial electronic document sets, etc.), the Producing Party shall propose initial search terms to be run across ESI sources identified as containing potentially relevant ESI. Other than the filtering expressly permitted by §7(b) and the deduplication permitted by §7(c), a Producing Party shall not apply date restrictions, domain or sender/recipient exclusions, file-type exclusions, email-thread suppression (i.e., production of inclusive emails only), near-duplicate suppression, or any other criteria that reduce the population of Documents reviewed for responsiveness, without first disclosing those criteria to the Receiving Party under this §5(a). If the Receiving Party objects to any such criteria within seven (7) days of that disclosure, the Producing Party shall not apply the disputed criteria until the Parties have met and conferred and any dispute is resolved by agreement or by the Court.

iii. Within fourteen (14) days of receiving the Producing Party's search information above (including the identification of custodial and non-custodial sources), the Receiving Party may propose to the Producing Party a limited and reasonable number of (a) additional search terms, (b) additional individual custodians, or (c) additional non-custodial sources, provided that any such proposals are proportional to the needs of the case and are narrow, non-duplicative, and tailored to this action, unless the Parties agree otherwise. Within fourteen (14) days of receipt of the

Receiving Party's proposed sources and search terms, the Producing Party shall indicate the custodial and non-custodial sources it agrees to search and the search terms it agrees to use.

b) **Disputed Custodians and Search Parameters**: With respect to custodial sources, if the Producing Party and the Requesting Party cannot agree to search all proposed custodians' files, the Producing Party shall provide information sufficient to support the decision to not include that custodian, which may include hit reports in order to assess claimed overlap between proposed custodians or the burden associated with the production of certain custodians' files. Hit reports requested in good faith to resolve such disputes will not be unreasonably withheld.

With respect to search terms, if the Producing Party and the Requesting Party cannot agree to use a proposed search term as phrased, the Producing Party shall provide for each disputed term hit reports that contain, for each proposed or agreed custodian, the following with respect to each disputed search term: a) the number of documents with hits for that term; b) the number of hits with families; and c) the number of unique documents hit on by the disputed term. The Producing Party also shall produce contemporaneously therewith a hit report that provides the data described (a), (b) and (c) immediately above for all agreed search terms in the aggregate.

The Parties shall meet and confer within ten (10) days following receipt of the exchange of hit reports regarding the Receiving Party's proposed sources, custodians or search terms to negotiate additional agreed upon sources, search terms or custodians. The Parties agree to exchange up to three (3) iterations of proposed search terms (each Party proposing three sets of search terms and the Producing Party producing the final proposed search terms) and use all reasonable efforts to meet the deadlines and obligations (including hit reports and counterproposals) applicable to disputed custodians and search terms set forth in this §5(b). If the

Parties, after engaging in a good faith meet and confer process, are thereafter unable to reach agreement on search terms, unless otherwise agreed, any Party may present its disputes to the Court.

c) **TAR**: The Parties may use technology-assisted review (TAR), including Continuous Active Learning (CAL), or AI-assisted review (*e.g.*, aiR). A Producing Party that elects to use TAR, which includes similar alternative technology such as AI-assisted review, will disclose the following information regarding its use of a TAR process: (a) name of the TAR software or vendor, (b) a general description of how the producing Party will train the algorithm, (c) a description of the categories or sources of the documents included or excluded from the TAR process (*e.g.*, paper documents), and (d) a general description of the quality control and assurance measures that will be taken to ensure a reasonable production consistent with the requirements of Federal Rules of Civil Procedure (*e.g.*, validation process), (e) whether search terms or any other culling criteria will be applied to reduce the population of Documents before the TAR process is applied and, if so, the number of Documents collected, the number remaining after application of those criteria, and the number to which TAR will be applied, and (f) the validation methodology the Producing Party will use, including the criteria it will apply to determine that the TAR process is complete. The Parties agree to meet and confer regarding any differences that they may have over the Producing Party's use of TAR and its processes. If an agreement cannot be timely reached, then the Parties agree that any Party may raise this issue with the Court.

d) **Targeted Collections:** A Producing Party may conduct "targeted" collections from sources known or identified in interviews or other discussions with counsel as containing responsive materials, such as shared folders, workspaces, and/or messaging channels rather than employ search terms or technology-assisted review to avoid the inadvertent culling of potentially

responsive material. The Producing Party shall disclose to the Requesting Party the categories of documents it proposes to treat as “go-gets” as described herein.

**6. VALIDATION**

Each Producing Party shall take reasonable steps to validate its review process (*i.e.*, using quality control measures to determine whether its production is missing relevant ESI or contains substantial amounts of irrelevant ESI) and make any necessary adjustments or corrections to its process. If, after reviewing a Producing Party’s production, a Receiving Party reasonably requests additional information regarding the validation method(s) used by the Producing Party, the Producing Party will disclose the level of end-to-end recall (the percentage of responsive Documents in the Collection that were identified as responsive by that Producing Party’s methodology). For purposes of this §6, the “Collection” means all Documents collected from the custodial and non-custodial sources identified under §5(a), before the application of search terms, TAR, or any other culling criteria, except that the Collection does not include Documents removed by the filtering permitted by §7(b), the deduplication permitted by §7(c), or any date parameters agreed by the Parties or ordered by the Court. If there remain disputes between the Parties regarding validation, the Parties shall meet and confer to resolve such disputes in good faith, including a reasonable discussion regarding the tool used and the parameters used to obtain or calculate the level of recall. Each Producing Party shall preserve the Collection, and each set of Documents excluded from review at any stage of its process, until the final resolution of this Action, including any appeals.

To the extent search terms are used for given sources or non-structured data sets, the Producing Party shall, promptly after it reasonably believes it has produced substantially all responsive, non-privileged documents from those sources or data sets, review one collective,

statistically valid, randomly generated sample of documents that do not hit on the search terms, using a 95% confidence level and 3% margin of error. To the extent TAR or similar technology is used for given sources or data sets, the Producing Party shall also review one collective, statistically valid, randomly generated sample, using a 95% confidence level and 3% margin of error, of the Documents excluded from review by the TAR process. The Producing Party shall produce any relevant, responsive, non-privileged documents identified in any such sample. If such documents are identified, the Producing Party and Receiving Party shall meet and confer to reach agreement on an appropriate set of additional search terms reasonably designed to capture those documents. When conferring regarding these search terms the Parties will proceed as set forth in §5(b) herein, and shall review and produce any resulting relevant, responsive, non-privileged documents. The Producing Party shall disclose to the Receiving Party in writing, for each sample required by this §6: the number of Documents in the population sampled; the number of Documents sampled; the number of Documents in the sample determined to be responsive; the resulting estimated percentage and estimated absolute number of responsive Documents remaining in that population, together with the associated confidence interval; and the estimated recall calculated as provided in this §6. If the samples indicate that the Documents excluded from review at any stage still contain a substantial number of responsive Documents that are not marginal or duplicative of Documents already produced, the Producing Party shall make appropriate corrections to its search terms, TAR process, or review, and shall repeat the process described in this paragraph. Absent such a showing, the foregoing shall constitute the sole null-set validation and search-term refinement process required under this Protocol. If the Parties are thereafter unable to reach agreement on additional search terms, unless otherwise agreed, any Party may present its disputes to the Court.

## 7. PRODUCTION FORMATS

a) **Metadata Fields:** Except as otherwise set forth in this ESI Protocol, ESI files shall be produced with at least each of the data fields set forth in **Appendix A** that are available and can reasonably be extracted from a document. However, to the extent any Party is required or agrees to produce documents in the Action that originally were produced in other cases or government investigations, such documents shall be produced with the metadata corresponding to the data fields in Appendix A.

b) **Culling/Filtering**. The Producing Party will use its best efforts to filter out common system files and application executable files by using a commercially reasonable hash identification process. Hash values that may be filtered out during this process are located in the National Software Reference Library NIST hash set list. To the extent a Producing Party identifies a file type not listed in the National Software Reference Library NIST hash set that does not appear to contain responsive information and which recurs in its document collection, the Parties shall meet and confer regarding whether to include such file types in the culling/filtering required by this Section.

c) **Deduplication**. Documents should be deduplicated at the family-group level provided that the Producing Party identifies the additional custodians in an All Custodian field.

d) **Entire Document Families:** The Parties will make responsiveness and production determinations at the family level, meaning that if any member of a given document family (*i.e.*, parent or attachment) is responsive and contains any non-privileged information, the entire family must be produced, excepting (1) junk files and non-user-created content routinely excluded during processing, and (2) documents that are withheld on the basis of privilege in compliance with the Parties' stipulation or the Court's order on such assertions of privilege. Where a document is fully

withheld from an otherwise produced family on the basis of privilege, the Producing Party may produce that document in redacted form or produce a single-page TIFF slip sheet indicating that the document was withheld alongside relevant metadata fields described in the Appendix

e) **Hidden Data**. The Parties shall process productions in a manner to ensure that the requested information (to the extent it exists and can be extracted with reasonable efforts) in a document being produced in TIFF is visible, including: auto date (code information should be provided in place of date); tracked changes (the TIFFs should show all tracked changes, comments, deletions, and revision marks, including the identity of the person making the deletion, revision, or comment, and the date and time thereof, in markup form); hidden columns or rows (noting that hidden columns and/or rows exist in native Excel files will be sufficient); hidden text or worksheets; hidden slides or speaker notes in native PowerPoint presentations; or other user-entered data that the source application can display to the user; provided, however, that the Producing Party reserves the right not to produce such documents in TIFF and instead produce such documents in Native Format if their production in TIFF will be unduly burdensome, and the Receiving Party reserves the right to request the production of such document in TIFF.

f) **Hyperlinked Files:** Parent-child relationships shall be maintained in production. The Parties are not required to search for and produce hyperlinked files that are links in responsive and non-privileged documents and emails, including hyperlinked documents utilizing Google Workspace, Microsoft Office's "Share Documents Via Link" feature, and/or any other document sharing platforms. The Parties agree to meet and confer regarding the reasonable production of hyperlinked files if a good faith request is made by the Receiving Party. Upon a good faith request by the Receiving Party identifying hyperlinked documents by the Bates number of the Document in which a link appears, the Producing Party shall use reasonable efforts to locate and produce the

responsive, non-privileged hyperlinked document, including the version of that document as it existed at the time of the Document in which the link appears if that version is reasonably available.

g) **SMS, Text, or Other Internet or Mobile Application Messages**: The Parties will disclose at the outset any use of enterprise messaging tools that they reasonably believe may contain unique, relevant information (e.g., Slack, MS Teams, Zoom, WhatsApp, Sametime, Skype, Telegram, etc.). The Parties will meet and confer regarding issues relating to the parameters for an inclusive collection of such data, the format of the production, and other unique issues to this type of data. If a Producing Party is producing communications exchanged through any such platforms, responsive, non-privileged messages should be produced in 24-hour time periods, with time stamps for each individual message, recipient, and sender information. The threads shall be produced in a manner that includes any transmitted attachments, emojis, embedded images, or other media files. To the extent that such messages contain personal health information, pictures of or information relating to minor children, social security numbers or other similarly sensitive and/or personally identifying information, such information may be redacted.

h) **Password Protection**. In the event any document or ESI (or portion thereof) produced is password protected, the Producing Party, upon request by the Receiving Party, shall provide the password needed to access the document or ESI so long as the required password, encryption keys, or other access credentials are within the Producing Party's possession, custody, or control and can be located with a good faith and reasonable effort.

i) **Structured or Aggregated Data – Databases, Enterprise Systems, and Third-Party Cloud Systems**.

i. To the extent discoverable ESI resides in a structured database, the Parties shall meet and confer in an attempt to agree upon the manner in which that ESI should

be produced. This may include the production of sample reports containing sample entries from any database, and a data dictionary, if one exists, requested to reach agreement concerning the scope of a Producing Party's structured data production(s). Such materials requested in good faith will not be unreasonably withheld. Upon review of the sample report, the Requesting Party may make reasonable requests for additional information regarding the database schema, codes, abbreviations, and different report formats or to request specific data from identified fields, and the Producing Party will undertake a good faith and reasonable effort to provide that additional information in writing within fourteen (14) days of such a request. The Parties agree to meet and confer regarding the ultimate production of structured data and will ensure person(s) knowledgeable about the structured data at issue are present during such conferences.

j) **Proprietary Files**. To the extent a response to discovery requires production of ESI accessible only through proprietary software, the Parties agree to meet and confer to finalize the appropriate production format.

k) **Redactions**. If documents are produced containing redacted information, an electronic copy of the original, unredacted data shall be securely preserved in such a manner so as to preserve, without modification, alteration, or addition, the content of such data including any metadata therein. Extracted text will not be provided for the portions of the electronic documents that have been redacted because the extracted text would reveal the redacted information. Instead, these files should be run through an OCR process to capture the visible text only and the results exchanged in lieu of the original extracted text. Each redaction on a document shall be endorsed with the word "redacted" or "redaction," along with the basis for such redaction on the face of the

document (e.g., "Redacted – Attorney-Client Privilege"). A Party may only redact documents to protect attorney-client privilege, work-product protection, or personally identifiable information, provided it is consistent with the Parties' stipulation or the Court's order on such assertions of privilege. In addition to the redactions permitted in section 7(g) above, a Party may propose additional relevance redactions prior to production, and the Receiving Party shall meet and confer within five (5) business days to discuss and attempt to reach agreement. In the event information is redacted for relevance, the Producing Party shall identify the basis for the redaction on the face of the document.

l) **Source Code.** This Stipulation does not govern the format for production of source code. The Parties agree to enter into a separate stipulation for production of source code, if source code is produced in this Action.

**8. DOCUMENTS PROTECTED FROM DISCOVERY**

a) Nothing in this Protocol shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. The Parties do not waive any objections to the production, discoverability, admissibility, or confidentiality of documents and ESI.

b) Except as otherwise agreed by the Parties or ordered by the Court, including with respect to Documents previously produced in other proceedings or to governmental entities, nothing in this Protocol shall be construed or interpreted as precluding a Producing Party from performing review and analysis to determine if a document is responsive to the Receiving Party's request or is privileged or otherwise protected. Further, any document that is in good faith reasonably deemed not responsive to the Receiving Party's request, or is privileged or otherwise protected, may be withheld.

## 9. COMPLIANCE AND DISPUTES

The Parties agree that, should any Party seek to modify any provision within this ESI Protocol, including by proposing to cull or otherwise limit documents to be produced or reviewed for responsiveness through means beyond those disclosed and/or negotiated pursuant to §§5(a)-(c), and the Parties cannot reach agreement, the matter may be submitted as a discovery motion to the applicable Judge for determination, consistent with that Judge's applicable procedures.

## 10. MODIFICATION

This Stipulated Order may be modified by a Stipulated Order of the Parties or by the Court for good cause shown. Any such modified Stipulated Order will be titled sequentially as follows, "First Modified Stipulated Order re: Discovery of Electronically Stored Information for Standard Litigation," and each modified Stipulated Order will supersede the previous Stipulated Order.

**IT IS SO ORDERED** on this9th day of September, 2026.

Hon. Jeremy C. Daniel
United States District Judge

Dated: September 8, 2026

Respectfully submitted,

*/s/ John A. Yanchunis*
John A. Yanchunis
*jyanchunis@forthepeople.com*
**MORGAN & MORGAN COMPLEX LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Tel.: (813) 223-5505

*/s/ Gary M. Klinger*
Gary M. Klinger
*gklinger@milberg.com*
**MILBERG, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606
Tel.: (866) 252-0878

*Interim Co-Lead Counsel for Plaintiffs*

/s/ *David A Gordon*
David A. Gordon
Lawrence P. Fogel
Liamarie M. Quinde
**SIDLEY AUSTIN LLP**
One South Dearborn
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036
dgordon@sidley.com

Ian M. Ross
**SIDLEY AUSTIN LLP**
830 Brickell Plaza
Miami, FL 33131
Telephone: (305) 391-5100
Facsimile: (305) 391-5101

*Counsel for Defendants*

# APPENDIX A

## I. PRODUCTION FORMAT AND PROCESSING SPECIFICATIONS[1]

A. **Production Components.** Productions shall include single page TIFFs, Text Files, an ASCII delimited metadata file (.dat format), and an image load file (.opt format as specified in paragraph C below) that can be loaded into commercially acceptable production software (e.g., Concordance).

B. **Standard Format.** To the extent reasonably feasible using standard litigation-support processing tools, TIFFs shall convey the same visible information as the original document, including text, embedded images and tables, and visible comments, tracked changes, and formatting.[2] Where hidden or tracked content cannot reasonably be rendered in TIFF without undue burden or loss of usability, the Producing Party may produce the document in Native Format,[3] with an appropriate slipsheet, unless otherwise agreed or ordered.

Each TIFF image should have a unique file name corresponding to the Bates number of that page with a ".tif" file extension. The file name should not contain any blank spaces and should be zero-padded (e.g., DEF-000001), taking into consideration the estimated number of pages to be produced. If a Bates number or set of Bates numbers is skipped in a production, the Producing Party will so note in a cover letter or production log accompanying the production. Bates numbers

[1] Structured or aggregated data from databases, enterprise systems, or third-party cloud systems shall be produced in the manner agreed by the Parties or ordered by the Court under the Structured or Aggregated Data provision of this Protocol, and need not comply with the TIFF, image-load-file, or document-family specifications in this Appendix unless otherwise agreed or ordered.

[2] The Receiving Party may request that specific documents be re-produced in a color tagged format when reasonably necessary to preserve the document's legibility. The Parties agree to meet and confer in good faith regarding such requests.

[3] "Native Format" means the format of ESI in which it was generated and/or used by the Producing Party in the usual course of business and in its regularly conducted activity. For example, the Native Format of an Excel workbook is an .xls or .xlsx file.

will be unique across the entire production and prefixes will be consistent across all documents produced.

Each TIFF in a production must be referenced in the corresponding image load file. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the Image Load file(s) in the production. The total number of pages referenced in a production's image load file should match the total number of TIFF files in the production. The total number of documents in a production should match the total number of records in the data load file.

C. **Load Files.**[4] Each production of documents and ESI shall be accompanied by Concordance or comma delimited Load Files (.dat and .opt) containing a field with the full path and filenames for files produced in Native Format and also containing Metadata fields identified in paragraph E below, to the extent the information is available in the original ESI file and can be extracted without unreasonable burden using standard litigation support processing platforms (except for vendor-generated fields related to the litigation production, such as "BegBates," "EndBates," "BegAttach," "EndAttach," "Source/Location," "Custodian," "Duplicate Custodian,"

[4] "Load File" means an electronic file containing information identifying a set of paper-scanned images, processed ESI, or Native Format files, as well as the corresponding Extracted Full Text or OCR (as defined below) text files, and containing agreed-upon extracted or user-created metadata, as well as information indicating unitization (i.e., document breaks and document relationships such as those between an e-mail and its attachments) used to load that production set into the document review platform of the Party receiving a production, and correlate data within that platform. A load file is used to import all image, native, and text files and their corresponding production information into a document database. The party making a production shall produce a load file for all produced documents with each particular production in accordance with specifications provided herein. "Extracted Full Text" means the full text that is extractable electronically from native electronic files, and includes, but is not limited to, all header, footer, and document body information. "Optical Character Recognition" or "OCR" means the optical character recognition technology used to read the text within electronic images of documents and create a file containing a visible, searchable text format of such documents.

"NativeLink" (if being produced in Native Format), "RedactionFlag (Y/N)," "RedactionBasis," "Confidentiality," Extracted/OCR text file path, "MD5 Hash"). Documents collected by counsel from the internet shall bear the name of counsel as custodian and be produced with all available metadata (including date metadata) but shall not include metadata created as work product by counsel (e.g., file name and folder name metadata). Image load files shall contain the following comma-delimited fields: BEGBATES, VOLUME, IMAGE FILE PATH, DOCUMENT BREAK, FOLDER BREAK, BOX BREAK, PAGE COUNT.

D. **Txt Files**. For each document, a single Unicode text file containing extracted text shall be provided along with the image files and metadata. The text file name shall be the same as the Bates number of the first page of the document. File names shall not have any special characters or embedded spaces. Electronic text must be extracted directly from the native electronic file to the extent reasonably feasible unless the document is an image file or contains redactions, in which case a text file created using OCR should be produced in lieu of extracted text. All documents shall be produced with a link in the TextLink field.

E. **Metadata Fields and Metadata File**

Each of the metadata and coding fields set forth below that can be extracted shall be produced for each document. The Parties are not obligated to populate manually any of the fields below if such fields cannot be extracted from a document, with the exception of the following: BEGBATES, ENDBATES, BEGATTACH, ENDATTACH, and CUSTODIAN. The metadata file shall be delimited according to the following characters:

- Delimiter = ¶ (ASCII:020)
- Text-Qualifier = þ (ASCII:254)
- New Line = ® (ASCII:174)

- Multi-value delimiter = (ASCII Code 059)

| Field Name | Description | Example/Format |
|---|---|---|
| BEGBATES | The Bates number of the first page of the document. | ABC00000001 |
| ENDBATES | The Bates number of the last page of the document. | ABC00000003 |
| BEGATTACH | The Bates number of the first page of the first document in a document family range. | ABC00000001 |
| ENDATTACH | The Bates number of the last page of the last document in attachment range in a document family range. | ABC00000008 |
| ATTACHCOUNT | The number of attachments to an e-mail or embedded parent, as generated by commercially available discovery processing tools. | |
| CONFIDENTIALITY | The confidentiality designation assigned to the document by counsel for the Producing Party. | Confidential, Highly Confidential |
| PRIVILEGE REDACTIONFLAG | When document contains redactions for privilege, field will be populated "Y" | Y |
| REDACTIONBASIS | The basis for any redaction in the document. | |
| PGCOUNT | The number of pages of the document, excluding the pages of documents in the same family | Numeric |
| CUSTODIAN | The name of the custodian/source from which the document originated. | Smith, Joe |
| ALL CUSTODIANS | The names of all custodian(s)/source(s) in possession of a document or an Exact Duplicate of a document. | |

| Field Name | Description | Example/Format |
|---|---|---|
| PRODUCING PARTY | The party making the production. | |
| VOLUME | The name of the CD or Hard Drive for ESI, or collection, binder, cabinet for hard copy docs (i.e., the volume ID). | VOL001 |
| RECORD TYPE | The type of document/record. | Email, hard copy, loose efile. |
| EMAIL SUBJECT | The subject line of the email. | |
| EMAIL AUTHOR/FROM | The display name and email address of the author of an email. | Joe Smith <joesmith@email.com> |
| EMAIL RECIPENT(S)/TO | The display name and email address of the recipient(s) of an email. | Jane Smith <janesmith@email.com> |
| EMAIL CC | The display name and email address of the copyee(s) of an email. | John Smith <johnsmith@email.com> |
| EMAIL BCC | The display name and email address of the blind copyee(s) of an email. | Mary Smith <marysmith@email.com> |
| ATTACHMENT | The file name(s) of documents attached to an email. **Separated by a semicolon.** | |
| EMAIL ATTACHMENT COUNT | The number of attachments to a parent. | Numeric |
| RECEIVED DATE | The date the document was received. | MM/DD/YYYY |
| RECEIVED TIME | The time the document was received. | HH:MM:SS |
| SENT DATE | The date the document was sent. | MM/DD/YYYY |
| SENT TIME | The time the document was sent. | HH:MM:SS |

| Field Name | Description | Example/Format |
|---|---|---|
| EMAIL IMPORTANCE | Email Importance Flag | Normal, Low, High |
| EMAIL CONVERSATION INDEX/THREAD TEX | ID used to tie together email threads. | OIC72AC4C |
| TIMEZONE PROCESSED | The time zone shall be UTC for all documents, but the metadata will also reflect the time zone where the documents were located at the time of collection. | UTC – China, UTC – US, etc. |
| FILE NAME | The file name of a native document. | |
| FILE AUTHOR | The author of a document from extracted metadata. | |
| FILE PATH | The file path/directory path where the native document was stored, including original file name. | |
| DUPLICATE FILEPATH | Folder locations of documents by held by other custodians whose copy of the document was not produced based on exact match HASH value de-duplication. Folder names shall be delimited by semicolons and include originating custodian name. | |
| DUPLICATE FILENAMES | Original file names of the unproduced deduplicated documents. Multiple values separated by semicolons. | |
| DOC TITLE | The extracted title of the document. | |
| FILE MANAGER/APPLICATION DESCRIPTION | Native file application. | Microsoft Excel, Word, etc. |
| FILE EXTENSION | The file extension of the document. | Xls |

| Field Name | Description | Example/Format |
|---|---|---|
| NATIVELINK | Native File Link (Native Files only) | |
| TEXTLINK | Link to text files | |
| HIDDEN DATA | Whether hidden data exists in the doc. For example, hidden Excel cells or PowerPoint slides. | Y, N, **Blank** |
| FILE CREATE DATE | The date the document was created. | MM/DD/YYYY |
| FILE LAST MODIFICATION DATE | The date the document was last modified. | MM/DD/YYYY |
| FILE LAST ACCESS DATE | The date the document was last accessed. | |
| FILE LAST AUTHOR | The name of the last individual to save the file. | |
| FILE LAST EDITED BY | The name of the last individual to edit the document from extracted metadata. | |
| DATE APPOINTMENT START | Date of calendar appointment entry. | MM/DD/YYYY |
| TIME APPOINTMENT START | Start time of calendar appointment entry. | HH:MM:SS |
| DATE APPOINTMENT END | End date of calendar appointment entry. | MM/DD/YYYY |
| TIME APPOINTMENT END | End time of calendar appointment entry. | HH:MM:SS |
| FILESIZE | The file size of a document (including embedded attachments). | |

| Field Name | Description | Example/Format |
|---|---|---|
| HASH | The MD5 Hash value or de-duplication key assigned to a document. | |
| NATIVELINK | The full path to a native copy of a document. | D:\NATIVES\ABC00000005.xls |
| FULLTEXT | The path to the full extracted text of the document. There should be a folder on the deliverable, containing a separate text file per document. These text files should be named with their corresponding bates numbers. Note: E-mails should include header information: author, recipient, cc, bcc, date, subject, etc. If the attachment or e-file does not extract any text, then OCR for the document should be provided. | D:\TEXT\ABC00000001.txt |
| OWNER | Any value populated in the Owner field of the document properties | |
| MESSAGE ID | The Unique Identifier assigned by a program to a Message/Communication | |

F. **Processing.** ESI items shall be processed in a manner that preserves the source native file and reasonably extractable metadata without intentional modification, subject to the limitations set forth in this Protocol. ESI items shall be produced with the metadata and coding fields set forth above to the extent such fields are available and can reasonably be extracted using standard litigation-support processing tools.

G. **Time Zone.** ESI items shall be processed so as to preserve and display the date/time shown in the Document. ESI items shall be processed to reflect the date and time standardized to a single time zone for all productions by a party, that time zone shall be Universal Coordinated Time (UTC) and shall be consistent across each party's productions. The Parties understand and

acknowledge that such standardization affects only metadata values and does not affect, among other things, dates and times that are hardcoded text within a file. Dates and times that are hard-coded text within a file (for example, in an e-mail thread, dates and times of earlier messages that were converted to body text when subsequently replied to or forwarded; and in any file type, dates and times that are typed as such by users) will be produced in accordance with the formats set forth in this Protocol.

H. **Native Files.** The following types of files shall be produced in native format unless a file is being produced in redacted form:

1. All media files whether audio or video;
2. Spreadsheets (e.g., MS Excel or .csv files, Google Sheets, or an acceptable equivalent for Google Sheets);
3. Presentations (e.g., MS Powerpoint, Google Slides, or an acceptable equivalent for Google Slides); and

A file produced in native format shall be named for its assigned Bates number. A placeholder TIFF image (slipsheet) named for the Bates number shall be produced with the native file. The slipsheet will include the Bates number, any confidentiality designation and the language "Produced in Native Format." TIFF images need not be produced unless the files have been redacted, in which instance such files shall be produced in TIFF with OCR Text Files. If good cause exists to request production of files, other than those specifically set forth above, in native format, the party may request such production and provide an explanation of the need for native file review, which request shall not be unreasonably denied. Any native files that are produced shall be produced with a link in the NativeLink field, along with extracted text and applicable

metadata fields set forth in paragraph E above. If a file has been redacted, TIFF images and OCR text of the redacted document will suffice in lieu of a native file and extracted text.

I. **Ordinary Course.** In accordance with Federal Rule of Civil Procedure 34(b)(2)(E)(i), the Producing Party shall produce documents as they exist in the ordinary course of business and therefore shall not be required to organize or label productions to correspond to specific discovery requests. The Producing Party shall complete production of custodians and centralized files in an orderly manner and shall inform the Receiving Party when production for a given custodian or category of centralized files is substantially complete. Any custodial or non-custodial data source will be produced in the reasonably usable and searchable format as set forth herein.

J. **Embedded Objects.** Embedded files to responsive documents need not be produced as separate documents. Examples of Embedded files include, but are not limited to, logo graphics in email signature lines (usually *.PNG or another image file format) and images, tables, or graphics in presentation software like Microsoft PowerPoint. Upon request by the Receiving Party, substantive records containing embedded files should be produced in Native Format.

K. **Bates Numbering and Other Unique Identifiers.** Every item or file of ESI that is produced shall be identified by a unique page identifier ("Bates Number") and a Production Volume for any storage device (e.g., CD, USB, hard drive) containing such files. All Bates Numbers will consist of an Alpha Prefix, followed by a numeric page index. There must be no spaces in any Bates Number. Any numbers with less than 8 digits will be front padded with zeroes to reach the required 8 digits. All ESI produced in TIFF shall contain a unique Bates Number on each page of the document, electronically "burned" onto the image at a location that does not conceal or interfere with any information from the source document. Each document should be

assigned a Bates number that must always: (1) be unique across the entire document production; (2) maintain a constant length of eight numeric digits (including 0-padding) across the entire production; (3) contain only alphanumeric characters, no special characters or embedded spaces; and (4) be sequential within a given document. The Parties shall meet and confer to attempt to resolve any issues with documents or ESI that cannot be technically processed using reasonable, standard processing efforts, including unsupported file formats, file corruptions, or inaccessible password-protected files. Where a document family is otherwise produced and a family member cannot be processed using reasonable efforts, the Producing Party shall identify the issue in a reasonable manner, which may include a Bates-labeled slipsheet. This paragraph does not require re-Bates-stamping or reprocessing documents previously produced in other proceedings as set forth in §7(a).

L. **Hard Copy Documents.** Documents that exist only in hard copy format shall be scanned and produced as TIFFs. Unless excepted below, documents that exist as ESI shall be converted and produced as TIFFs. Unless excepted below, single page Group IV TIFFs should be provided, at least 300 dots per inch (dpi) for all documents. Each TIFF image shall be named according to a unique corresponding Bates number associated with the document. Each image shall be branded according to the Bates number and the agreed upon confidentiality designation. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). TIFFs shall show all text and images that would be visible to a user of the hard copy documents. Hard copy documents shall be produced with an accompanying metadata load file as forth above.

1. Unitization of Paper Documents: Paper documents should be logically unitized for production. Therefore, when scanning or producing paper

documents, documents should be scanned as they are kept in the regular course of business, distinct documents shall not be merged into a single file or database record, and distinct documents shall not be split into multiple files or database records. The Parties will make their best efforts to unitize documents correctly.

2. File/Binder Structures (Parent-Child Unitization): Where multiple documents were organized into groups, such as folders, clipped bundles, and binders, each distinct document shall be logically unitized, and the Parties will make reasonable efforts to preserve parent-child or grouping relationship reflected in the hard-copy source materials. The Parties will make their best efforts to unitize parent-child groups correctly.

3. Identification: Where a document or a document group – such as folder, clipped bundle, or binder – has an identification spine, "Post-It Note," or any other label, the information on the label shall be scanned and produced as the first page of the document or grouping.

4. Custodian Identification: The Parties will utilize best efforts to ensure that paper records for a particular custodian, which are included in a single production, are produced in consecutive Bates stamp order.

Generally, all paper documents will be scanned and produced electronically, unless a party establishes good cause for making such documents available via paper and reasonable access is provided to the opposing party to review the documents directly.

M. **Parent and child documents.** The Parties acknowledge and agree that parent-child relationships within a document family (the association between an attachment and its parent

document or between embedded documents and their parent) shall be preserved. Non-privileged attachments to an e-mail or embedded files, and Hard Copy Documents attached or appended to Hard Copy Documents, must be mapped to their parent by the beginning Bates Number and immediately follow that parent file in the sequence of the production.

N. **Confidentiality Designation.** Responsive documents in TIFF format will be stamped with the appropriate confidentiality designations in accordance with the Protective Order in this Action. Each responsive document produced in native format will have its confidentiality designation identified in the filename of the native file.

O. **Deviation from Production Specifications.** If a particular document or category of documents warrants a different production format than otherwise provided for herein, the Producing Party shall promptly raise the issue and the Parties will cooperate in good faith to arrange for a mutually acceptable production format.

P. **Color.** Word processing documents containing tracked or hidden content, including track changes, comments, notes, etc., shall be produced in color, as single-page, 300 dpi JPG images with JPG compression and a high-quality setting so as to not degrade the original image. The Producing Party shall comply with reasonable requests by the Receiving Party to determine whether a produced black-and-white TIFF's native or hardcopy original version contains color and to provide replacement color images for documents originally produced in black and white. A Party making such a request shall make the request by individual Bates number(s) and shall limit requests made pursuant to this paragraph to a reasonable number of documents.

Q. **Tools for Native Redaction.** The Parties agree that they may use tools that allow for native redaction of spreadsheets where possible to avoid additional expense.

## II. PRODUCTION MEDIA

All production must be made by secure file transfer to agreed-upon email addresses. In the event the Producing Party deems it is not practical to upload a voluminous production (e.g., a production exceeding 20 GB) to a secure file transfer site, it shall be sent to the Receiving Party by overnight mail on external hard drives, readily accessible computer(s) or other electronic media ("Production Media"). Each piece of Production Media shall identify a production number corresponding to the production volume (e.g., "VOL001," "VOL002"), as well as the volume of the material in that production (e.g. "-001," "-002"). Each production shall be accompanied by a cover letter that identifies: (1) the Producing Party's name; (2) the production date; (3) the Bates Number range of the materials contained on the Production Media; and (4) the set(s) of requests for production for which the documents are being produced.